# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JTH TAX LLC d/b/a LIBERTY TAX SERVICE | Civil Action No.: |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| AMC NETWORKS INC., a Delaware Corporation, and SONY PICTURES TELEVISION INC., a Delaware Corporation. | |
| Defendants. | |

Plaintiff, JTH Tax LLC d/b/a Liberty Tax Service ("Liberty Tax"), by and through its attorneys, for its Complaint against Defendants, AMC Networks, Inc. ("AMC") and Sony Pictures Television Inc. ("Sony") (collectively, "Defendants"), states as follows:

## INTRODUCTION

1.     This case arises out of Defendants' intentional misuse of Liberty Tax's famous trademarks and trade dress in Episode 2, Season 6 ("Episode 2") of their hit series, *Better Call Saul,* which ironically premiered on Tax Day, April 18, 2022.  In Episode 2, the eponymous, Saul Goodman (aka Jimmy McGill), goes to "Sweet Liberty Tax Services," which is operated by a convicted felon and his wife, the Kettlemans.  The show depicts "Sweet Liberty Tax Services" as an actual Liberty Tax location by copying Liberty Tax's registered trademarks and Statue of Liberty-themed trade dress.  At "Sweet Liberty Tax Service," which is housed in a trailer in the New Mexico desert, there is an inflatable Statue of Liberty outside, in addition to the office itself, which is a moniker of the American Flag, and signage, "Sweet Liberty Tax Service."  On the inside, there is a Statue of Liberty mural on the wall, along with numerous Lady Liberty's

throughout the location.  As fans of the series know, the Kettlemans are not running a legitimate tax preparation business, but instead, are fraudulently stealing customer refunds, as revealed when Saul's wife, Kim Wexler, threatens to call the IRS to shut them down.

2.      The Kettlemans have a checkered past, previously appearing in Episode 4, Season 1 of *Better Call Saul*, in which they bribed Saul not to turn them in for embezzlement.  Ironically, Saul used the bribe money to advertise his new law firm on a billboard that mimicked the trademark and trade dress of his old law firm, Hamlin Hamlin & McGill ("HHM").  HHM sued Saul for trademark infringement and the judge sided with HHM, finding that the fair use doctrine did not apply.

3.      Out of all the names Defendants could have used for the tax business portrayed in Episode 2, they decided not to be original at all, but instead rip off the famous Liberty Tax trademarks, which have been used for over 25 years, and mimic an actual Liberty Tax location just by adding the word "Sweet" in front of Liberty Tax's trademark.  As shown in Figure 1 below, Episode 2's "Sweet Liberty Tax Services" is virtually identical and indistinguishable from an actual Liberty Tax Service location as shown in Figure 2.

 

**Figure 1**                                                                 **Figure 2**

**NATURE OF ACTION**

4.     This is an action at law and in equity for trademark and trade dress infringement, dilution, defamation, disparagement, and injurious falsehoods.  Liberty Tax's claims against Defendants arise under the Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq. ("Lanham Act") and the common law of New York.

**PARTIES**

5.     Plaintiff JTH Tax LLC d/b/a Liberty Tax Service ("Liberty Tax) is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 1716 Corporate Landing Parkway, Virginia Beach, Virginia 23454.

6.     Upon information and belief, Defendant AMC Networks Inc. ("AMC"), is a corporation organized under the laws of the State of Delaware, with its principal place of business at 11 Penn Plaza, New York, New York 10001.

7.     Upon information and belief, Defendant Sony Pictures Television Inc. ("Sony") is a corporation organized under the laws of the State of Delaware, with its principal place of business at 10202 West Washington Boulevard, Culver City California 90232-3195.

**JURISDICTION AND VENUE**

8.     This Court has original, federal question subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a).

9.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same controversy under Article III of the United States Constitution.

10.    This Court has personal jurisdiction over Defendants because Defendants have engaged in infringing conduct, including but not limited to advertising, promoting, selling, and

distributing infringing material in this District, among other places.  In addition, this Court has personal jurisdiction over Defendant AMC because AMC has its principal place of business in this District, and over Defendant Sony because it is registered to do business in New York and has a registered agent in New York.

11.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims at issue occurred in this District and because Defendant AMC resides in this District.

## FACTUAL BACKGROUND

### A.     Liberty Tax's Business

12.     Liberty Tax is one of the largest and most well-known tax preparation service franchisors in the United States.

13.     Operating under the name Liberty Tax Service® since 1997, the company has more than 2,500 tax preparation service centers and over 21,000 tax professionals located throughout the United States and Canada.

14.     Liberty Tax's tax preparation service centers are widely recognized by the public as providing trusted and reliable income tax preparation and filing services and products.

15.     Liberty Tax has and continues to devote substantial time, effort, and resources in marketing and promoting the goodwill and reputation of the Liberty Tax Service® brand.

### B.     Liberty Tax's Trademarks and Trade Dress

16.     Liberty Tax is the owner of all right, title, and interest in certain registered trademarks and trade dress, which as shown in Figures 3, 4, 5, 6, and 7 below, are immediately recognizable for the red, white, and blue motif and extensive use of the Statue of Liberty, including Statue of Liberty inflatables (collectively, the "Trade Dress"):



**Figure 3**



**Figure 4**



**Figure 5**



**Figure 6**



**Figure 7**

17.     Liberty Tax owns a number of federal service mark registrations with the United States Patent and Trademark Office (collectively, the "Trademarks").

18.     Of particular relevance, Liberty Tax is the owner of United States Trademark Registration No. 2,314,991, dated February 1, 2000, which covers the LIBERTY TAX SERVICE® mark for tax preparation services.  A true and accurate copy of Reg. No. 2,314,991 is attached hereto as Exhibit 1.  As reflected in Exhibit 1, the LIBERTY TAX SERVICE® mark for tax preparation services was first used in commerce as early as December 1997.

19.     Liberty Tax is also the owner of the United States Trademark Registration No. 2,465,670, dated July 3, 2001, which covers the LIBERTY TAX® mark for tax preparation services.  A true and accurate copy of Reg. No. 2,465,670 is attached hereto as Exhibit 2.  As reflected in Exhibit 2, the LIBERTY TAX® mark for purposes of tax preparation services was first used in commerce as early as January 2000.

20.     Liberty Tax is also the owner of United States Trademark Registration No. 2,479,692, dated August 21, 2001, which covers the registered LIBERTY TAX SERVICE with Statue of Liberty Design mark for tax preparation services.  A true and accurate copy of Reg. No. 2,479,692 is attached hereto as Exhibit 3.  As reflected in Exhibit 3, the registered LIBERTY TAX SERVICE with Statue of Liberty Design mark for purposes of tax preparation services was first used in commerce as early as January 1999.

21.     As relates to Liberty Tax's Statue of Liberty inflatables, Liberty Tax is the owner of United States Trademark Registration No. 3,738,741, dated July 19, 2010, which covers the registered Statue of Liberty sculpture mark for income tax preparation; tax preparation.  The mark consists of the nonfunctional elements of a three-dimensional sculpture in the shape of the Statue of Liberty on a pedestal.  A true and accurate copy of Reg. No. 3,738,741 is attached hereto as

Exhibit 4.  As reflected in Exhibit 4, the LIBERTY TAX SERVICE with Statue of Liberty Design mark for purposes of tax preparation services was first used in commerce as early as January 2004.

22.     Liberty Tax is also the owner of the United States Trademark Registration No. 3,167,134, dated November 7, 2006, which covers the registered Statue of Liberty design for tax preparation services.  The mark consists of the non-functional elements of a three dimensional Statue of Liberty costume.  A true and accurate copy of Reg. No. 3,167,134 is attached hereto as Exhibit 5.  As reflected in Exhibit 5, the LIBERTY TAX SERVICE with Statue of Liberty Design mark for purposes of tax preparation services was first used in commerce as early as September 2002.

23.     Liberty Tax's trademark registrations set forth above are in full force and effect, and all have become incontestable, meaning they are "conclusive evidence" of Liberty Tax's ownership of the marks, the validity of the marks, and of Liberty Tax's "exclusive right" to use the marks in commerce.  *See* 15 U.S.C. § 1115(b).

24.     Liberty Tax's marks are strong and unique, inherently distinctive, and protectable without proof of secondary meaning.

25.     Liberty Tax has invested millions of dollars and decades of time and effort to create customer recognition of the Liberty Tax Trademarks and Trade Dress, including use of Statue of Liberty inflatables and a red, white, and blue motif to advertise and promote its Liberty Tax Service® tax preparation service centers.

26.      As a result of Liberty Tax's continuous, extensive, and exclusive use of its Trademarks and Trade Dress, the Trademarks and Trade Dress have become instantaneously recognized and highly regarded as representing a business that provides trusted and reliable tax preparation services.

27.     Liberty Tax protects its valuable Trademarks and Trade Dress by actively policing and enforcing its trademark rights.  To date, Liberty Tax has filed over a hundred trademark actions against infringers of the Liberty Tax Trademarks and Trade Dress.

**C.     Defendants' Entertainment Businesses**

28.     AMC is an entertainment company that owns and operates the AMC cable channel.

29.     Sony is a leading producer and distributor of television shows.

30.     One of Sony's biggest hits is *Better Call Saul*.

31.     *Better Call Saul* is a spin-off, prequel, and sequel of the critically acclaimed television series, *Breaking Bad*.

32.     *Better Call Saul* follows the transformation of Jimmy McGill (played by Bob Odenkirk), a former con artist, into the egocentric criminal lawyer Saul Goodman, over a six-year period prior to the events in *Breaking Bad*.

33.     *Better Call Saul* premiered on AMC on February 8, 2015, and is in its sixth and final season.  The show has an immense following and has amassed nearly ten million viewers over the years.

**D.     Defendants' Infringement and Tarnishing of Liberty Tax's Trademarks and Trade Dress.**

34.     On April 18, 2022, Defendants aired Episode 2, Season 6 of *Better Call Saul*, titled "Carrot and Stick" ("Episode 2" or the "Show"), as part of the two-episode premiere of the sixth and final season.

35.     Episode 2 introduces a fraud-driven tax preparation business called, "Sweet Liberty Tax Services," which is depicted by copying Liberty Tax's Trademarks and Trade Dress (the "Infringing Content").

36.     In the Show, "Sweet Liberty Tax Services" is operated by Saul's former clients, a convicted felon, Craig Kettleman, and his wife, Betsy Kettleman.

37.     The Kettlemans were main characters in *Better Call Saul's* first season, but exited the series after Craig Kettleman was convicted of embezzlement and went to prison.

38.     When the Kettlemans reappear in Episode 2 of the sixth season, Craig is out of prison and the Kettlemans are running "Sweet Liberty Tax Services," where they cheat customers by skimming money from their tax refunds.

39.     Episode 2's depiction of "Sweet Liberty Tax Services," through the use of the Infringing Content, is an obvious imitation of an actual Liberty Tax location, but twisted to paint Liberty Tax in a negative and disparaging light.

40.     The business name "Sweet Liberty Tax Services" is almost identical to the Liberty Tax Services® mark, with just the word "Sweet" added.

41.     A Statue of Liberty inflatable, like the one Liberty Tax uses in its Trade Dress, is featured prominently throughout the Show, including during opening credits when lead character, Jimmy McGill, arrives at "Sweet Liberty Tax Services."  Figures 8, 9, and 10 below are screenshots from Episode 2 depicting examples of Defendants' unauthorized uses of Liberty Tax's Trademarks and Trade Dress:



**Figure 8**



**Figure 9**



**Figure 10**

42.     In one scene, character Betsy Kettleman prints a refund check with a logo for "Sweet Liberty Tax Services" that is similar to Liberty Tax's registered LIBERTY TAX SERVICE with Statue of Liberty Design mark.  Figure 11 is Liberty Tax's registered LIBERTY TAX SERVICE with Statue of Liberty Design mark.  Figure 12 below is a magnified screenshot from Episode 2 of the "Sweet Liberty Tax Services" logo.





**Figure 11**                                    **Figure 12**

43.     The inside of the "Sweet Liberty Tax Services" location is depicted using distinctive elements of Liberty Tax's Trade Dress, including a Statue of Liberty wall mural.  Figure 12 is a screenshot from Episode 2.



**Figure 13**

44.    The exterior of the "Sweet Liberty Tax Services" location is also depicted using distinctive elements of Liberty Tax's Trade Dress, including a red, white, and blue flag motif and Statute of Liberty design.  Figure 13 is a screenshot from Episode 2.



**Figure 14**

45.     Given Defendants' extensive use and copying of Liberty Tax's Trademarks and Trade Dress throughout Episode 2, Defendants must have intended to evoke an actual Liberty Tax Service location.

46.     An estimated 1.418 million viewers watched Episode 2 during its first broadcast on AMC.[1]

47.     According to AMC, the two-episode premiere of *Better Call Saul's* final season, which included Episode 2, resulted in the biggest day of new subscriber sign-ups in the history of AMC's streaming service, AMC+.[2]

48.     AMC also touted the social media activity of the two-episode premiere, stating that Better Call Saul's Season 6 premiere generated over half a million engagements on social media platforms like Facebook and Twitter, which is an increase of more than 60% over the Season 5 premiere.[3]

49.     ListenFirst, a social media analytics tracker, stated that users tweeting about *Better Call Saul's* two-episode premiere that included Episode 2 created a 10-hour national trending topic on Twitter and made the show the #1 television drama in social engagement, organic search, conversation, and content shares.[4]

50.     Upon information and belief, both AMC and Sony have policies and procedures in place to secure intellectual property rights and clearances for their programming and prevent violation of intellectual property rights.

---

[1] *See* Mitch Metcalf, *ShowBuzzDail's Monday 4.18.2022 Top 150 Cable Originals & Networks Finals Updated*, ComicBook.com,   https://showbuzzdaily.com/articles/showbuzzdailys-monday-4-18-2022-top-150-cable-originals-network-finals.html (last accessed, August 1, 2022).
[2] *See* Cameron Bonomolo, *Better Call Saul Season 6 Premiere Sets Records for AMC and AMC+* https://comicbook.com/tv-shows/news/better-call-saul-season-6-premiere-breaks-records-amc-plus-subscribers-social/ (last accessed, August 1, 2022).
[3] *See id.*
[4] *See id.*

51.     For example, AMC stated in its recent job posting that its Rights Management Team "minimize[s] the potential of legal claims through analysis of high volume of rights and clearances related delivery materials for all original programming series and specials." [5]

52.     Similarly, Sony stated in its job posting that its Script Clearance Department "reviews various drafts of scripts for . . . television productions . . . in order to protect the company from litigation and claims of libel, slander, defamation of character, invasion of privacy, unfair competition, trademark infringement and dilution, product disparagement, unauthorized usage of corporate professional and product names, and copyright infringements."[6]

53.     Defendants did not adhere to their own policies and procedures in ensuring that Episode 2 did not violate Liberty's Tax's intellectual property rights.

54.     Prior to airing Episode 2, Defendants did not contact Liberty Tax to attempt to secure rights to use Liberty Tax's Trademarks and Trade Dress in the Show.

55.     Liberty Tax never would have agreed to such use given the negative light cast on Liberty Tax by Defendants' Infringing Content.

56.     Defendants' use and disparagement of Liberty Tax's Trademarks and Trade Dress constitutes trademark infringement, dilution by tarnishment, defamation, disparagement, and injurious falsehoods.

57.     Liberty Tax sent a cease-and-desist letter to AMC dated April 27, 2022, and thereafter engaged in follow up communications with AMC and Sony, in which it put Defendants

---

[5] *See* https://amc-networks.talentify.io/job/associate-rights-and-clearences-new-york-new-york-amc-networks-r-2526 (last accessed, July 28, 2022).
[6]              *See*              https://www.entertainmentcareers.net/sony-pictures-entertainment/script-clearance-coordinator-legal/job/139728/ (last accessed, July 28, 2022).

on notice that the Show infringed and tarnished Liberty Tax's Trademarks and Trade Dress and that Liberty Tax objected to such depiction.

58.     Upon information and belief, Defendants continue to engage in unauthorized use and disparagement of Liberty Tax's Trademarks and Trade Dress by distributing Episode 2 on multiple media outlets, including on the AMC channel, AMC+, and Google TV.

59.     Upon information and belief, Sony also plans to distribute the sixth season of Better Call Saul, which includes Episode 2, on Blue-ray and DVD like it has for the prior seasons of *Better Call Saul*.

E.     **Defendants' Unauthorized Use of Liberty Tax's Trademarks and Trade Dress is Willful, Creates Confusion, and Has Caused Harm to Liberty Tax**

60.     As detailed above, Defendants have misappropriated, copied, and used, and continue to misappropriate, copy and use colorable imitations of Liberty Tax's Trademarks and distinctive elements of Liberty Tax's Trade Dress in advertising and distributing the Infringing Content.

61.     Upon information and belief, Defendants' misuse of Liberty Tax's Trademarks and Trade Dress has been done with Defendants' knowledge of Liberty Tax's trademark rights, with an intent to trade upon and pirate away the substantial reputation and goodwill symbolized by Liberty Tax's Trademarks and Trade Dress; and with an intent to create confusion by causing the public to falsely believe that "Sweet Liberty Tax Services" is an actual Liberty Tax location.

62.     Defendants' misuse of Liberty Tax's Trademarks and Trade Dress in Episode 2 has resulted in, is resulting in, and will continue to result in harm to Liberty Tax, including without limitation damage to Liberty Tax's reputation and goodwill symbolized by Liberty Tax's Trademarks and Trade Dress as well as monetary losses and damages.

63.     Liberty Tax seeks to permanently restrain and enjoin Defendants from distributing Episode 2 as long as it contains the Infringing Content.  Liberty Tax also seeks monetary damages resulting from Defendants' copying and misuse of Liberty Tax's Trademarks and Trade Dress. Because Defendants' misconduct is knowing and intentional, Liberty Tax is entitled to treble damages, punitive damages, costs, and attorneys' fees.

## FIRST CAUSE OF ACTION
Federal Trademark Infringement, 15 U.S.C. § 1114
*(Against All Defendants)*

64.     The allegations in the foregoing Paragraphs are repleaded and incorporated by reference as if set forth at length herein.

65.     Liberty Tax owns uncontestable federal trademark registrations for tax preparation services, which include the LIBERTY TAX® and LIBERTY TAX SERVICE® marks.  *See* Reg Nos. 2,314,991, 2,465,670, 2,479,692, 3,738,741, and 3,167,134.

66.     Defendants had both actual and constructive knowledge of Liberty Tax's federal registered trademarks, including the LIBERTY TAX® and LIBERTY TAX SERVICE® marks.

67.     Defendants have used, are using, and have caused others to use Liberty Tax's federally registered Trademarks, and marks confusingly similar thereto, in connection with the advertising, promotion, and distribution of the Show without Liberty Tax's authorization.

68.     Defendants' unauthorized misuse of Liberty Tax's Trademarks has caused and is likely to cause confusion, mistake, and deception as to the affiliation, connection, or association with, or sponsorship or approval by, Liberty Tax, in violation of 15 U.S.C. § 1114.

69.     Defendants' unlawful conduct was and is knowing, deliberate, willful, and in bad faith and done with the intent to trade on the goodwill and reputation of Liberty Tax and its

federally registered Trademarks and to deceive consumers into believing that "Sweet Liberty Tax Services" is a Liberty Tax location.

70.     As a result of Defendants' unlawful conduct, Liberty Tax has suffered and is likely to suffer damages, and Defendants have obtained substantial profits and/or unjust enrichment.

71.     Further, as Defendants' job postings reveal, Defendants were aware of the requirement that they seek permission for use of intellectual property, yet they failed to do so here.

72.     Additionally, as described above, Defendants have refused Liberty Tax's demands that they cease unlawful infringement of Liberty Tax's Trademarks and Trade Dress.

73.     Accordingly, Defendants willfully intended to trade on Liberty Tax's goodwill and to infringe on the Trademarks, and as such, Liberty Tax is entitled to damages, treble damages, and attorneys' fees by reason of Defendants' unlawful acts.

74.     Defendants' unlawful conduct has caused Liberty Tax to lose control over the goodwill it has established in its federally registered Trademarks and irreparably injured Liberty Tax's business, reputation, and goodwill.  Unless Defendants are enjoined from distributing the Infringing Content, Liberty Tax will continue to suffer irreparable harm for which it has no adequate remedy at law.

## SECOND CAUSE OF ACTION
Federal Trade Dress Infringement, 15 U.S.C. § 1114
*(Against All Defendants)*

75.     The allegations in the foregoing Paragraphs are repleaded and incorporated by reference as if set forth at length herein.

76.     Liberty Tax owns all right, title, and interest, in the Liberty Tax Trade Dress, including through federal trademark registrations for certain elements of Liberty Tax's Trade Dress for tax preparation services.  *See* Reg. Nos. 3,738,741, 3,167,134.

77.    Liberty Tax's Trade Dress is distinctive and is not functional.

78.    Defendants have had both actual and constructive knowledge of Liberty Tax's Trade Dress.

79.    Defendants have used, are using, and have caused others to use the Liberty Tax Trade Dress in connection with the advertising, promotion, and distribution of the Show without Liberty Tax's authorization and with full knowledge of Liberty Tax's rights in that Trade Dress.

80.    Defendants' unauthorized use of Liberty Tax's Trade Dress has caused and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association with, or sponsorship or approval by, Liberty Tax, in violation of 15 U.S.C. § 1114.

81.    Defendants' unlawful conduct was and is knowing, deliberate, willful, and in bad faith and done with the intent to trade on the goodwill and reputation of Liberty Tax and its Trade Dress and to deceive consumers into believing that Liberty Tax was endorsed or was otherwise connected with the Show.

82.    As a result of Defendants' unlawful conduct, Liberty Tax has suffered and is likely to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

83.    Defendants' unlawful conduct has caused Liberty Tax to lose control over the goodwill it has established in the Liberty Tax Trade Dress and irreparably injured Liberty Tax's business, reputation, and goodwill.  Unless Defendants are permanently enjoined from distributing the Infringing Content, Liberty Tax will continue to suffer irreparable harm for which it has no adequate remedy at law.

## THIRD CAUSE OF ACTION
Federal Trademark and Trade Dress Dilution, 15 U.S.C. § 1125(c)
*(Against All Defendants)*

84.     The allegations in the foregoing Paragraphs are repleaded and incorporated by reference as if set forth at length herein.

85.     Liberty Tax owns uncontestable federal trademark registrations for tax preparation services, which include the LIBERTY TAX® and LIBERTY TAX SERVICE® marks.  *See* Reg Nos. 2,314,991, 2,465,670, 2,479,692, 3,738,741, and 3,167,134.

86.     Liberty Tax also owns the Liberty Tax Trade Dress, which is distinctive and non-functional.

87.     As a result of use over many decades, extensive advertising and promotion, and widespread sale of services under Liberty Tax's Trademarks and Trade Dress, the Trademarks and Trade Dress have become uniquely and exclusively associated with Liberty Tax and its services.

88.     Liberty Tax's Trademarks and Trade Dress are widely recognized by the general consuming public and are famous and became famous long before Defendants commenced their distribution of the Infringing Content.

89.     Defendants have used, are using, and have caused others to use Liberty Tax's Trademarks and Trade Dress, and/or substantially similar trademarks and trade dress, in commerce in connection with the advertising, promotion, and distribution of the Infringing Content without Liberty Tax's authorization.

90.     Defendants' use of the "Sweet Liberty Tax Services" mark in the Show is the same or substantially similar to the LIBERTY TAX SERVICE® and LIBERTY TAX® marks, and is used by Defendants in connection with services identical to those for which Liberty Tax uses such marks.

91.     Defendants' logo for "Sweet Liberty Tax Services" used in the Show is substantially similar to the LIBERTY TAX SERVICE with Statue of Liberty Design mark, and is used by Defendants in connection with services identical to those from which Liberty Tax uses such mark.

92.     Defendants' Statute of Liberty inflatable used in the Show is the same or substantially similar to Liberty Tax's Trademarks and Trade Dress, and is used by Defendants in connection with services identical to those for which Liberty Tax uses its Trademarks and Trade Dress.

93.     Defendants' trade dress for "Sweet Liberty Tax Services," including the Statute of Liberty and red, white, and blue motif, is the same or substantially similar to Liberty Tax's Trade Dress, and is used by Defendants in connection with services identical to those for which Liberty Tax uses such Trade Dress.

94.     On information and belief, Defendants acted in bad faith and intended that television viewers believe that the tax preparation operation depicted, "Sweet Liberty Tax Services," is a Liberty Tax location.  Television viewers may not be sufficiently sophisticated to recognize that Sweet Liberty Tax Services is not depicting an actual Liberty Tax Service location.

95.     Defendants' making use in commerce of the Infringing Content is likely to cause dilution by blurring and tarnishing Liberty Tax's Trademarks and Trade Dress.  Moreover, Defendants' activities have caused, and unless enjoined will continue to cause, disparagement, damage to Liberty Tax's business reputation, and lessening of the distinctiveness of Liberty Tax's Trademarks and Trade Dress.

96.     Defendants' making use in commerce of the Infringing Content is likely to dilute the distinctiveness of Liberty Tax's Trademarks and Trade Dress by tarnishing and degrading the

positive and trusted connotations of the marks and lessening the capacity of the marks to identify and distinguish Liberty Tax's services.

97.     Defendants' unlawful conduct was and is knowing, deliberate, willful, and in bad faith and done with the intent to trade on the goodwill and reputation of Liberty Tax and its Trademarks and Trade Dress, to impair the distinctiveness of those marks and trade dress, and to deceive consumers into believing the Infringing Content was connected with Liberty Tax's services.

98.     As a result of Defendants' unlawful conduct, Liberty Tax has suffered and is likely to suffer damages, and Defendants have obtained profits and/or unjust enrichment.

99.     Liberty Tax has no adequate remedy at law.  Unless Defendants are permanently enjoined from distributing that portion of Episode 2 that uses the Infringing Content, Liberty Tax will be irreparably injured because of its loss of goodwill, prestige, and reputation stemming from Defendants' use and disparagement of trademarks and trade dress the same or substantially similar to Liberty Tax's Trademarks and Trade Dress.

**FOURTH CAUSE OF ACTION**
Defamation
(*Against All Defendants*)

100.     The allegations in the foregoing Paragraphs are repleaded and incorporated by reference as if set forth at length herein.

101.     Defendants made and published false and defamatory statements, without privilege or justification, including that Liberty Tax is operated by criminals and engages in crimes, fraud, theft, and other deceptive business practices.

102.    Defendants published or had published these statements to one or more persons other than Liberty Tax, by and through distribution of the Show on the AMC channel, AMC+, Google TV, and other media outlets.

103.    Recipients of Defendants' statements understood their aforesaid defamatory meanings and implications, as well as that the statements were intended by Defendants to be applied to Liberty Tax.

104.    Defendants' statements are defamatory *per se*, as they state and imply, among other things, that Liberty Tax commits criminal offenses and engages in dishonesty and business misconduct.   These statements impugn the basic integrity and competence of Liberty Tax's business.

105.    Defendants made and published the false and defamatory statements about Liberty Tax with actual or constructive knowledge that they were false or with reckless disregard to whether they were true or false—and in an effort to malign Liberty Tax's business reputation within the community.

106.    Alternatively, Defendants made and published the false and defamatory statements about Liberty Tax negligently, without exercising a reasonable level of care and diligence to ascertain the truth.

107.    The false and defamatory statements harmed Liberty Tax, by tending to lower its reputation in the estimation of the community and/or deter third persons from associating or dealing with Liberty Tax and using its services.

108.    As a direct and proximate result of the defamatory *per se* statements and/or defamatory statements made with actual malice, Liberty Tax suffered presumed damages.

109.    As a direct and proximate result of Defendants' conduct, Liberty Tax suffered actual and other damages in an amount to be proven at trial.

110.    Defendants' conduct was willful, malicious, intentional, wanton, and/or reckless, thereby entitling Liberty Tax to an award of punitive damages.

### FIFTH CAUSE OF ACTION
Disparagement
(*Against All Defendants*)

111.    The allegations in the foregoing Paragraphs are repleaded and incorporated by reference as if set forth at length herein.

112.    Defendants intentionally made and published false and disparaging statements about Liberty Tax, without privilege, including that Liberty Tax is operated by criminals and engages in crimes, fraud, theft, and other deceptive business practices.

113.    Defendants published or had published these statements to one or more persons other than Liberty Tax, by and through distribution of the Show on the AMC channel, AMC+, Google TV, and other media outlets.

114.    Recipients of Defendants' statements understood their aforesaid disparaging meaning and implications, as well as that the statements were intended by Defendants to be applied to Liberty Tax.

115.    Defendants' disparaging statements about Liberty Tax cast doubt upon the quality of Liberty Tax's business and tax preparation services.

116.    Defendants made and published the false and defamatory statements about Liberty Tax with actual or constructive knowledge that they were false, or with reckless disregard to whether they were true or false, and in an effort to disparage Liberty Tax and its services.

117.     As a direct and proximate result of Defendants' conduct, Liberty Tax suffered actual and other damages in an amount to be proven at trial.

118.     Defendants' conduct was willful, malicious, intentional, wanton and/or reckless, thereby entitling Liberty Tax to an award of punitive damages.

**SIXTH CAUSE OF ACTION**
Injurious Falsehoods
(*Against All Defendants*)

119.     The allegations in the foregoing Paragraphs are repleaded and incorporated by reference as if set forth at length herein.

120.     Defendants made false and derogatory statements about Liberty Tax's business in the Show, without privilege, including that Liberty Tax is operated by criminals and engages in crimes, fraud, theft, and other deceptive business practices.

121.     Defendants' false and derogatory statements about Liberty Tax's business were of a kind calculated to prevent others from dealing with Liberty Tax's business or otherwise interfering with Liberty Tax's relations with others, to Liberty Tax's detriment.

122.     Defendants published or had published these false and derogatory statements to one or more persons other than Liberty Tax, by and through distribution of the Show on the AMC channel, AMC+, Google TV, and other media outlets.

123.     Recipients of Defendants' false statements understood their derogatory meaning and implications, as well as that the statements were intended by Defendants to be applied to Liberty Tax.

124.     Defendants maliciously made false statements with the intent to harm Liberty Tax or recklessly and without regard to their consequences, and a reasonably prudent person would have or should have anticipated that damage to Liberty Tax would result.

125.    Defendants either knew that these statements were false and would injure Liberty Tax, or they acted with reckless disregard as to the falsity of the statements and the injurious impact of the statements.

126.    As a direct and proximate result of Defendants' conduct, Liberty Tax suffered financial and other damages in an amount to be proven at trial.

127.    Defendants' conduct was willful, malicious, intention, wanton and/or reckless, thereby entitling Liberty Tax to an award of punitive damages.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, based on the foregoing allegations, Liberty Tax prays for judgment and relief as follows:

A.    That this Court enter judgment in favor of Liberty Tax and against Defendants, jointly and severally, on all claims for relief alleged herein;

B.    That this Court issue a permanent injunction that:

1.    Enjoins Defendants, their employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, successors, and assigns, and all of those in active concert or participation with them or having knowledge of the causes of action, from distributing the Infringing Content, or other copying or using Liberty Tax's Trademarks and Trade Dress, alone or in combination with any word(s), term(s), designation(s), mark(s), or design(s), as well as any mark, image, or depiction that is confusingly similar to or likely to impair the distinctiveness of Liberty Tax's Trademarks and Trade Dress;

2.    Requires Defendants, their employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, successors, and assigns, and all those in

active concert or participation with them or having knowledge of the causes of action to engage in corrective advertising in a form pre-approved by Liberty Tax and the Court to dispel the confusion caused by Defendants' unlawful conduct; and

   3. Requires Defendants to file with the Court and serve on Liberty Tax, within thirty (30) days after entry of an injunction, a report in writing under oath setting forth in detail the manner in which Defendants have complied with the Court's injunction.

C. That this Court grant monetary relief in the form of:

   1. Compensatory damages under the Lanham Act and New York law for all injuries to Liberty Tax caused by Defendants' acts alleged herein;

   2. An accounting of Defendants' profits derived by Defendants' acts alleged herein under the Lanham Act and New York law and said accounting trebled;

   3. Punitive damages;

   4. Enhanced or treble damages;

   5. Attorneys' fees and costs;

   6. Prejudgment and postjudgment interest; and

   7. Such other and further relief which the Court deems just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiff Liberty respectfully demands a jury trial pursuant to Rule 38(b) of the Federal

Rules of Civil Procedure on all claims and issues so triable.


Dated:          August 1, 2022                    Respectfully submitted,


By: */s/ Peter C. Siachos*
Peter G. Siachos (NY Bar No.: 4436168)
**GORDON REES SCULLY**
**MANSUKHANI LLP**
One Battery Park Plaza
28th Floor
New York, NY 10004
Tel.: (212) 269-5500
Fax: (212) 269-5505
Email: psiachos@grsm.com

Clair E. Wischusen (*Pro Hac Vice*
forthcoming)
**GORDON REES SCULLY**
**MANSUKHANI LLP**
18 Columbia Turnpike
Suite 220
Florham Park, NJ 07932
Tel.: (973) 549-2524
Fax: (973) 377-1911
Email: cwischusen@grsm.com

James L. Messenger (*Pro Hac Vice*
forthcoming)
**GORDON REES SCULLY**
**MANSUKHANI LLP**
21 Custom House Street
5th Floor
Boston, MA 02110
Tel.: (857) 263-2000
Fax: (857) 264-2836
Email: jmessenger@grsm.com

*Attorneys for Plaintiff,*
*JTH Tax LLC d/b/a Liberty Tax Service*

LIBTAX/1269919/69030469v.4