PETER G. SIACHOS
PSIACHOS@GRSM.COM
DIRECT DIAL: (646) 808-6358



ATTORNEYS AT LAW
ONE BATTERY PARK PLAZA, 28TH FL.
NEW YORK, NY 10004
WWW.GRSM.COM

September 26, 2022

**VIA ECF**

Hon. Paul G. Gardephe
United States District Judge
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

> Re: **JTH Tax, LLC d/b/a Liberty Tax Service v. AMC Networks Inc. et al.,
> No: 1:22-cv-06526-PGG – Response to Request for Pre-Motion Conference**

Dear Judge Gardephe:

This firm represents Plaintiff JTH Tax, LLC d/b/a Liberty Tax Service ("Liberty" or "Liberty Tax") in the above-captioned action. Pursuant to Rule IV.A of the Court's Individual Practices, Liberty hereby responds to the pre-motion letter filed by Defendants, AMC Networks, Inc. and Sony Pictures Television Inc. (collectively, "Defendants"), and opposes Defendants' request for leave to file a motion to dismiss and request a stay of discovery. ECF # 24.

This case arises from Defendants' use of Liberty's registered marks on their hit television show, *Better Call Saul*, to falsely represent Liberty's tax preparation business as a criminal operation and mislead consumers into believing Defendants' "Sweet Liberty Tax Services" was Liberty Tax. Compl., ECF # 1 at ¶¶ 34-45, 60-63. Liberty has asserted claims, each of which focuses on Defendants' misrepresentations of the infringing "Sweet Liberty Tax Services," as endorsed by or otherwise connected with Liberty Tax through pervasive use of Liberty's marks and distinctive trade dress: Count I for trademark infringement under the Lanham Act; Count II for trade dress infringement under the Lanham Act; Count III for trademark and trade dress dilution under the Lanham Act; Count IV for defamation; Count V for disparagement; and Count VI for injurious falsehoods. *Id.* at ¶¶ 64-127. In their pre-motion letter, Defendants contend that Defendants' misrepresentation of Liberty's legitimate tax preparation business as a scam operation run by criminals has artistic relevance, is not commercial speech, and is not defamatory or disparaging as to Liberty.

As detailed below, Defendants' requests should be denied both because Liberty has alleged actionable claims and because the bases for Defendants' proposed motion involve fact-intensive inquiries that require discovery and cannot be resolved on a motion to dismiss.

Hon. Paul G. Gardephe
September 26, 2022
Page 2

### I. The First Amendment Balancing Test Under *Rogers* Does Not Automatically Insulate Defendants from Lanham Act Liability

Defendants assert they had an unfettered right to use the marks to misrepresent Liberty as a criminal enterprise, mislead the public, and damage Liberty's valuable intellectual property, all in violation of the Lanham Act, because their misrepresentation was part of a television show. In their pre-motion letter, Defendants rely on their own set of facts and the Second Circuit's decision in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). But *Rogers* is not an absolute bar to liability, and it was itself a summary judgment case decided after years of discovery. Rather, *Rogers* established a fact-based balancing test with respect to two related concepts, whether the use "has some artistic relevance" and whether it is "explicitly misleading." *Rogers*, 875 F.2d at 999. This balancing test was designed to balance consumers' dual interests "in not being misled" and "in enjoying the results of the author's freedom of expression." *Id.* at 998. Here, Defendants seek to dispense with the factual inquiry that *Rogers* requires and replace what is alleged in the Complaint with facts of their own.

Defendants' defenses that that their misrepresentation of Liberty as a scam operation has "artistic relevance," and that their pervasive use of Liberty's marks does not "explicitly mislead," both require discovery, and cannot be resolved on a motion to dismiss. To determine whether Defendants' use and misrepresentation of Liberty's marks give rise to a likelihood of confusion, in this context as in all others, this Circuit applies the *Polaroid* test, which considers eight different factors. *See Hermes Int'l et al. v. Rothschild*, No. 22-cv-384-JSR, --- F. Supp. 3d ---, 2022 WL 1564597, *3 (S.D.N.Y. May 18, 2022) (concluding that the analysis to determine explicit misleadingness under the *Rogers* test is conducted by considering the *Polaroid* factors) (citing *Twin Peaks Productions v. Publications Int'l*, 996 F.2d 1366, 1379 (2d Cir. 1993) (citations omitted)). This test considers the strength of the prior owner's mark, the similarity between the two marks, the competitive proximity of the products at issue, the likelihood that the senior use will bridge the gap, actual confusion, the junior user's good faith, the quality of the products at issue, and the sophistication of the buyers. *Polaroid Corp. v. Polaroid Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). While the balancing of the Polaroid factors is a legal question, each underlying factor requires a factual determination. *See Medici Classics Productions LLC v. Medici Group, LLC*, 683 F. Supp. 2d 304, 308 (S.D.N.Y. 2010).

Where, as here, a plaintiff raises genuine issues of material fact on the issue of likelihood of confusion (Compl. ¶¶ 61, 68, 69, 80), courts in the Second Circuit decline to engage in the *Rogers-Polaroid* analysis before discovery. *See, e.g., Hermes Int'l et al. v. Rothschild*, No. 22-cv-384-JSR, --- F. Supp. 3d ---, 2022 WL 1564597, *5 (S.D.N.Y. May 18, 2022) (declining to determine artistic relevance and explicit misleadingness at the motion to dismiss stage); *Girl Scouts of the United States of America v. The Bantam Doubleday Dell Pub. Grp.*, 808 F. Supp. 1112 (S.D.N.Y. 1992) ("because no discovery has taken place . . . it would be premature to engage in an assessment of the factors to be used in weighing consumer confusion and First Amendment concerns."); *World Championship Wrestling v. Titan Sports, Inc.*, 46 F. Supp. 2d 118, 123 (D. Conn. 1999) (holding that the "balancing test" called for under *Rogers* could not be disposed of at the motion to dismiss stage); *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052-53 (2d Cir. 1995) (granting summary judgment for defendant only after plaintiff had "ample opportunity to present evidence outside the pleadings"); *see also AM Gen. LLC v. Activision Blizzard, Inc.*, 450 F. Supp.

Hon. Paul G. Gardephe
September 26, 2022
Page 3

3d 467, 480-84 (S.D.N.Y. 2020 (applying the *Polaroid* factors to use of another's trademark on a motion for summary judgment).

Ultimately, the inquiry regarding Defendants' use and misrepresentation of Liberty's marks depends not on any fixed rule for expressive works as Defendants advocate, but on a determination of facts concerning likelihood and extent of consumer confusion from the misrepresentation, which then must be balanced against factual findings of artistic relevance. The Court cannot properly make this determination without development of a factual record. *See Hermes Int'l et al.*, 2022 WL 1564597, *5. Defendants' pre-motion letter unwittingly proves this point in alleging various facts outside the complaint to argue artistic relevance. ECF # 24 at p. 2.

In sum, whether Defendants' misrepresentation of Liberty's marks is protected by the First Amendment and whether the requisite confusion exists are questions of fact not appropriate for a motion to dismiss. Discovery should proceed so that the parties can develop the facts necessary for the Court to conduct this fact-intensive inquiry. Defendants' requests to file a motion to dismiss and stay discovery should be denied.

## II. Defendants' Noncommercial Use Argument is an Affirmative Defense That Requires Discovery

Defendants' challenge to Liberty's trademark dilution claim is likewise premature on a motion to dismiss. While Plaintiffs acknowledge that the show itself is not a commercial use, the Complaint alleges that Defendants' misrepresentation of Liberty's marks included advertising for the show and such use constitutes commercial use. Compl., ECF # 1 at ¶¶ 10, 60, 67, 79, 89; *see, e.g. OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F. Supp. 2d 176, 192 (W.D.N.Y. 2000) (holding advertising use constitutes commercial use for purposes of trademark dilution claim). For example, one of Defendants' actors from the show posted images of Defendants' misrepresentation of Liberty Tax as Sweet Liberty Tax Services" to promote and advertise the show. *See* https://www.instagram.com/p/CcqwpPAvnzr/?utm_source=ig_embed&utm_campaign=loading https://twitter.com/julieannemery/status/1517516670402670593?lang=en   The advertisements generated a lot of buzz for *Better Call Saul* and one of the posted "Sweet Liberty Tax Services" images now appears prominently in Google image search results for "Liberty Tax Service." Defendants also use a clip of the infringing "Sweet Liberty Tax Services" in a trailer advertising the sixth season of *Better Call Saul* on YouTube. *See* https://www.youtube.com/watch?v=Qz3u06eXf0E&t=70s   Defendants intend to conduct discovery into the circumstances surrounding Defendants' use of the infringing "Sweet Liberty Tax Services" to advertise the show and the resulting blurring and tarnishment caused to Liberty's marks. Liberty is entitled to the opportunity to discover and present this evidence, which cannot be considered on a motion to dismiss. Defendants' requests should be denied.

## III. Liberty Tax Plausibly States Claims for Defamation, Disparagement, and Injurious Falsehoods

Liberty's Complaint satisfies its burden of setting forth facts in support of its claims for defamation, disparagement, and injurious falsehoods. Compl., ECF # 1 at ¶¶ 100-127. Defendants' contention that Liberty did not allege facts demonstrating that the show made any false or defamatory statements about Liberty is wrong. The Complaint recites the episode's

statements about stealing money from tax returns, and links the alleged stealing money to Liberty Tax by Defendants' copying of Liberty's intellectual property, including the Liberty Tax Service marks, the Statue of Liberty-themed trade dress and inflatable, and even the Liberty Tax Service logo on the refund checks. *Id.* at ¶¶ 35, 36, 38, 39, 41, 42, 44, 45, 58, 61, 101-127. The Complaint also sets forth facts demonstrating that the show falsely depicts Liberty as engaging in pilfering. *Id.* at ¶ 38. The Complaint alleges that recipients of Defendants' false and defamatory statements and depictions to be about services provided at Liberty Tax. *Id.* at ¶¶ 103, 114, 123. While Defendants seek to debate the issue, the extent to which viewers understood the statements to refer to Liberty Tax is a question that should be explored in discovery and is not appropriate for a motion to dismiss.

### IV. Discovery Should Not be Stayed

Defendants present no valid basis to stay discovery. A party seeking a stay of discovery "must establish good cause for the stay." *K.A. v. City of New York*, 1:16-cv-04936-LTS-JW, 2022 WL 3996710, *2 (Sept. 1, 2022). "The pendency of a dispositive motion is not, in itself, an automatic ground for stay." *Mirra v. Jordan*, No. 2016 WL 889559, at *2 (S.D.N.Y. Mar. 1, 2016) (quotation omitted). Liberty's Complaint plausibly alleges facts in support of each one of its claims and Defendants' pre-motion letter does not present "substantial arguments for dismissal." As set forth above, Defendants' principal reliance on the First Amendment and *Rogers'* fact-intensive balancing test demonstrates that discovery is needed to decide the claims and defenses in this case. The fact that Liberty filed the action a few months after the infringing episode aired—and after Defendants declined to comply with Liberty's cease and desist letter—does not warrant a stay of discovery and Defendants fail to identify any particular prejudice they will suffer if discovery proceeds.

For the foregoing reasons, Liberty respectfully requests that the Court deny Defendants' request to file their motion to dismiss and request requests to stay discovery.

    Respectfully submitted,

    GORDON REES SCULLY MANSUKHANI LLP

    PETER G. SIACHOS

cc: All counsel of record *via* ECF