PETER G. SIACHOS
PSIACHOS@GRSM.COM
DIRECT DIAL: (646) 808-6358



ATTORNEYS AT LAW
ONE BATTERY PARK PLAZA, 28TH FL.
NEW YORK, NY 10004
WWW.GRSM.COM

November 14, 2022

**VIA ECF**
Hon. Paul G. Gardephe
United States District Judge
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

    Re:    **JTH Tax, LLC d/b/a Liberty Tax Service v. AMC Networks Inc. et al.,
No: 1:22-cv-06526 Response to Renewed Request for Pre-Motion Conference**

Dear Judge Gardephe:

    On behalf of Plaintiff, JTH Tax, LLC d/b/a Liberty Tax Service, we respectfully submit this response to the renewed pre-motion letter filed by Defendants, AMC Networks, Inc. and Sony Pictures Television Inc. (ECF No. 32), and oppose Defendants' request for leave to file a motion to dismiss and request a stay of discovery. Defendants' latest letter recycles the same arguments that were in Defendants' initial letter (ECF No. 24) and that were already addressed by Plaintiff's Amended Complaint. ECF No. 29. An initial pretrial conference is scheduled in this matter for December 8, 2022 at 10:15 a.m. ECF No. 30.

    Liberty's claims arise from Defendants' use of Liberty's famous trademarks and distinctive trade dress in their hit television show, *Better Call Saul*, to exploit Liberty's goodwill and brand. *Id.* at ¶¶ 1-4, 35-56, 67-69. In Episode 2 of Season 6, Defendants used Liberty's trademarks and trade dress to misrepresent to millions of viewers that Liberty is a criminal operation that steals from customer tax refunds. *Id.* at ¶¶ 1, 35-47, 53-55. At the start of the episode, the lead character, Saul Goodman, shows up outside "Sweet Liberty Tax Services" where a replica of Liberty's famous Statue of Liberty inflatable is in full view. *Id.* at ¶ 1, 43 and Figure 8. Sweet Liberty Tax Services is depicted in a red, white, and blue motif, just like an actual Liberty Tax location, and Liberty's other Statue of Liberty-themed trade dress is featured prominently throughout the show, including a close copy of Liberty's trademarked logo on a tax refund check. *Id.* at ¶¶ 1, 3 and Figures 1 and 2, 44 and Figures 11 and 12, 45 and Figure 13, 46 and Figure 13. After extensive use of Liberty's trademarks and trade dress, the show builds to a climax in which Saul's wife, Kim Wexler, calls the IRS and outs "Sweet Liberty Tax Services" for stealing from customers. *Id.* at ¶¶ 40, 47. In the build up to this scene, Defendants' extensive use of Liberty's trademarks and trade dress explicitly misleads consumers into believing that "Sweet Liberty Tax Services" is

Hon. Paul G. Gardephe
November 14, 2022
Page 2

Liberty Tax Service and that Liberty endorsed or otherwise authorized the show. *Id.* at ¶¶ 1, 3, 17, 36, 41-47.

The Amended Complaint sets forth well-pleaded allegations in support of its claims for (i) trademark infringement under the Lanham Act, (ii) trade dress infringement under the Lanham Act, (iii) trademark dilution under N.Y. Gen. Bus. Law § 360-*l*, and (iv) defamation. *Id.* at ¶¶ 64-127. Defendants' request for leave to file a motion to dismiss should be denied because Liberty states actionable claims and the purported bases for Defendants' motion involve issues of fact that cannot be resolved on a motion to dismiss. Defendants fail to establish good cause to stay discovery, especially given Defendants' request for nine months of fact discovery. ECF No. 28-1.

## I. The First Amendment Is Not A Bar To Liberty's Claims

Defendants continue to rely on the First Amendment in asserting they had an unfettered right to misrepresent Liberty as a criminal enterprise, mislead the public, and damage Liberty's valuable intellectual property, all in violation of the Lanham Act and New York law, because their misrepresentation was part of a television show. However, "[t]rademark protection is not lost simply because the allegedly infringing use is in connection with a work of artistic expression." *Cliff Notes, Inc. v. Bantam Doubleday Dell Pub. Group, Inc.*, 886 F.2d 490, 493 (2d Cir. 1989); *see also Rogers v. Grimaldi*, 875 F.2d 994, 997 (2d Cir. 1989) ("Poetic license is not without limits" because "the purchaser of a book, like the purchaser of a can of peas, has a right not to be misled as to the source of the product.").

Dismissal pursuant to Rule 12(b)(6) is not appropriate because the two prongs of the *Rogers* test – artistic relevance and misleading the public – involve issues of fact that cannot be resolved here without factual proof of the existence of the former and the absence of the latter. *See, e.g., Hermes Int'l et al. v. Rothschild*, No. 22-cv-384-JSR, --- F.Supp. 3d ---, 2022 WL 1564597, *5 (S.D.N.Y. May 18, 2022) (declining to analyze artistic relevance and explicit misleadingness at the motion to dismiss stage). To determine whether Defendants' use and misrepresentation of Liberty's marks gives rise to a likelihood of confusion, the Court applies the *Polaroid* factors. *See Polaroid Corp. v. Polaroid Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). Where, as here, a plaintiff raises genuine issues of material fact on the likelihood of confusion (ECF No. 29 at ¶¶ 3-4, 44, 47, 52), courts decline to perform the *Rogers-Polaroid* analysis before discovery. ECF No. 25 at 3-4 (collecting cases).

Defendants overstate what it means for a use to be "explicitly misleading." ECF No. 32 at 2. The Second Circuit does not require an express, direct statement. In *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366 (2d Cir. 1993), the court remanded for consideration of the *Polaroid* factors even where there was (i) no affirmative misrepresentation of sponsorship, and (2) a disclaimer of association on the cover of the work. 996 F.2d at 1379-80; *see also A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 364 F.Supp.3d 291, 332 (S.D.N.Y. 2019) (use of celebrity image on t-shirt, without explicit statement of sponsorship, sufficient). Liberty's allegations that Defendants explicitly misled consumers are not boilerplate. Rather, the Amended Complaint sets forth detailed allegations explaining how Defendants' extensive use and copying of Liberty's trademarks and trade dress in Defendants' television show, advertising, and social media explicitly misled consumers into believing that Liberty sponsored or endorsed the show. ECF No. 29 at ¶¶

Hon. Paul G. Gardephe
November 14, 2022
Page 3

42-47. Defendants' renewed pre-motion letter proves the point in improperly excising paragraph 47 of the Amended Complaint to suggest that Liberty's allegations were merely conclusory or boilerplate. ECF No. 31 at 2 (first sentence).

Finally, Defendants' reliance on cases largely outside this Circuit does not establish that the First Amendment applies to Defendants' unauthorized use of Liberty's intellectual property in advertising and social media. ECF No. 29 at ¶¶ 48-52. Advertising is classic commercial speech that falls outside *Rogers*. *See Donahue v. Artisan Entm't, Inc.*, 2002 WL 523407, at *7 n. 5 (S.D.N.Y. Apr. 8, 2002) (noting that *Rogers* did not concern "trade or advertising"); *Yankee Pub. Inc. v. News America Pub. Inc.*, 809 F. Supp. 267, 276 (S.D.N.Y. 1992) ("Free speech rights do not extend to labeling or advertising products" under *Rogers*). While the background section in *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't, Inc.*, 868 F. Supp. 2d 172,175 (S.D.N.Y. 2012) noted that the allegedly infringing scene was used in advertising a film, the *Louis Vuitton* court did not expressly analyze whether *Rogers* applies to use of infringing content in advertising or social media.

Thus, Defendants' request to file a motion to dismiss should be denied because whether Defendants' misrepresentations are protected by the First Amendment and whether the requisite confusion exists are questions of fact not appropriate for a motion to dismiss.

## II.     Liberty Plausibly Alleged A Claim Under the New York Dilution Statute

Defendants' First Amendment challenge to Liberty's state law trademark dilution claim fails for the same reasons as Defendants' challenge to Liberty's Lanham Act claims. Liberty more than plausibly alleges claims for blurring and/or tarnishment under the New York trademark dilution statute. Blurring is "the whittling away of an established trademark's selling power through its unauthorized use by others." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 105 (2d Cir. 2009) (citations and quotations omitted). Tarnishment occurs when a trademark "is portrayed in an unwholesome or unsavory context." *Id.* at 110. New York law only requires a trademark holder to prove a likelihood of dilution of the distinctive quality of a mark or trade name to establish a claim for trademark dilution. N.Y. Gen. Bus. Law § 360-*l*.

Liberty's Amended Complaint states a claim that Defendants' use of Liberty's trademarks and trade dress to portray Liberty as a criminal operation is likely to cause dilution of the distinctive quality of Liberty's marks and trade name. Like its challenge to Liberty's Lanham Act claims, Defendants' First Amendment challenge to Liberty's state trademark dilution claim raises factual questions that cannot be decided on a motion to dismiss without discovery. *See, e.g., Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 Fed.Appx. 389, 392 (2d Cir. 2003) (holding that district court erred in dismissing plaintiff's state law dilution claim with prejudice where Sony failed to prove artistic relevance at the pleading stage in order to assert a valid First Amendment defense); *Cf. A.V.E.L.A., Inc.*, 364 F.Supp.3d at 316 (holding that disputed issues of fact precluded summary judgment on trademark dilution claim).

## III.    Liberty Tax Plausibly States A Clam For Defamation

Again, Liberty more than plausibly states a claim for defamation. Am. Compl., ECF No. 29 at ¶¶ 107-121. To state a claim for defamation, a plaintiff must plead: 1) a false statement, and

2) publication to a third party, 3) absent privilege or authorization, which 4) causes harm, unless the statement is defamatory *per se*, in which case harm is presumed. *Stepanov v. Dow Jones & Co., Inc.*, 120 A.D.3d 28, 987 N.Y.S.2d 37 (1st Dept. 2014). Defendants do not dispute that the Amended Complaint pleads Defendants' false statements with sufficient particularity, ECF No. 32 at p. 3, including that Liberty engages in "tax preparer fraud," that "their clients always end up with smaller refunds than they deserve," and that "these creeps file legit returns with [the IRS], give the client fake ones that show about half the proper amount and then pocket the difference." ECF No. 29 at ¶¶ 40, 109. Defendants also do not dispute that the Amended Complaint alleges that such false statements were published to third parties—including at least 1.481 million viewers during the initial broadcast—that the false statements were not privileged or authorized, and that they caused Liberty harm and/or were defamatory *per se*.

Defendants purport to challenge Liberty's defamation claim by arguing that Liberty failed to demonstrate that viewers understood Defendants' false statements to be "of and concerning" Liberty Tax. ECF No. 32 at p. 3. However, a statement need not specifically identify the plaintiff to be actionable. *See Prince v. Fox Tel. Stations, Inc.*, 93 A.D.3d 614 (1st Dept. 2012) (affirming denial of defendants' motion to dismiss defamation claim finding that news broadcast was of and concerning plaintiff, even though, on its face, broadcast referred to different entity with similar name, as statement was reasonably understood to be about plaintiff); *Cuthbert v. Natl. Org. for Women*, 207 A.D.2d 624, 625-26 (3d Dept. 1994) ("[t]he fact that the material did not identify plaintiff by name does not preclude his maintenance of a defamation cause of action."); *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 923 (2d Cir. 1987) (stating identifying plaintiff by her maiden name qualified as "of and concerning" plaintiff because the audience "need[ed] only believe that it was about her"). Liberty's Amended Complaint specifically alleges that viewers understood the false statements were about Liberty Tax given the virtually identical name (i.e., "Sweet Liberty Tax Services") and Defendants' extensive use of Liberty's trademarks and signature trade dress, including the Liberty Tax Service logo, Statue of Liberty inflatable, and red, white, and blue motif. At best, Defendants' defense raises issues of fact as to what viewers reasonably understood that cannot be resolved on a motion to dismiss.

The fact that a character describes Defendants' "Sweet Liberty Tax Services" location as a "little mom and pop outfit" does not undermine Liberty's defamation claim. To the contrary, such description is consistent with Liberty's business given that Liberty is a franchisor, ECF No. 29 at ¶ 13, and its individual tax preparation locations are operated by franchisee locations that look strikingly similar to the location depicted in the show. *See* ECF No. 29 and *compare* Figure 1 (Defendants' Sweet Liberty Tax Services location) with Figure 2 (actual Liberty Tax franchisee location). Defendants' reliance on *Sparrow Fund Management LP v. MiMex Group, Inc.*, 2019 WL 1434719, *11 (S.D.N.Y. Mar. 31, 2019) (Gardephe, J.) is not helpful to Defendants. That case observed that "[c]ourts have allowed [defamation] claims where the statement did not identify the plaintiff, but named an individual who was understood to represent that plaintiff." *Id.* (quoting *Sparrow Fund Management LP v. MiMex Group, Inc.*, 2019 WL 1434719, *11 (S.D.N.Y. Mar. 31, 2019) (Gardephe, J.) (quoting *Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 632 (E.D.N.Y. 2018)). Moreover, the *Sparrow Fund* court's holding that plaintiff failed to demonstrate that the defamatory statements were "of and concerning" the plaintiff is factually dissimilar because, unlike this case, there was nothing in *Sparrow Fund* that associated the

statements with the plaintiff. By contrast, here Defendants' statements were associated with Liberty through the extensive use of Liberty's famous trademarks and distinctive trade dress.

### IV. Defendants Fail To Establish Good Cause For A Stay

Defendants fail to establish good cause for a stay. Courts hold that "[a] motion to dismiss does not automatically stay discovery" and "discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed." *Hong Leong Finance Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (E.D.N.Y. 2013) (quoting *Moran v. Flaherty*, 1992 WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992)). A party seeking a stay of discovery must present "substantial arguments for dismissal[ ]." *Kaplan v. Lebanese Canadian Bank, SAL*, --- F.Supp.3d ---, 2022 WL 2541081, *1 (S.D.N.Y. July 7, 2022) (quotation omitted). This standard requires "a strong showing that the plaintiff's claim is unmeritorious." *Id.* (quoting *Telesca v. Long Island Hous. P'ship, Inc.*, 2006 WL 1120636, at *1 (E.D.N.Y. Apr. 27, 2006)).

Defendants fail to make a strong showing that Liberty's claims are unmeritorious. Liberty's Amended Complaint meets the Rule 12(b)(6) plausibility standard by alleging that Defendants' use of Liberty's trademarks and trade dress in their *Better Call Saul* television show, social media, and advertising states actionable claims for trademark and trade dress infringement, dilution, and defamation. Defendants primarily rely on the First Amendment as a defense. But, as already stated, the First Amendment is not an absolute bar to liability, especially where, as here, Defendants' use of Liberty's marks was "intend[ed] to associate with the mark[s'] popularity and good will" rather than any legitimate artistic association. *See Louis Vuitton*, 868 F. Supp. 2d at 178. Defendants' "Sweet Liberty Tax Services" appears out of nowhere for a single episode of the six season show and has no genuine relevance to the show's storyline. Defendants easily could have called their tax preparation business by any other name, but they arbitrarily chose to exploit and besmirch the popularity and good will of Liberty's brand

Further, Defendants' First Amendment defense does not present a "substantial argument for dismissal" because the two prongs of the *Rogers* test – artistic relevance and misleading the public – involves issues of fact that cannot be properly resolved in this case on a motion to dismiss. Defendants' counsel acknowledged that substantial discovery will be required on the claims and defenses in this case in requesting nine months for fact discovery during the parties' negotiation of the proposed Civil Case Management Plan and Scheduling Order. ECF No. 28-1. Given Defendants' request for nine months of fact discovery, the discovery period should commence immediately.

For the foregoing reasons, Liberty respectfully requests that the Court deny Defendants' request to move to dismiss the Amended Complaint and request a stay of discovery.

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI LLP

Hon. Paul G. Gardephe
November 14, 2022
Page 6

                                          PETER G. SIACHOS

cc:     All counsel of record *via* ECF