# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JTH TAX LLC d/b/a LIBERTY TAX SERVICE,** | |
| Plaintiff, | **ECF CASE** |
| v. | No. 1:22-cv-06526-PGG |
| **AMC NETWORKS INC. & SONY PICTURES TELEVISION INC.,** | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF <u>THEIR MOTION TO DISMISS</u>

Gianni P. Servodidio (GS-0713)
Susan J. Kohlmann (SK-1855)
Allison N. Douglis (#5711015)
JENNER & BLOCK LLP
1155 Avenue of the Americas
29th Floor
New York, NY 10036
Tel.: (212) 891-1600
Fax: (212) 891-1699
gservodidio@jenner.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 3

STANDARD OF REVIEW ........................................................................................................ 6

ARGUMENT ............................................................................................................................. 7

I.      The Challenged Episode is Fully Protected by the First Amendment ............................... 7

        A.      The Portrayal of "Sweet Liberty Tax Services" Is Artistically Relevant. ............. 8

        B.      The Episode Fails to Explicitly Mislead as to the Source or Content of the
                Work. ...................................................................................................................... 10

        C.      The First Amendment Applies at Least as Strongly to Plaintiff's Dilution
                Claim. ..................................................................................................................... 15

II.     Plaintiff Otherwise Fails to State an Actionable Claim for Trademark
        Infringement. ................................................................................................................... 17

III.    Defendants' Expressive Conduct Cannot Ground Plaintiff's Claim for
        Defamation. ..................................................................................................................... 19

        A.      The FAC Fails to Allege Actionable Statements of Fact. ..................................... 20

        B.      The FAC Fails to Allege Any Statements "Of and Concerning" Plaintiff. .......... 23

CONCLUSION ........................................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adelson v. Harris*,
    973 F. Supp. 2d 467 (S.D.N.Y. 2013)........................................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................6, 7

*Baggett v. Bullitt*,
    377 U.S. 360 (1964)........................................................................................7, 8

*Bejjani v. Manhattan Sheraton Corp.*,
    No. 12-cv-6618, 2013 WL 3237845 (S.D.N.Y. June 27, 2013) ............................11

*Brown v. Showtime Networks, Inc.*,
    394 F. Supp. 3d 418 (S.D.N.Y. 2019).........................................................8, 11, 12

*Caterpillar Inc. v. Walt Disney Co.*,
    287 F. Supp. 2d 913 (C.D. Ill. 2003) ..............................................................18

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002).............................................................................3

*Champion v. Moda Operandi, Inc.*,
    561 F. Supp. 3d 419 (S.D.N.Y. 2021)...........................................................8, 11

*Chapin v. Knight-Ridder, Inc.*,
    993 F.2d 1087 (4th Cir. 1993) ........................................................................20

*Charles Atlas, Ltd. v. DC Comics, Inc.*,
    112 F. Supp. 2d 330 (S.D.N.Y. 2000).............................................................16

*Cohn v. Nat'l Broad. Co.*,
    67 A.D.2d 140 (1st Dep't 1979) ......................................................................24

*Davis v. Walt Disney Co.*,
    No. 04-cv-1729, 2004 WL 1895234 (D. Minn. 2004).....................................22, 23

*de Rothschild v. Serlin*,
    No. 19-cv-11439, 2021 WL 860227 (S.D.N.Y. Mar. 8, 2021)..............................20

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*,
    547 F.3d 1095 (9th Cir. 2008) ......................................................................8, 13

*Fairstein v. Netflix, Inc.*,
  553 F. Supp. 3d 48 (S.D.N.Y. 2021).........................................................................................3

*Films of Distinction, Inc. v. Allegro Film Prods.*,
  12 F. Supp. 2d 1068 (C.D. Cal. 1998) ...............................................................................21, 22

*Fort Worth Emps.' Ret. Fund v. Biovail Corp.*,
  615 F. Supp. 2d 218 (S.D.N.Y. 2009)................................................................................24, 25

*Fortres Grand Corp. v. Warner Bros. Ent. Inc.*,
  947 F. Supp. 2d 922 (N.D. Ind. 2013) ................................................................................15

*Fortres Grand Corp. v. Warner Bros. Ent. Inc.*,
  763 F.3d 696 (7th Cir. 2014) .................................................................................................17

*Frank v. Nat'l Broad. Co.*,
  119 A.D.2d 252 (2d Dep't 1986) ..........................................................................................21

*Gayle v. Allee*,
  No. 18-cv-3774, 2021 WL 120063 (S.D.N.Y. Jan. 13, 2021) ................................................10

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
  590 F. Supp. 2d 625 (S.D.N.Y. 2008)................................................................................17, 18

*Greene v. Paramount Pictures Corp.*,
  813 F. App'x 728 (2d Cir. 2020) ...........................................................................................23

*Hodnett v. Medalist Partners Opp'y Master Fund II-A, L.P.*,
  No. 21-cv-38, 2022 WL 4072935 (S.D.N.Y. Sept. 2, 2022) ..................................................19

*In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*,
  797 F.3d 148 (2d Cir. 2015)....................................................................................................7

*Kim v. Kimm*,
  884 F.3d 98 (2d Cir. 2018)......................................................................................................6

*Kinsey v. N.Y. Times Co.*,
  991 F.3d 171 (2d Cir. 2021)...................................................................................................19

*L.L. Bean, Inc. v. Drake Pubs., Inc.*,
  811 F.2d 26 (1st Cir. 1987)....................................................................................................16

*Lang v. Ret. Living Publ'g Co.*,
  949 F.2d 576 (2d Cir. 1991)...................................................................................................17

*Lokhova v. Halper*,
  441 F. Supp. 3d 238 (E.D. Va. 2020) ....................................................................................20

*Lombardo v. Dr. Seuss Enters., L.P.*,
   279 F. Supp. 3d 497 (S.D.N.Y. 2017)..................................................................11, 15, 16

*Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*,
   868 F. Supp. 2d 172 (S.D.N.Y. 2012)............................................................ *passim*

*Mattel, Inc. v. MCA Records, Inc.*,
   296 F.3d 894 (9th Cir. 2002) ........................................................................13, 16

*Medina v. Dash Films, Inc.*,
   No. 15-cv-2551, 2016 WL 3906714 (S.D.N.Y. July 14, 2016).............................11

*MGFB Props., Inc. v. Viacom Inc.*,
   54 F.4th 670 (11th Cir. 2022) ......................................................................8

*Mossack Fonseca & Co., S.A. v. Netflix Inc.*,
   No. 19-cv-9330, 2020 WL 8510342 (C.D. Cal. Dec. 23, 2020).............................22

*Ollman v. Evans*,
   750 F.2d 970 (D.C. Cir. 1984) ........................................................................7

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
   602 F.3d 57 (2d Cir. 2010)..........................................................................11

*Polaroid Corp. v. Polarad Elecs. Corp.*,
   287 F.2d 492 (2d Cir. 1961)..........................................................................7

*Red Fort Cap., Inc. v. Guardhouse Prods., LLC*,
   No. 19-cv-686, 2020 WL 5819549 (S.D.N.Y. Sept. 30, 2020) .............................24

*Roberts v. Bliss*,
   229 F. Supp. 3d 240 (S.D.N.Y. 2017).................................................................3

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989)............................................................ *passim*

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000)..........................................................................3

*Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*,
   No. 18-cv-4921, 2019 WL 1434719 (S.D.N.Y. Mar. 31, 2019).............................23

*Stewart Surfboards, Inc. v. Disney Book Grp., LLC*,
   No. 10-cv-2982, 2011 WL 12877019 (C.D. Cal. May 11, 2011)......................10, 13

*Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*,
   823 F.3d 153 (2d Cir. 2016)..........................................................................17

*Twentieth Century Fox Television v. Empire Distrib., Inc.*,
    875 F.3d 1192 (9th Cir. 2017) ......................................................................14, 15

*Wham-O, Inc. v. Paramount Pictures Corp.*,
    286 F. Supp. 2d 1254 (N.D. Cal. 2003) ...................................................................18

*Yankee Publ'g Inc. v. News Am. Publ'g Inc.*,
    809 F. Supp. 267 (S.D.N.Y. 1992) ...........................................................................16

STATUTES

15 U.S.C. § 1114 ..............................................................................................................6

15 U.S.C. § 1125(a) .........................................................................................................6

15 U.S.C. § 1125(c) .........................................................................................................6

New York General Business Law § 360-*l* ...............................................................6, 16

Trademark Modernization Act of 2020, Consolidated Appropriations Act, 2021, Pub. L. 116-260
    ...................................................................................................................................8

OTHER AUTHORITIES

H.R. Rep. No. 116-645 (2020)..........................................................................................8

*My Country 'Tis of Thee*, Library of Congress, https://www.loc.gov/item/ihas.200000012/ (last
    visited Dec. 27, 2022) .............................................................................................8

*U.S. Treasury Check Security Features*, U.S. Treasury Bureau Fiscal Serv. (June 2021),
    https://fiscal.treasury.gov/files/reference-guidance/gold-book/check-security-features.pdf.....4

In accordance with the Court's Order dated December 6, 2022, ECF No. 36, Defendants AMC Networks Inc. & Sony Pictures Television Inc. ("AMC Networks" and "Sony Pictures," and collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss JTH Tax LLC d/b/a Liberty Tax Service ("Liberty Tax")'s First Amended Complaint, ECF No. 29 ("FAC").

## INTRODUCTION

This case stretches the reach of trademark and defamation laws beyond their breaking point. Plaintiff, a provider of tax services, has brought claims against two entertainment companies for damages and injunctive relief for the farcical portrayal of two returning fictional characters who happen to operate a fictional tax business on the critically acclaimed hit TV show *Better Call Saul*. Long-established precedent, firmly rooted in the First Amendment, confirms that trademark owners like Plaintiff Liberty Tax do not wield *de facto* veto power over the content of expressive works in these circumstances. These claims should be dismissed with prejudice.

The two-part first episode of Season 6 of *Better Call Saul* (the "Episode") includes, as one of multiple plots, the return of hapless married couple Craig and Betsy Kettleman, who were standout characters from Season 1 of the six-season show. In that first season, Craig, a former county treasurer, had embezzled 1.6 million dollars from the State of New Mexico. The shady lawyer and title character Jimmy McGill (also known as Saul Goodman), wanted to represent Craig, but Craig's wife, Betsy, rejected McGill as "the type of lawyer guilty people hire." *Better Call Saul: Hero* at 00:10:00–00:12:00 (AMC television broadcast Feb. 23, 2015). This snub triggered a series of far-fetched plot twists that drove much of the narrative arc of the first season: McGill "stole" the embezzled funds from Craig and coerced him to take a plea deal that included prison time and which was brokered by McGill's future wife Kim Wexler, another lawyer at a white-shoe New Mexico firm.

1

In the Episode at issue, years later, Craig has been released from prison and seeks to restart his professional life.  In a nod to Craig's newfound freedom, the Kettlemans are now operating a tax business named "Sweet Liberty Tax Services" out of a trailer in the middle of the New Mexico desert adorned with images of Americana—including a comically distorted blue and white Statue of Liberty inflatable, a garish interior mural, and an exterior wrapped in the red, white and blue colors of the American flag.  As the Episode develops, McGill and his now-wife Wexler target the Kettlemans as unwitting patsies in a scheme to discredit another lawyer and then threaten to expose the Kettlemans to the IRS for cheating customers out of tax refunds.

Plaintiff's FAC includes various trademark claims against Sony Pictures and AMC Networks, implausibly alleging that viewers of the show will believe Plaintiff has sponsored or endorsed the Episode because of the use of the *fictional* and different name "Sweet Liberty Tax Services" and because of the set design of the Kettlemans' office.  However, under the Second Circuit's seminal *Rogers v. Grimaldi* decision, content creators are not subject to trademark infringement or dilution claims on the basis of artistically relevant uses of third-party trademarks in their expressive works that are not explicitly misleading.  Under a straightforward application of the *Rogers* test, the Court should dismiss Plaintiff's federal and state trademark claims.

Shifting gears, Plaintiff's FAC also includes a claim for defamation that fares no better than the trademark allegations.  Plaintiff has not plausibly alleged that viewers would understand a scene in a fictional show about the alleged misdeeds of two returning fictional characters to be statements *of fact*, let alone statements of fact *of and concerning* Plaintiff.  Nor are the Episode's allegedly defamatory statements, which are purely about the fictional Kettlemans' misdeeds, capable of defaming Plaintiff through the alleged implication that the Kettlemans operate one of Plaintiff's franchised locations.  And beyond its facial deficiency, the defamation claim cannot be

reconciled with the trademark claims: if Plaintiff's allegations are to be believed that the Episode somehow defames Plaintiff by portraying it as a criminal enterprise, no viewer would assume that Plaintiff would ever endorse or approve such a portrayal as part of the Episode.

## BACKGROUND[1]

Defendants Sony Pictures and AMC Networks are well-known entertainment companies. Sony Pictures is involved in the creation, production, and distribution of popular television programs such as *Outlander*, *The Crown*, and *The Good Doctor*, and AMC Networks has broadcast such hit shows as *Mad Men* and *The Walking Dead*. *Better Call Saul* is a "spin-off, prequel, and sequel of [Defendants'] critically acclaimed television series *Breaking Bad*." FAC ¶ 32. The fictional series "follows the transformation of Jimmy McGill (played by Bob Odenkirk), a former con artist, into the egocentric criminal lawyer Saul Goodman, over a six-year period prior to the events in *Breaking Bad*." *Id.* ¶ 33. The Episode at issue, entitled "Carrot and Stick," aired on April 18, 2022. *Id.* ¶ 35; Decl. of Gianni P. Servodidio Ex. A (*Better Call Saul: Carrot and Stick* (AMC television broadcast Apr. 18, 2022)) ("Episode").

McGill's and Wexler's role in the Episode opens with the couple plotting a scheme to humiliate and discredit another lawyer by enlisting the aid of the Kettlemans. Episode at 00:07:28–00:10:00. The Episode eventually cuts to McGill as he stares up at a huge, bloated and distorted, blue and white inflatable that resembles the Statue of Liberty. *Id.* at 00:11:30–00:12:27. It then pans back to show that the inflatable is standing next to a trailer building in a deserted location

---

[1] The FAC's well-pleaded factual allegations are accepted as true solely for purposes of this Motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). The FAC is further deemed to include any documents that are "integral to the [complaint]," *id.* at 153, and "any statements or documents incorporated in it by reference," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). Here, the FAC relies upon and incorporates *Better Call Saul* and its predecessor work *Breaking Bad*. *See* FAC ¶¶ 1–2, 31–40; *see also, e.g.*, *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 62 (S.D.N.Y. 2021); *Roberts v. Bliss*, 229 F. Supp. 3d 240, 245, 248 (S.D.N.Y. 2017).

covered in its entirety with an American flag design, with a banner reading "SWEET LIBERTY Tax Services" on the trailer.  *Id.*  Images of the inflatable and the exterior of the building from the Complaint are depicted below[2]:

 

FAC at 2 fig.1, 12 fig.8.

Moving inside the building, the viewer sees the Kettleman characters cheerfully working with a client.  The interior of the set shows a mural of the Statue of Liberty with fireworks, which McGill gazes at approvingly.  Episode at 00:12:28–00:14:30.  An image of the interior of the set from the Complaint is below[3]:



FAC at 14 fig.13.

---

[2] A viewer would recognize the inflatable Statue of Liberty as the same inflatable prop that Saul Goodman had on the top of his law office in *Breaking Bad*, which was first introduced in the *Breaking Bad* Season 2 episode "Better Call Saul."  *See Breaking Bad: Better Call Saul* (AMC television broadcast Apr. 26, 2009).

[3] The scene first showing the interior of the business also fleetingly depicts a check being cut that shows the "Sweet Liberty Tax Services" name with the head of the Statue of Liberty (thus resembling an U.S. Treasury Department refund check).  *See* FAC at 14 fig.12; *U.S. Treasury Check Security Features*, U.S. Treasury Bureau Fiscal Serv. (June 2021), https://fiscal. treasury.gov/files/reference-guidance/gold-book/check-security-features.pdf.

Later in the episode, McGill and Wexler return to the "Sweet Liberty" location, where McGill gazes at the inflatable balloon and comments "How the mighty have fallen, huh?  Lady Liberty's a nice touch, though."  Episode at 00:51:00–00:58:37.  Once inside, Wexler purports to call the criminal investigations division of the Albuquerque Internal Revenue Service to report that a "mom and pop" outlet that she has "had [her] eye on" is engaged in tax preparer fraud.  *Id.*  The Kettlemans plead with Wexler for her silence, and McGill and Wexler walk out of the business and drive away as McGill mutters "wolves and sheep" emphatically under his breath.  *Id.*

The Episode ends with a disclaimer reading, in relevant part: "THE CHARACTERS AND INCIDENTS PORTRAYED AND THE NAMES USED HEREIN ARE FICTITIOUS, AND ANY SIMILARITY TO THE NAME, CHARACTER OR HISTORY OF ANY PERSON IS ENTIRELY COINCIDENTAL AND UNINTENTIONAL."  *Id.*  at 00:59:10.  It then closes with the logos of the production companies associated with the Episode, including Sony Pictures Television.  *Id.* at 00:59:10–00:59:21.

Plaintiff Liberty Tax alleges that the Episode infringes its trademark and trade dress rights under federal law and dilutes its rights under New York state law.  *See generally* FAC.  Plaintiff alleges that it offers tax preparation services.  FAC ¶¶ 13–14.  It claims trademark rights in LIBERTY TAX SERVICE and LIBERTY TAX for tax preparation services.  LIBERTY TAX SERVICE, Reg. No. 2,314,991; LIBERTY TAX, Reg. No. 2,465,670; FAC ¶¶ 19–20 & Exs. 1, 2. It also claims rights in various commonly used design marks for depictions of the Statue of Liberty, also for tax preparation services.  FAC ¶¶ 21–23 & Exs. 3, 4, 5.  Plaintiff further alleges that it owns rights in trade dress, which is described at varying points as consisting of "the red, white, and blue motif and extensive use of the Statue of Liberty, including Statue of Liberty inflatables," FAC ¶ 17; and the "use of Statue of Liberty inflatables and a red, white, and blue motif," *id.* ¶ 26.

5

The FAC alleges no use of, or plans to use, Plaintiff's marks for any entertainment or television production services.

The FAC also alleges that the Episode casts Plaintiff in a "negative light." *Id.* ¶ 62.  More specifically, the FAC alleges that Wexler calls to report "[t]ax preparer fraud" by a "rundown little mom and pop outfit" that she has "had [her] eye on for a while," whose "clients always end up with smaller refunds than they deserve," then elaborates that "what [she's] thinking is these creeps file legit returns with [the agency], give the clients fake ones that show about half the proper amount and then pocket the difference."  FAC ¶ 40.  The FAC does not allege that the Episode made any statements about Liberty Tax as an entity or that the Episode, or *Better Call Saul*, generally, purports to be commenting on or recounting real-life events.

Plaintiff initially filed a Complaint on August 1, 2022, which raised claims for registered trademark and trade dress infringement under 15 U.S.C. § 1114, trademark and trade dress dilution under 15 U.S.C. § 1125(c), and defamation, disparagement, and injurious falsehoods under state law.  *See generally* ECF No. 1.  Following a September 21, 2022 pre-motion letter from Defendants requesting permission to file a motion to dismiss the Complaint in its entirety, *see* ECF No. 24, Plaintiff filed the FAC on October 27, 2022, which omits the claims for registered trade dress infringement, Lanham Act dilution, disparagement, and injurious falsehoods, and instead alleges (1) registered trademark infringement under 15 U.S.C. § 1114; (2) unregistered trade dress infringement under 15 U.S.C. § 1125(a); (3) trademark dilution under New York General Business Law § 360-*l*; and (4) defamation.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While all reasonable

inferences are drawn in the plaintiff's favor, the Court is "not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 159 (2d Cir. 2015) (alteration in original) (citations omitted) (quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

## I.     The Challenged Episode is Fully Protected by the First Amendment

Plaintiff's trademark claims fail under the Second Circuit's well-settled precedent in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), and its progeny.  *Rogers* held that given the First Amendment interests at stake in artistic works, the Lanham Act "should be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression"—which is the case "unless the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work." *Id.* at 999; *see also Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*, 868 F. Supp. 2d 172, 177 n.9 (S.D.N.Y. 2012) (collecting cases applying *Rogers* to the content of expressive works).  Rogers properly refocuses the typical multifactor likelihood of confusion test in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961), with its two-prong test, consistent with the recognition that "the predictability of decisions . . . is of crucial importance in an area of law touching upon First Amendment values[.]" *See Ollman v. Evans*, 750 F.2d 970, 978 (D.C. Cir. 1984), *abrogated on other grounds by Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990); *see also Baggett v. Bullitt*, 377 U.S. 360, 372 (1964) (requiring courts to "steer far wider of the unlawful zone" where "[w]e are dealing with indefinite statutes whose terms, even narrowly construed, abut upon sensitive areas of basic First

Amendment freedoms" (quotation marks omitted)).[4] Because Plaintiff cannot show that the use of

the "Sweet Liberty Tax Services" name and set design is artistically irrelevant to *Better Call Saul*

or that its use is explicitly misleading, Plaintiff's trademark claims uniformly fail.

    **A.**    **The Portrayal of "Sweet Liberty Tax Services" Is Artistically Relevant.**

*Rogers* first asks whether the alleged use of the plaintiff's mark "has *no* artistic relevance

to the underlying work *whatsoever*[.]"  *Rogers*, 875 F.2d at 999 (emphasis added).  This is a

"purposely low" threshold.  *Louis Vuitton*, 868 F. Supp. 2d at 178; *accord Champion v. Moda

Operandi, Inc.*, 561 F. Supp. 3d 419, 435 (S.D.N.Y. 2021).  Indeed, the "level of relevance" must

only be "above zero[.]"  *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 442 (S.D.N.Y.

2019) (quoting *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir.

2008)); *see also MGFB Props., Inc. v. Viacom Inc.*, 54 F.4th 670, 680 (11th Cir. 2022).  There is

no doubt here that this standard is met.

    The portrayal of the Kettlemans and their "Sweet Liberty Tax Services" business and set

design in the Episode easily meets the threshold for artistic relevance on multiple levels.  A viewer

could readily perceive "Sweet Liberty" as a nod to Craig's release from prison, *see* FAC ¶¶ 38–

39, and as evoking the line "Sweet Land of Liberty" from the famous song *America (My Country

'Tis of Thee)*, *see, e.g.*, *My Country 'Tis of Thee*, Library of Congress,

https://www.loc.gov/item/ihas.200000012/ (last visited Dec. 27, 2022).  The Kettlemans' selection

of this name, coupled with an office covered with gaudy symbols of Americana (including a use

of the Statue of Liberty on a check design that emulates an official U.S. Treasury check) and a

---

[4] Congress recently affirmed *Rogers* and its underlying First Amendment protections in enacting
the Trademark Modernization Act of 2020, Consolidated Appropriations Act, 2021, Pub. L. 116-
260.  The legislative history of that Act reflects that Congress understood that the *Rogers* test
"appropriately recognizes the primacy of constitutional protections for free expression," while still
"respecting a trademark owner's right to prevent unauthorized use of its mark and the public's
interest in avoiding confusion."  H.R. Rep. No. 116-645, at 20 (2020).

comedically distorted Statue of Liberty inflatable, is richly ironic: like McGill, they are grifters who wrap themselves with patriotic iconography to cloak their checkered past and ongoing misdeeds.  Indeed, McGill admires the sheer audacity of the Kettlemans and observes that "Lady Liberty's a nice touch," *see supra* page 5, and he ends up using that same inflatable for the exterior of his *Breaking Bad*-era law office, which was first introduced to viewers in *Breaking Bad*'s Season 2 episode called "Better Call Saul," *see supra* page 4 n.2.  This reflects McGill's broader penchant for collecting mementos from those he encounters over time; a viewer could readily conclude that he also took the idea for this inflatable (or the inflatable itself) for his own office.  And Kim Wexler's manipulative threat to expose the Kettlemans to the IRS reveals the downward moral arc of her character from a young, naïve associate to McGill's hard-nosed "partner in crime."

This is more than sufficient to clear the "purposely low" bar for artistic relevance.  *See Louis Vuitton*, 868 F. Supp. 2d at 178.  The alleged use of a mark is artistically relevant where it contributes to the humor and irony of a scene and explicates a character's personality.  For example, in *Louis Vuitton* the court considered a scene from the movie "*The Hangover: Part II*" in which one of the main characters is carrying what the plaintiff alleged to be a knockoff Louis Vuitton bag.  868 F. Supp. 2d at 174–75.  The character tells another character to be careful around the bag because "that is a Lewis Vuitton" and no further reference is made to the bag.  *Id.* at 175.  The court concluded that the alleged use of the Louis Vuitton trademark easily cleared the bar for artistic relevance because the reference to be "careful" because the bag was a "Lewis Vuitton" comes across both as snobbish (because the public associates Louis Vuitton with luxury) and as funny (because the character "cannot correctly pronounce the brand name of one of his expensive possessions").  *Id.* at 178.  So too, here: the misshapen, distorted Statue of Liberty inflatable and the gaudy American-flag-covered trailer in the middle of the desert have a humorous effect,

especially when contrasted with the Kettlemans' later-revealed criminal scheme and McGill's admiring reference to the use of "Lady Liberty."  And the evocation of Americana coupled with criminal or morally questionable activities is an ongoing theme of the show.  *See Stewart Surfboards, Inc. v. Disney Book Grp., LLC*, No. 10-cv-2982, 2011 WL 12877019, at *4–5 (C.D. Cal. May 11, 2011) (finding artistic relevance where "the Stewart Surfboards mark, which appears on a depiction of a Stewart surfboard on the back cover of the book, evokes the surfing theme that is reflected in the plot line of the book.").  The "appropriately low threshold of minimal artistic relevance" is unquestionably met here, *see Rogers*, 875 F.2d at 999, and there are no allegations in the FAC that suggest otherwise.

### B.    The Episode Fails to Explicitly Mislead as to the Source or Content of the Work.

Given the plain artistic relevance of the challenged uses, Plaintiff's claims are barred absent legally sufficient allegations that the Episode "explicitly misleads as to the source or content of the work." *Rogers*, 875 F.2d at 999.  Because Plaintiff seeks to enjoin constitutionally protected creative expression, the law quite rightly imposes a higher burden on a trademark plaintiff than in a run-of-the-mill case. *See id.* at 998–1000. In articulating the requirement that challenged use of a mark be explicitly misleading, *Rogers* considered whether there was an "explicit indication," "overt claim," or "explicit misstatement" that the plaintiff "endorsed the film at issue in that case or had a role in producing it." *Id.* at 1001; *accord Gayle v. Allee*, No. 18-cv-3774, 2021 WL 120063, at *7 (S.D.N.Y. Jan. 13, 2021).

Courts in this Circuit routinely grant motions to dismiss where, like here, the complaint fails on its face to meet the *Rogers* test and therefore renders impossible any kind of *particularly compelling* showing of likelihood of confusion—without applying the traditional multi-factor *Polaroid* test for trademark infringement. *See Louis Vuitton*, 868 F. Supp. 2d at 183–84

10

(dismissing claims for trademark infringement and dilution based on display and references to Louis Vuitton marks on handbag in film, "without relying on the likelihood of confusion factors to do so"); *Brown*, 394 F. Supp. 3d at 441–44 (dismissing claim based on use of singer's likeness and name in film about contemporary and singer's production company's name in film credits, without analyzing *Polaroid* factors); *Moda Operandi*, 561 F. Supp. 3d at 436–39 (dismissing claim based on fashion magazine's depiction of models' likenesses under *Rogers*, and analyzing *Polaroid* factors in the alternative); *Medina v. Dash Films, Inc.*, No. 15-cv-2551, 2016 WL 3906714, at *5–6 (S.D.N.Y. July 14, 2016) (dismissing claims based on use of mark similar to music band name in title and name of location in series of short films, without analyzing *Polaroid* factors); *see also Lombardo v. Dr. Seuss Enters., L.P.*, 279 F. Supp. 3d 497, 514 & n.1 (S.D.N.Y. 2017) (granting motion for judgment on the pleadings to dismiss counterclaim for trademark infringement based on comedic parody of Dr. Seuss book, and determining the court "need not work through" the *Polaroid* factors), *aff'd*, 729 F. App'x 131 (2d Cir. 2018); *cf. Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63–65 (2d Cir. 2010) (holding that a court may consider substantial similarity on a motion to dismiss a claim for copyright infringement).

Plaintiff's FAC fails to meet the high "explicitly misleading" standard. The allegations in the FAC that the Episode "explicitly misleads" viewers are simply incantations of the legal standard and therefore do not state a claim for relief. FAC ¶¶ 1, 4, 47, 48, 68, 76, 99, 105; *see Bejjani v. Manhattan Sheraton Corp.*, No. 12-cv-6618, 2013 WL 3237845, at *15 (S.D.N.Y. June 27, 2013) (rejecting "talismanic incantation[s]" as insufficient to plausibly state claim), *aff'd*, 567 F. App'x 60 (2d Cir. 2014); *Brown*, 394 F. Supp. 3d at 444 (dismissing Lanham Act claim and noting that "[t]o survive a motion to dismiss for a Lanham Act claim, [a plaintiff] must plead more

than 'conclusory allegations' and allege that Defendants explicitly misled consumers as to the source or content of the film.").

Beyond threadbare conclusions, the FAC is devoid of any factual allegations that meet prong two of *Rogers*. For example, Plaintiff cites no affirmative false statements from either Sony Pictures or AMC Networks that Plaintiff is responsible for, endorsed, or approved of the Episode. Nor could it. The Episode is branded with the name *Better Call Saul* and other logos associated with its production. And the Episode's credits expressly remind viewers that the characters portrayed therein are fictional and not intended to convey a real-world connection to any persons or events. *See supra* page 5.

At most, the FAC alleges an indirect and implicit link to Plaintiff's marks. The FAC focuses on the set design of the Kettlemans' fictional business and alleges it resembles a single real-world location of Plaintiff. *See* FAC ¶ 47 ("Given Defendants' extensive use and copying of Liberty Tax's Trademarks and Trade Dress throughout Episode 2, Defendants must have intended to explicitly mislead consumers into believing that Liberty Tax sponsored or endorsed the show by evoking an actual Liberty Tax location.").[5] But even drawing this inference in favor of Plaintiff, the *evocation* of a real-world location within an expressive work comes nowhere close to meeting Plaintiff's high burden under *Rogers*.

 Indeed, under black-letter law, the use of a mark or trade dress within the body of a creative work, without more, is insufficient to state a trademark claim. For example, in *Louis Vuitton*, the plaintiff's claims were based on an explicit reference to the plaintiff's well-known and distinctive name and the display of an allegedly knockoff bag replicating the plaintiff's mark. 868 F. Supp.

---

[5] The FAC itself demonstrates that Liberty Tax franchises have a variety of different physical appearances, making it impossible to conclude that a viewer would in fact draw any link between the Sweet Liberty set design and Liberty Tax. *See* FAC at 5–7 figs. 3–7.

2d at 174–75.  The court followed numerous authorities holding that the mere use of a plaintiff's mark in a creative work does not yield the inference that consumers would believe the plaintiff had endorsed that work or the use of its mark within the work.  *Id.* at 183–84 (citing, *e.g.*, *Stewart Surfboards*, 2011 WL 12877019, at \*7).  Other courts have put the point more bluntly: "a trademark infringement claim presupposes a use of the mark.  If that necessary element in every trademark case vitiated a First Amendment defense, the First Amendment would provide no defense at all."  *E.S.S. Ent. 2000*, 547 F.3d at 1099–1100 (concluding that display emulating plaintiff's Los Angeles business in "Grand Theft Auto" video game would not mislead consumers into thinking the plaintiff was "somehow behind" or had "sponsor[ed]" the portrayal in the video game or the product as a whole); *see also Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002) (rejecting claim based on use of "Barbie" mark in "Barbie Girl" song because if the use of the mark were "enough to satisfy this prong of the *Rogers* test, it would render *Rogers* a nullity").

Plaintiff's allegations here are even weaker than those in the *Louis Vuitton*, *Stewart Surfboards*, and *MCA Records* cases discussed above, where there were overt references to or depictions of the plaintiffs' marks.  The Kettlemans' fictional business uses a different name, "Sweet Liberty Tax Services," with a different connotation than Plaintiff's mark.  The set design appears in a remote, unidentifiable desert location and is adorned with a comedically distorted inflatable resembling the Statue of Liberty and the colors of the American Flag.  And the creators of the Episode deftly present this Americana-themed set design not to imbue their work with a sense of verisimilitude (as *Rogers* and its progeny also permit) but rather to create a surreal, humorous, and absurd commentary on the Kettleman, McGill, and Wexler characters.  The failure of the FAC to allege a single instance of actual consumer confusion with Plaintiff's tax business

only underscores how far removed these claims are from rising to the level of actionable trademark infringement under *Rogers*.

Finally, Plaintiff cannot salvage its claim through newly added allegations about use of the "Sweet Liberty Tax Services" name and set design in ancillary promotional activity for the Episode itself. These allegations similarly can in no way meet the standard of being "explicitly misleading"—they involve references to the creative work in the context of promoting that work and a single image in a third-party Google Search result with no allegation that Defendants were involved in obtaining that result.[6] It is inconceivable that *Rogers* would protect the alleged use of a mark within a creative work, but would remove all First Amendment protection for promotional material referring to or using the same content to promote the creative work. Indeed, even though *Rogers* itself involved a *movie title* that was obviously used in advertising and promotion for the movie, the Second Circuit concluded that the use of Ginger Rogers's name was covered by the First Amendment because it was "clearly related to the content of the movie and [was] not a disguised advertisement for *the sale of goods and services or a collateral commercial product*." *Rogers*, 875 F.2d at 1004–05 (emphasis added); *see also Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192, 1196–97 (9th Cir. 2017) (acknowledging that "[a]lthough it is true that these promotional efforts technically fall outside the title or body of an expressive work,

---

[6] The FAC specifically alleges: (1) that the *Better Call Saul* Facebook page featured a mock advertisement for "Sweet Liberty Tax Services," *see* FAC ¶ 49; (2) that the actress who plays Betsy Kettleman posted to Instagram with photos of the Sweet Liberty Tax Services set, *see id.* ¶ 50; (3) that a multi-minute YouTube trailer for Season 6 fleetingly showed the distorted Statue of Liberty inflatable and set design, *id.* ¶ 51; and (4) that a third-party Google Image search result allegedly showed a single image from a *Breaking Bad* fan page in response to a keyword search for Liberty Tax, among many other results purporting to show actual Liberty Tax locations, *id.* ¶ 52.

it requires only a minor logical extension of the reasoning of *Rogers*" to apply its protections to the advertising and marketing of works).[7]

For this reason, courts have rejected similar claims attempting to skirt *Rogers* by targeting not just the alleged use of a mark within a creative work but also promotional activities for that work.  For example, in *Fortres Grand Corp. v. Warner Bros. Entertainment Inc.*, the court considered two mock websites that were created to promote the film by serving as "essentially a creative outgrowth of the fictional world of the film," which included a reference to the allegedly infringing fictional product within the film.  947 F. Supp. 2d 922, 924–25 (N.D. Ind. 2013), *aff'd*, 763 F.3d 696 (7th Cir. 2014).  The court concluded that these websites were not "commercial speech" because they "d[id] far more than simply propose a commercial transaction—in fact, it [was] hard to see that they really propose[d] any commercial transaction, other than obliquely convincing consumers to buy a ticket to the film."  *Id.* at 933–34.  "Instead, they [were] creative, fictional extensions of the film—artistic works in and of themselves—and [were] thus entitled to First Amendment protection."  *Id.* at 934.  Similarly, in *Louis Vuitton* the plaintiff argued that its harm had been "exacerbated by the prominent use of the [relevant] scenes . . . in commercials and advertisements" for the film at issue, but the court did not apply a different standard to that use in advertisements.  868 F. Supp. 2d at 175.  Plaintiff's newly added allegations regarding promotional activities do not salvage its claim.

### C.    The First Amendment Applies at Least as Strongly to Plaintiff's Dilution Claim.

Courts have also applied *Rogers* to dilution claims under New York law.  *See Louis Vuitton*, 868 F. Supp. 2d at 184; *Lombardo*, 279 F. Supp. 3d at 514–15 (applying First Amendment analysis

---

[7] The Ninth Circuit in *Twentieth Century Fox* also recognized that *Rogers* itself explicitly involved claims regarding both the title of the movie and its advertising and promotion.  *See* 875 F.3d at 1196–97 (citing *Rogers*, 875 F.2d at 1005 (Griesa, J., concurring in the judgment)).

to infringement claim based on parody, then dismissing state-law dilution claim "for the same reasons"); *Yankee Publ'g Inc. v. News Am. Publ'g Inc.*, 809 F. Supp. 267, 282 (S.D.N.Y. 1992) ("[T]he same First Amendment considerations that limit a cause of action under the Lanham Act apply also to a cause of action under New York law."); *Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330, 341 (S.D.N.Y. 2000) ("Plaintiff's pendent state law claims under New York's anti-dilution statute[] . . . are likewise dismissed because they are based on the same permissible conduct [as the Lanham Act claims].").

If anything, the First Amendment concerns motivating *Rogers* apply even more strongly with respect to anti-dilution laws than they do with respect to infringement.  Like many dilution laws, New York's dilution statute applies "*notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services*."  N.Y. Gen. Bus. Law § 360-*l* (emphasis added).  Courts addressing dilution claims against the makers of creative works outside of New York have concluded that because dilution claims are not limited by the need to guard against consumer confusion, the First Amendment considerations underpinning *Rogers* "apply with greater force" in the dilution context.  *MCA Records*, 296 F.3d at 904; *L.L. Bean, Inc. v. Drake Pubs., Inc.*, 811 F.2d 26, 32–33 (1st Cir. 1987) (concluding that it "offends the Constitution" to "invoke the [Maine] anti-dilution statute as a basis for enjoining the noncommercial use of a trademark by a defendant engaged in a protected form of expression").

\* \* \*

For the above reasons, each of Plaintiff's three trademark claims—for Lanham Act registered trademark and unregistered trade dress infringement and for trademark dilution under New York law—must be dismissed, consistent with the Second Circuit's recognition that the

*Rogers* test protects against "overextension" of trademark protections that "intrude on First Amendment values." *Rogers*, 875 F.2d at 998.

## II.  Plaintiff Otherwise Fails to State an Actionable Claim for Trademark Infringement.

Even absent application of the *Rogers* test here, Plaintiff's claims for trademark infringement are so divorced from mainstream trademark principles that they fail as a matter of law.  As numerous courts recognize, trademark claims are intended to protect brand owners against likely consumer confusion among purchasers of the junior user's products or services.  *Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 161–62 (2d Cir. 2016) (describing permissible bases for confusion under Sections 32 and 43(a) of the Lanham Act); *Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 582–83 (2d Cir. 1991) (trademark law "protects only against mistaken purchasing decisions and not against confusion generally").  In the case of trademark claims involving fictional works, this means that courts must consider confusion relating to "the tangible product sold in the marketplace"—*i.e.*, the creative work itself, and not any product or service depicted therein.  *Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, 763 F.3d 696, 702–03 (7th Cir. 2014) (quotation marks omitted).

Here, the only purchasing decision made by television viewers is whether to subscribe to a platform or purchase a DVD that will allow them to watch *Better Call Saul.*  The FAC contains no plausible allegations that any reference to Plaintiff's marks or alleged confusion relating thereto had an impact on that decision.  Instead, the FAC alleges confusion as to whether or not the Episode depicts "an actual Liberty Tax location."  *See*, *e.g.*, FAC ¶¶ 68, 80.  Such allegations cannot salvage a trademark claim, because they fail to allege the requisite type of consumer confusion that is capable of impacting consumer purchasing decisions.

*Gottlieb Development LLC v. Paramount Pictures Corp.* is instructive.  In that case, the plaintiff alleged that its rights in trademarks appearing on its "Silver Slugger" pinball machine

17

were violated when the pinball machine appeared in a scene in the motion picture "What Women Want." *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 629 (S.D.N.Y. 2008). The court granted a motion to dismiss with prejudice and held that it was "simply not plausible" that "the appearance of [Gottlieb's] trademark in the film would confuse ordinarily prudent consumers as to the sponsorship or affiliation of its pinball machines": "no viewer of the Film would consider whether Paramount sponsored the pinball machine or Gottlieb sponsored the Film." *Id.* at 635.

Similarly, in *Wham-O, Inc. v. Paramount Pictures Corp.*, the plaintiff alleged that its "Slip 'N Slide" trademark rights were violated in the use of the Slip 'N Slide toy in the film "Dickie Roberts: Former Child Star"—specifically, in a scene where the toy was dry and uninflated and therefore could not be properly used. 286 F. Supp. 2d 1254, 1256–58 (N.D. Cal. 2003). The court denied emergency relief after finding a lack of likelihood of success on the plaintiff's infringement claim, concluding that "[c]onsumers and viewers will not mistake plaintiff for a movie production house, and consumers and viewers will not mistake defendants for a purveyor of toys." *Id.* at 1262.

And, even if consumers were somehow likely to be confused as to sponsorship, there is no indication that such confusion would rise to the sort of confusion that impacts consumer purchasing decisions, and with which trademark law is concerned. For example, in *Caterpillar Inc. v. Walt Disney Co.*, the court rejected trademark claims arising from a children's movie that displayed the villain's minions driving Caterpillar bulldozers. 287 F. Supp. 2d 913, 917 (C.D. Ill. 2003). The court concluded that given the context in which the use arose, it was unlikely "that any consumer would be more likely to buy or watch [the movie] because of any mistaken belief that Caterpillar sponsored this movie." *Id.* at 920. Here too, the FAC does not (and cannot) draw

a link between any mistaken consumer belief that Liberty Tax sponsored or endorsed the Episode and any consumer purchasing decisions.

All of these cases confirm the fundamental insufficiency of the allegations in the FAC: simply evoking Plaintiff's marks in a television show (assuming Defendants would be understood to have done so) does not yield the inference that consumers would be confused in a way that would impact consumer decisions regarding whether to subscribe to a service or purchase a DVD in order to watch *Better Call Saul*.  Even absent the *Rogers* test, which Plaintiff cannot meet, it otherwise has not alleged any facts that would make plausible that the relevant set of consumers would be confused in any way that is actionable under the Lanham Act.

## III.    Defendants' Expressive Conduct Cannot Ground Plaintiff's Claim for Defamation.

Plaintiff's claim for alleged defamation based on Defendants' expressive work similarly fails.  The core of Plaintiff's claim for defamation appears to be that consumers might believe that "Sweet Liberty Tax Services" is meant to reflect an actual Liberty Tax location, *and then* will draw the further inference that because Kim Wexler accuses the obviously fictional characters Craig and Betsy Kettleman of fraud, Plaintiff is engaged in fraud as well.  New York law addressing defamation claims in the context of fictional works bars this claim as a matter of law.[8]

---

[8] Plaintiff did not contest in either of its pre-motion letter responses that New York law governs its defamation claim, and for good reason.  Where a federal court is adjudicating state law claims pendent to a federal claim, "the Court must apply the choice-of-law rules of the forum state." *Hodnett v. Medalist Partners Opp'y Master Fund II-A, L.P.*, No. 21-cv-38, 2022 WL 4072935, at *7 (S.D.N.Y. Sept. 2, 2022) (citing *Rogers*, 875 F.2d at 1002). "In tort cases, New York applies the law of the state with the most significant interest in the litigation." *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021) (quotation marks omitted).  Courts have accordingly applied New York law to evaluate claims alleging defamation resulting from statements that emanated from and were broadcast from New York, recognizing that "New York has strong policy interests in regulating the conduct of its citizens and its media." *Id.* at 178; *accord Adelson v. Harris*, 973 F. Supp. 2d 467, 478 (S.D.N.Y. 2013) ("Courts in this district have . . . appl[ied] New York law [to defamation cases] where publishing and media defendants were domiciled in New York, even where the plaintiff was domiciled in another state."), *aff'd*, 876 F.3d 413 (2d Cir. 2017).  Moreover, the FAC alleges that "a substantial part of the events or omissions giving rise to the claims at issue

"[T]o state a claim for defamation, a plaintiff must show (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting defamation per se, and (vii) not protected by privilege." *de Rothschild v. Serlin*, No. 19-cv-11439, 2021 WL 860227, at *7 (S.D.N.Y. Mar. 8, 2021) (Gardephe, J.) (quotation marks). The FAC meets virtually none of these requirements—nor can it. Compared with the original Complaint (which did not even identify the defamatory statements at issue), the FAC predicates the defamation claim on a few lines of dialog from Kim Wexler, who calls a law enforcement contact and threatens to report the Kettlemans' misconduct. *See supra* page 5; FAC ¶¶ 40, 108–09. Now that Plaintiff has been forced to identify the precise allegedly defamatory statements on which its claim is based, it is even clearer that none of its allegations clear the standard for defamation.[9]

### A.   The FAC Fails to Allege Actionable Statements of Fact.

As an initial matter, the allegations in the FAC fail as a matter of law to establish false statements *of fact* that are actionable under the defamation laws. The dialogue in the Episode regarding the Kettlemans' tax scam is manifestly not describing factual, real-world occurrences, but is rather describing yet another brazen, ill-fated scheme by two returning characters who are

---

occurred in this District." *See* FAC ¶ 12. In any event, the Virginia standard for defamation is the same as New York's standard in relevant aspects. *See, e.g.*, *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993) (recognizing "a statement is not actionable unless it asserts a provably false fact or factual connotation"); *Lokhova v. Halper*, 441 F. Supp. 3d 238, 261 (E.D. Va. 2020) (recognizing that the alleged defamatory statements must be "of and concerning" the plaintiff) (quotation marks omitted), *aff'd*, 995 F.3d 134 (4th Cir. 2021).

[9] Plaintiff added these allegations after Defendants argued in their initial pre-motion letter that the original Complaint failed to identify the allegedly defamatory statements at issue, as required by black-letter law. *See de Rothschild*, 2021 WL 860227, at *7 ("The complaint must at least identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." (quotation marks omitted)).

known bad actors in the *Better Call Saul* universe.  At most, the FAC details a farcical portrayal of the Kettlemans as small-time, incompetent grifters used as pawns by McGill and Wexler.  The description of the Kettlemans' tax scheme in the Episode by Wexler is a comedic plot device to show just how irredeemable the Kettlemans are (despite their efforts to portray themselves as wholesome members of society following Craig's release from prison), and just how easily the Kettlemans can be manipulated by threats of exposure—hence the title of the Episode, "Carrot and Stick."

Courts routinely dismiss similar claims grounded in fictional works where there are no allegations supporting an inference that the work would be understood as making factual claims about the real world.  For example, *Frank v. Nat'l Broad. Co.*, 119 A.D.2d 252 (2d Dep't 1986), applying New York law, flatly rejected a defamation claim under a similar set of allegations. There, a tax consultant named Maurice Frank alleged that Saturday Night Live introduced a skit with a character who was also named Maurice Frank and who bore a noticeable physical resemblance to the plaintiff, and who proceeded to give highly inappropriate advice on write-offs. *Id.* at 254-55.  The court reasoned that even though it assumed for purposes of the motion to dismiss that the defendants had intended to portray the plaintiff, the comedic context in which the statements arose—"presented as they were as a small comic part of a larger and obviously comic entertainment program," meant that "no person of any sense could take the so-called tax advice of [the "Maurice Frank" in the sketch] seriously." *Id.* at 257, 260–61.  As a result, the statements were "not defamatory as a matter of law." *Id.* at 261.  Other cases are in accord, holding that statements in fictional works were, as a matter of law, not capable of being construed as asserting genuine statements of fact. *See Films of Distinction, Inc. v. Allegro Film Prods.*, 12 F. Supp. 2d 1068, 1081 (C.D. Cal. 1998) (holding that because a work was clearly a work of fiction, statements

within the film about a television channel with the same name and general nature as the plaintiff's channel did not generate "the impression that the defendant[s] w[ere] asserting an objective fact"); *Davis v. Walt Disney Co.*, No. 04-cv-1729, 2004 WL 1895234, at *7 (D. Minn. 2004) (holding that where superhero movie depicted a villainous company called "Earth Protectors," it did not defame the plaintiff Earth Protector, Inc. as a matter of law because "[t]he general tenor of the movie and the fictional context in which the alleged defamatory material arises negate any possible impression that the Defendants were asserting objective facts").

Conspicuously, there is no allegation in the FAC that the outlandish fictional universe of *Better Call Saul* even purports to comment on specific real-life events, companies, or people. In fact, the opposite is true: the Episode contains an explicit disclaimer reflecting that it portrays purely fictitious characters and incidents. *See supra* page 5. This disclaimer alone is fatal to Plaintiff's claim. *See Davis*, 2004 WL 1895234, at *7 ("The movie even includes a disclaimer that '[a]ny similarity to actual persons, living or dead, or actual event[s] is purely coincidental and unintentional."); *Mossack Fonseca & Co., S.A. v. Netflix Inc.*, No. 19-cv-9330, 2020 WL 8510342, at *4 (C.D. Cal. Dec. 23, 2020) ("The Court finds no reasonable viewer of the Film would interpret the Film as conveying 'assertions of objective fact,' particularly given the statement at the beginning of the Film 'BASED ON ACTUAL SECRETS' which sets the stage and the disclaimer at the end of the Film that states the Film is fictionalized for dramatization and is not intended to reflect any actual person or history."). Ultimately, the FAC instead requires an untenable logical leap that a viewer would interpret *Better Call Saul*, a fictional TV show, as commenting on specific real-world events—and that a viewer would then interpret *Better Call Saul* as explicitly making factual statements about Liberty Tax, notwithstanding the outlandish, comical nature of the

relevant scenes and the differences between the portrayal of "Sweet Liberty Tax Services" and Plaintiff's marks.

### B.     The FAC Fails to Allege Any Statements "Of and Concerning" Plaintiff.

Nor do the allegations in the FAC establish that the alleged false statements are "of and concerning" Liberty Tax, which requires a showing that "upon reading the statements, it would be clear that the plaintiff was the target of the allegedly libelous statement to those who know him or her." *Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, No. 18-cv-4921, 2019 WL 1434719, at *9 (S.D.N.Y. Mar. 31, 2019) (Gardephe, J.).  The dialogue quoted in the FAC makes it abundantly clear the Wexler's statements are not of and concerning Plaintiff—her statements are about two standout characters in the series who she describes as "creeps" who run a "mom and pop outfit," and about how Craig Kettleman is a "two-time loser" who will serve jail time based on his prior misdeeds as county treasurer.  *See* FAC ¶ 40.  Contrary to the FAC's allegations (and as clear from the text of the dialogue quoted in the FAC, *see id.*), the Episode does not once state that *Liberty Tax* engages in "tax preparer fraud."  Wexler's comments are geared purely at the Kettlemans.

Given the fictional nature of the Episode and the fact that Wexler's comments are actually referring to the known fictional characters Craig and Betsy Kettleman and their "little mom and pop outfit," the FAC does not plausibly allege that this statement would be construed as of and concerning the real-world tax company Liberty Tax.  *See, e.g., Davis*, 2004 WL 1895234, at *7 ("[N]o reasonable person could understand that the fictional [president of Earth Protectors] refers in any way to [the real-life president of Earth Protector] or interpret the movie as being defamatory[.]"); *Greene v. Paramount Pictures Corp.*, 813 F. App'x 728 (2d Cir. 2020) (recognizing on appeal of summary judgment decision that where character had certain differences from the plaintiff, despite extensive similarities, "no reasonable viewer of the Film would believe that defendants intended the . . . character to be a depiction of [the plaintiff]").

In fact, *even if* Wexler's statements could possibly be construed as referring to a real-life Liberty Tax franchisee, they still could not be construed as of and concerning the plaintiff Liberty Tax. Under New York law, there is no "derivative claim for defamation" whereby a person or entity can state a claim based on an allegedly defamatory statement impugning one of their business partners. *See Cohn v. Nat'l Broad. Co.*, 67 A.D.2d 140, 146 (1st Dep't 1979), *aff'd*, 50 N.Y.2d 885 (1980); *accord Red Fort Cap., Inc. v. Guardhouse Prods., LLC*, No. 19-cv-686, 2020 WL 5819549, at *7 (S.D.N.Y. Sept. 30, 2020). Nor does the FAC allege any facts that would lead a viewer to conclude that a larger organization or franchisor was directing the Kettlemans' misdeeds; to the contrary, Wexler's statements limit any misconduct to the Kettlemans themselves and their particular business. For these reasons, Wexler's statements are not "of and concerning" Plaintiff, and doubly so here where the Episode is concededly fictional.

For the above reasons, there is no set of allegations in the Complaint (or any plausible set of allegations) that can establish that viewers would be likely to conclude from the fictional exploits of television show characters Craig and Betsy Kettleman that *Liberty Tax* is *in fact* engaged in tax fraud, even crediting Plaintiff's assertion at this stage of the litigation that such statements would be false. Plaintiff's defamation claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the FAC should be dismissed in its entirety. Each of Plaintiff's claims fails as a matter of law, not just due to insufficient pleading: Plaintiff's trademark and trade dress infringement and dilution claims are barred by *Rogers*, and Plaintiff cannot allege any false statement or implication of fact contained in the Episode. Moreover, Plaintiff already amended its complaint once and failed to cure these deficiencies. Under these circumstances, the proper course is to dismiss the Complaint with prejudice. *See Fort Worth Emps.' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 233 (S.D.N.Y. 2009) ("Because plaintiff has already amended its complaint

24

once, and because the flaws in pleading are incurable on the facts of this case, dismissal is with prejudice.").

Dated: December 27, 2022                    Respectfully submitted:

                                            /s/ Gianni P. Servodidio

                                            Gianni P. Servodidio (GS-0713)
                                            Susan J. Kohlmann (SK-1855)
                                            Allison N. Douglis (#5711015)
                                            JENNER & BLOCK LLP
                                            1155 Avenue of the Americas
                                            29th Floor
                                            New York, NY 10036
                                            Tel.: (212) 891-1600
                                            Fax: (212) 891-1699
                                            gservodidio@jenner.com

                                            *Attorneys for Defendants*