**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JTH TAX LLC d/b/a LIBERTY TAX SERVICE, | |
| Plaintiff, | |
| v. | Civil Action No.: 1:22-CV-06526-PGG |
| AMC NETWORKS INC., and SONY PICTURES TELEVISION INC., | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

Peter G. Siachos (NY Bar No.: 4436168)
**GORDON REES SCULLY MANSUKHANI LLP**
One Battery Park Plaza, 28th Floor
New York, NY 10004
(212) 269-5500
psiachos@grsm.com

Clair E. Wischusen (*Pro Hac Vice*)
**GORDON REES SCULLY MANSUKHANI LLP**
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
(973) 549-2524
cwischusen@grsm.com

James L. Messenger (*Pro Hac Vice*)
**GORDON REES SCULLY MANSUKHANI LLP**
21 Custom House Street, 5th Floor
Boston, MA 02110
(857) 263-2000
jmessenger@grsm.com

*Attorneys for Plaintiff,*
*JTH Tax LLC d/b/a Liberty Tax Service*

**TABLE OF CONTENTS**

<b>Page</b>

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................. 2

     A.     Liberty's Widely Recognized Trademarks and Trade Dress ...................... 2

     B.     Defendants' Entertainment Business and the Better Call Saul Show......... 3

     C.     Defendants' Infringement and Dilution of Liberty's Marks and Trade Dress ......................................................................................................... 4

     D.     Defendants' Infringement of Liberty's Marks and Trade Dress in Advertising and Social Media....................................................................... 6

     E.     Defendants' Commercial Success Derived From the Infringing Episode .. 7

     F.     The Harm to Liberty and Consumers Caused By the Infringement .......... 7

STANDARD OF REVIEW ............................................................................................. 8

ARGUMENT ................................................................................................................. 8

     I.     THE FIRST AMENDMENT DOES NOT BAR LIBERTY'S TRADEMARK CLAIMS ........................................................................................ 8

     A.     Defendants' Use Of Liberty's Trademarks and Trade Dress Is Not Artistically Relevant .................................................................................... 9

     B.     Even If Defendants' Use of Liberty's Trademarks and Trade Dress Has Some Artistic Relevance It Is Explicitly Misleading............................... 13

     C.     Discovery Is Needed Into Whether Defendants' Use Of Liberty's Marks Was Purely Artistic .................................................................................. 19

     D.     Liberty States a Claim Under the New York Trademark Dilution Statute 20

     II.     LIBERTY OTHERWISE ADEQUATELY STATES ACTIONABLE CLAIMS FOR TRADEMARK INFRINGEMENT ............................................. 20

     III.     LIBERTY PLAUSIBLY STATES A CLAIM FOR DEFAMATION ................ 22

CONCLUSION............................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AM Gen. LLC v. Activision Blizzard, Inc.*,
   450 F. Supp. 3d 467 (S.D.N.Y. 2020) .................................................................. 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................... 8

*Burck v. Mars, Inc.*,
   571 F. Supp. 2d 446 (S.D.N.Y. 2008) .................................................................. 19

*Car-Freshner Corp. v. Getty Images, Inc.*,
   822 F. Supp. 2d 167 (N.D.N.Y. 2011) ................................................................... 9

*Caterpillar Inc. v. Walt Disney Co.*,
   287 F. Supp. 2d 913 (C.D. Ill. 2003) ................................................................... 22

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ................................................................................... 8

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Group, Inc.*,
   886 F.2d 490 (2d Cir. 1989) ............................................................................. 9, 14

*Coty Inc. v. Excell Brands*,
   277 F. Supp. 3d 425 (S.D.N.Y. 2017) .................................................................. 17

*Cuthbert v. Natl. Org. for Women*,
   207 A.D.2d 624 (3d Dept. 1994) .......................................................................... 24

*Dalbec v. Gentleman's Companion, Inc.*,
   828 F.2d 921 (2d Cir. 1987) ................................................................................. 25

*Davis v. Walt Disney Co.*,
   2004 WL 1895234 (D. Minn. Aug. 23, 2004) ...................................................... 24

*Donahue v. Artistn Entm't, Inc.*,
   2002 WL 523407 (S.D.N.Y. Apr. 8, 2002) .......................................................... 19

*E.S.S. Ent. 2000, Inc. v. Rock Star Video, Inc.*,
   547 F.3d 1095 (9th Cir. 2008) ........................................................................... 18

*Esposito-Hilder v. SFX Broadcasting*,
   171 Misc.2d 286 (Sup. Ct. 1996)
   *aff'd*, 236 A.D.2d 186, 665 N.Y.S.2d 697 (1997) ............................................... 23

*Faber v. Metro. Life Ins. Co.*,
  648 F.3d 98 (2d Cir. 2011) ................................................................................ 8

*Films of Distinction, Inc. v. Allegro Film Prods., Inc.*,
  12 F.Supp.2d 1068 (C.D. Cal. 1998) ................................................................ 24

*Fireman's Ass'n of State of New York v. French Am. Sch. of New York*,
  839 N.Y.S.2d 238 (2007) .................................................................................. 20

*Focus Products Group International, LLC v. Katri Sales Co., Inc.*,
  2022 WL 17851810 (S.D.N.Y. Dec. 22, 2022) ................................................. 15

*Fortres Grand Corp. v. Warner Bros. Entm't Inc.*,
  947 F. Supp. 2d 922 (N.D. Ind. 2013),
  *aff'd* 763 F.3d 696 (7th Cir. 2014) ................................................................... 19

*Frank v Nat'l Broad. Co.*,
  119 A.D.2d 252 (2d Dep't 1986) ....................................................................... 23

*Gayle v. Allee*,
  2021 WL 120063 (S.D.N.Y. Jan. 13, 2021) ................................................ 13, 14

*Gordon v. Drape Creative, Inc.*,
  909 F.3d 257 (9th Cir. 2018) ............................................................................. 16

*Gottlieb Development LLC v. Paramount Pictures Corp.*,
  590 F. Supp. 2d 625 (S.D.N.Y. 2008) ............................................................... 22

*Hamilton v. Prewett*,
  860 N.E.2d 1234 (Ind. Ct. App. 2007) .............................................................. 23

*Hermès Int'l et al. v. Rothschild*,
  No. 22-cv-384-JSR, --- F. Supp. 3d ---, 2022 WL 1564597 (S.D.N.Y. May 18, 2022) ....... 9, 13

*Hu v. City of N.Y.*,
  927 F.3d 81 (2d Cir. 2019) ................................................................................. 8

*Hustler Magazine, Inc. v. Falwell*,
  485 U.S. 46 (1988) ............................................................................................. 23

*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*,
  868 F. Supp. 2d 172 (S.D.N.Y. 2012) ............................... 10, 12, 13, 14, 16, 18, 21

*Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*,
  426 F.3d 532 (2d Cir. 2005) .............................................................................. 21

*Lynch v. City of New York*,
  952 F.3d 67 (2d Cir. 2020) ................................................................................. 8

iii

*Mattel, Inc. v. MCA Records, Inc.*,
  296 F.3d 894 (9th Cir. 2002) ........................................................................... 18

*Medina v. Dash Films, Inc.*,
  2016 WL 3906714 (S.D.N.Y. July 14, 2016) ................................................. 14

*Merck & Co. v. Mediplan Health Consulting, Inc.*,
  425 F. Supp. 2d 402 (S.D.N.Y. 2006) ............................................................ 14

*Paddington Corp. v. Attiki Importers & Distribs., Inc.*,
  996 F.2d 577 (2d Cir. 1993) ........................................................................... 15

*Parks v. LaFace Records*,
  329 F.3d 437 (6th Cir. 2003) ...................................................................... 11, 12

*Polaroid Corp. v. Polarad Elecs. Corp.*,
  287 F.2d 492 (2d Cir. 1961) ................................................................ 13, 14, 17

*Prince v. Fox Tel. Stations, Inc.*,
  93 A.D.3d 614 (1st Dept. 2012) ...................................................................... 24

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989) ........................................ 1, 8, 9, 10, 14, 16, 17, 18, 19

*Roxbury Entm't v. Penthouse Media Grp.*,
  669 F. Supp. 2d 1170 (C.D. Cal. 2009) ......................................................... 10

*Sapieyevski v. Live Nation Worldwide, Inc.*,
  2019 WL 1284302 (D.D.C. Mar. 20, 2019) ..................................................... 9

*Sparrow Fund Management LP v. MiMex Group, Inc.*,
  2019 WL 1434719 (S.D.N.Y. Mar. 31, 2019) ................................................. 25

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
  588 F.3d 97 (2d Cir. 2009) ............................................................................. 20

*Stepanov v. Dow Jones & Co., Inc.*,
  120 A.D.3d 28, 987 N.Y.S.2d 37 (1st Dept. 2014) ........................................ 22

*Stewart Surfboards*
  2011 WL 12877019 ..................................................................................... 12, 18

*Sussman-Automatic Corp. v. Spa World Corp.*,
  15 F. Supp. 3d 258 (E.D.N.Y. 2014) .............................................................. 14

*Twentieth Century Fox Television v. Empire Distribution, Inc.*,
  875 F.3d 1192 (9th Cir. 2017) ........................................................................ 10

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*,
   996 F.2d 1379 (2d Cir. 1993) .......................................................... 13, 14, 16, 17, 21

*Wham-O, Inc. v. Paramount Pictures Corp.*,
   286 F. Supp. 2d 1254 (N.D. Cal. 2003) ................................................................ 22

*World Trade Centers Ass'n, Inc. v. Port Auth. of New York & New Jersey*,
   2016 WL 8292208 (S.D.N.Y. Dec. 15, 2016) ........................................................ 14

*Yankee Pub. Inc. v. News America Pub. Inc.*,
   809 F. Supp. 267 (S.D.N.Y. 1992) ........................................................................ 19

**Statutes**

15 U.S.C.A. §§ 1114(1)(a) ............................................................................................. 1

15 U.S.C.A. §§ 1125(a)(1)(A) ....................................................................................... 1

N.Y. Gen. Bus. Law § 360-*l* ................................................................................... 2, 20

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 8

**Regulations**

4 *McCarthy on Trademarks & Unfair Competition*, § 23.50 (5th ed.) .......................... 15

Plaintiff JTH Tax LLC d/b/a Liberty Tax Service ("Liberty" or "Liberty Tax") respectfully submits this memorandum of law in opposition to Defendants AMC Networks Inc. ("AMC") and Sony Pictures Television Inc.'s ("Sony") (collectively, "Defendants") motion to dismiss (the "Motion") Liberty's amended complaint (the "Complaint" or "AC").

## PRELIMINARY STATEMENT

It is Defendants who are stretching the First Amendment beyond its breaking point in seeking to evade responsibility for using Liberty's famous trademarks and trade dress to exploit Liberty's goodwill and brand on its hit television series, *Better Call Saul*. The Lanham Act specifically prohibits any such use where it is "likely to cause confusion" and mislead consumers as to the "sponsorship" or "approval" of the goods at issue. 15 U.S.C.A. §§ 1114(1)(a), 1125(a)(1)(A) . The First Amendment does not protect Defendants' use of Liberty's trademarks and trade dress where, as here, they were "arbitrarily chosen just to exploit the publicity value" of Liberty's brand. *Rogers v. Grimaldi*, 875 F.2d 994, 1001 (2d Cir. 1989). Given that the well-pleaded facts of Liberty's Complaint must be taken as true, Liberty states actionable claims and Defendants' motion should be denied.

Liberty's claims arise out Defendants' intentional misuse of Liberty Tax's trademarks and trade dress in the two-part first episode of Season 6 of *Better Call Saul* (the "Episode"). At the start of the Episode, the title character, Saul Goodman, shows up outside "Sweet Liberty Tax Services" where a replica of Liberty's famous Statue of Liberty inflatable is in full view. "Sweet Liberty Tax Services" is depicted in a red, white, and blue motif, just like an actual Liberty Tax location, and Liberty's other Statue of Liberty-themed trade dress is featured prominently throughout the show, including a close copy of Liberty's trademarked logo on a tax refund check. After extensive use of Liberty's trademarks and trade dress, the Episode builds to a climax in

which Saul's wife, Kim Wexler, calls the IRS and outs "Sweet Liberty Tax Services" for stealing from customers.  In the build up to this scene, Defendants' pervasive use of close copies of Liberty's trademarks and trade dress explicitly misleads consumers into believing that Liberty endorsed or otherwise authorized the show.  Defendants reinforced such confusion by also copying Liberty's trademarks and trade dress in their widespread advertising campaign on Facebook/Instagram, Twitter, and YouTube.  Against this backdrop, Liberty's Complaint sets forth well-pleaded allegations in support of claims for (i) trademark infringement under the Lanham Act, (ii) registered and unregistered trade dress infringement under the Lanham Act, (iii) trademark dilution under N.Y. Gen. Bus. Law § 360-*l*, and (iv) defamation.

In seeking to dismiss Liberty's trademark claims, Defendants' Motion offers a variety of internally inconsistent reasons as to why their use of Liberty's Statue of Liberty-themed trademarks and trade dress was supposedly "artistically relevant" to a show about a con man turned lawyer living in New Mexico.  But any effort to dismiss this case is premature, especially given that Defendants' unsworn statements conflict with the Complaint's well-pleaded allegations and the work itself.  Defendants' attempt to dismiss Liberty's defamation claim likewise fails because the use was not a parody and the Complaint plausibly alleges that viewers reasonably understood Defendants' false statements to be of and concerning Liberty given Defendants' pervasive use of Liberty's marks and trade dress.  Accordingly, Defendants' motion should be denied.

## STATEMENT OF FACTS

### A.   Liberty's Widely Recognized Trademarks and Trade Dress

Operating under the name LIBERTY TAX SERVICE since 1997, Liberty is one of the most well known tax preparation businesses in the United States.   (ECF # 29, AC ¶¶ 13, 14).  Liberty is the owner of certain registered trademarks and trade dress, which as shown in Figures

4-7 of the Complaint, are immediately recognizable for their red, white, and blue motif, and extensive use of the Statue of Liberty, including Statute of Liberty inflatables. *Id.* ¶ 17. Of particular relevance, Liberty is the owner of service mark registrations that cover the LIBERTY TAX SERVICE, LIBERTY TAX, and LIBERTY TAX SERVICE with Statue of Liberty Design marks for tax preparation services. *Id.* ¶¶ 19-20 and Exhibit 1-3. Liberty is also the owner of the Statue of Liberty sculpture mark for income tax preparation. *Id.* ¶ 22 and Exhibit 4.

Liberty has invested millions of dollars and decades of time and effort to create customer recognition of Liberty's marks and trade dress, including its LIBERTY TAX SERVICE mark and its Statue of Liberty inflatables and red, white, and blue flag motif to advertise and promote its tax preparation service centers. *Id.* ¶ 26. As a result of Liberty's continuous, extensive, and exclusive use of its trademarks and trade dress, the trademarks and trade dress have become instantaneously recognized, famous, and highly regarded as representing a business that provides trusted and reliable tax preparation services. *Id.* ¶ 27. Liberty protects its valuable trademarks and trade dress by actively policing and enforcing its trademark rights. *Id.* ¶ 28.

**B.    Defendants' Entertainment Business and the *Better Call Saul* Show**

AMC owns and operates the AMC cable channel. *Id.* ¶ 29. Sony is a leading producer and distributor of television shows, including the hit show *Better Call Saul*. *Id.* ¶ 31. *Better Call Saul* follows the transformation of con artist Jimmy McGill, into the egocentric lawyer Saul Goodman. *Id.* ¶ 31. The *Better Call Saul* show takes place primarily in New Mexico, and, to a lesser extent, in Mexico. *Id.* ¶ 1; Servodidio Decl. Ex. A (hereafter, "Ex. A"). *Better Call Saul* premiered on AMC on February 8, 2015 and was in its sixth and final season when this action was filed. AC ¶ 34; Ex. A. The first five seasons of *Better Call Saul* begin with Saul at a Cinnabon store and make extensive use of Cinnabon's trademarks and trade dress. The sixth season of *Better Call Saul*

begins with Saul at a Liberty Tax Service location, which Defendants call "Sweet Liberty Tax Services," and makes extensive use of Liberty Tax's trademarks and trade dress.[1]

**C.     Defendants' Infringement and Dilution of Liberty's Marks and Trade Dress**

On April 18, 2022, Defendants aired the two-part first episode of Season 6 of *Better Call Saul*, the second part of which is titled, "Carrot and Stick" (the "Episode").  Ex. A; AC ¶ 35.  The Episode misleads viewers into believing that Liberty sponsored or endorsed the Episode by extensively using Liberty's trademarks and trade dress in depicting a tax preparation business called "Sweet Liberty Tax Services."  *Id.* at ¶ 1.  Defendants did not contact Liberty to attempt to secure rights to use Liberty's trademarks and trade dress prior to airing the Episode.  *Id.* at ¶ 61.  Both AMC and Sony have policies and procedures in place to secure intellectual property rights and clearances for their programming, but they did not use them here.  *Id.* at ¶¶ 57-60.

After the opening credits, Saul shows up outside "Sweet Liberty Tax Services" in the middle of the New Mexico desert where a replica of Liberty's famous Statue of Liberty inflatables is in full view.  *Id.* at ¶¶ 1, 43 and Figure 8; Ex. A.  "Sweet Liberty Tax Services" is depicted in a red, white, and blue flag motif, just like an actual Liberty Tax location.  AC ¶ 1 and Figures 1, 2.





**Figure 1 – (Episode)**              **Figure 2 – (Actual Liberty location)**

---

[1] Unlike Defendants' use of Liberty's trademarks and trade dress, *Better Call Saul's* use of Cinnabon's trademarks and trade dress was expressly authorized and endorsed by Cinnabon.  *See* https://ktla.com/entertainment/better-call-saul-and-cinnabon-what-the-bakery-chain-knew-and-didnt-know-about-the-show/ (last accessed, January 17, 2023).

Liberty's other Statue of Liberty-themed trade dress is featured prominently throughout the show, including a close copy of Liberty's trademarked logo on a tax refund check.  *Id.* at ¶¶ 1, 2, 44, 45 and Figures 11, 12, and 13.  After extensive use of Liberty's trademarks and trade dress, the Episode builds to a climax in which Saul's wife, Kim Wexler, calls the IRS and starts the process to report "Sweet Liberty Tax Services" for stealing from customers.  *Id.* at ¶¶ 40, 47. Among other statements, Kim states that "Sweet Liberty Tax Services" engages in "tax preparer fraud," that "their clients always end up with smaller refunds than they deserve," and that "these creeps file legit returns with [the IRS], give the client fake ones that show about half the proper amount and then pocket the difference."  *Id.* at ¶¶ 40, 109.  In the build up to the scene, the Episode's extensive use of Liberty's trademarks and trade dress leads viewers to believe that "Sweet Liberty Tax Services" is Liberty Tax Service and that Liberty endorsed or authorized the show just like Cinnabon did.  *Id.* at ¶¶ 1, 3, 17, 36, 41-47.

Defendants' "Sweet Liberty Tax Services" is operated by characters, Craig and Betsy Kettleman.  *Id.* ¶ 36.  The Episode centers around a con in which Saul and Kim target the Kettlemans as unwitting patsies in a scheme to discredit another lawyer, Howard Hamlin.  Ex. A. The Kettlemans previously appeared in Season 1 of *Better Call Saul*, but exited the series after Craig Kettleman was convicted of embezzlement and went to prison.  AC ¶¶ 37-38.  Craig's release from prison is not referenced in the Episode except for a single exchange where Saul tells Craig, "But hey, you're looking fit.  I see, uh, County didn't do you any harm." and Craig responds, "Y'know, they have a surprisingly good exercise program, yeah."  Ex. A at 14:16 - 14:25.

The Kettlemans are not depicted as happy to be running "Sweet Liberty Tax Services" in a trailer in the New Mexico desert.  Ex. A. at 14:46-14:51, 53:48-53:58.  In one scene, Betsy expresses how miserable they are, exclaiming, "Because of you, we lost everything.  Our kids are

in public school!"  *Id.* at 14:46-14:51.  In fact, the "carrot" in Saul's con is that he offers the Kettlemans hope of getting their former lives back by feeding them false information about lawyer, Howard Hamlin, that could provide grounds for a "big" civil suit.  *Id.* at 15:10-15:43, 17:59-18:42. After the Kettlemans figure out that Saul fed them false information to "character assassinate" Howard they threaten to expose the con.  *Id.* at 52:00-53:45.  But Kim gives them the "stick" by calling the IRS to report "Sweet Liberty Tax Services" for tax preparer fraud.  *Id.* at 54:00-55:29.

At the end of the Episode, long after the infringing content, and after the closing credits, a disclaimer flashes on the screen for no more than a second.  Ex. A at 59:12.  At over 100 words, the disclaimer cannot be read in the time provided.  *Id.*  According to the Motion, the disclaimer states that the characters and incidents portrayed are fictitious and disclaims any similarity between the characters and names portrayed and any other person.  Motion, p. 5.

**D.  Defendants' Infringement of Liberty's Marks and Trade Dress in Advertising and Social Media**

Defendants also unlawfully used and copied Liberty's trademarks and trade dress in advertising *Better Call Saul* and AMC on Facebook/Instagram, YouTube, and Twitter.  *Id.* at ¶¶ 48-51.  In or about April of 2022, AMC posted an image on Facebook/Instagram that uses the LIBERTY TAX SERVICE mark and includes Statue of Liberty and red, white, and blue flag-themed trade dress.  *Id.* at ¶ 49 and Figure 15.

Defendants' also directed or authorized one of the actors to post infringing images of "Sweet Liberty Tax Services" on Instagram and Twitter.  *Id.* at ¶ 50 and Figures 16-17.  In addition, Defendants featured "Sweet Liberty Tax Services" in a trailer advertising the sixth season of *Better Call Saul* on YouTube.  AC ¶ 51.  Defendants' extensive use of Liberty's trademarks and trade dress misled viewers into believing that Liberty Tax sponsored or endorsed the Episode like

6

Cinnabon historically did. *Id.* ¶ 52. Defendants' "Sweet Liberty Tax Services" now appears prominently in Google search results for "Liberty Tax Service." *Id.* at Figure 18.

### E.   Defendants' Commercial Success Derived From the Infringing Episode

The Episode was a huge hit for Defendants. An estimated 1.418 million viewers watched the Episode during its initial broadcast. *Id.* at ¶ 53. According to AMC, the Episode resulted in the biggest day of new subscriptions to AMC's streaming service, AMC+. *Id.* at ¶ 54. The Episode also generated over half a million engagements on social media platforms like Facebook and Twitter, which was an increase of more than 60% over the Season 5 premiere. *Id.* at ¶ 55. Users tweeting about the Episode created a 10-hour national trending topic on Twitter and made *Better Call Saul* the #1 television drama in social engagement, organic search, conversation, and content shares. *Id.* at ¶ 56. Liberty did not consent to Defendants' use and disparagement of its LIBERTY TAX SERVICE mark and other marks and trade dress in the Episode. *Id.* at ¶ 62. Indeed, Liberty specifically requested that Defendants cease and desist their trademark infringement, but Defendants refused to comply. *Id.* at ¶ 64. Defendants continue to use and disparage Liberty's trademarks and trade dress by distributing the Episode on multiple media outlets, including the AMC channel, AMC+, and Google TV, as well as on DVD. *Id.* at ¶¶ 65-66.

### F.   The Harm to Liberty and Consumers Caused By the Infringement

Given Defendants' extensive use and copying of Liberty's trademarks and trade dress throughout the Episode, Defendants must have intended to trade upon and pirate away Liberty's substantial goodwill and explicitly mislead consumers into believing that Liberty sponsored or endorsed the Episode. *Id.* at ¶ 68. Defendants' distribution of the Episode has and continues to cause harm to Liberty, including damage to Liberty's reputation and goodwill symbolized by its trademarks and trade dress, as well as monetary losses and damages. *Id.* at ¶ 69.

## STANDARD OF REVIEW

Dismissal pursuant to Rule 12(b)(6) "is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted). "When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). A claim is sufficient when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Application of the motion to dismiss standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "In deciding a Rule 12(b)(6) motion, the court may consider only the facts alleged in the pleadings, documents attached . . . or incorporated by reference in the pleadings, and matters of which judicial notice may be taken." *Hu v. City of N.Y.*, 927 F.3d 81, 88 (2d Cir. 2019).[2]

## ARGUMENT

### I.   THE FIRST AMENDMENT DOES NOT BAR LIBERTY'S TRADEMARK CLAIMS

Defendants argue that because *Better Call Saul* is an artistic work, they had the right to use Liberty's trademarks to mislead the public and damage Liberty's good will and brand. However, *Rogers* and its progeny make clear that the First Amendment does not insulate all artistic works

---

[2] Liberty agrees that the Court may consider the Episode and the *Better Call Saul* show as incorporated by reference in the Complaint. Motion, p. 1 at n. 1. But to the extent there is any ambiguity in how to construe these materials, all reasonable inferences should be resolved in Liberty's favor. *Faber*, 648 F.3d at 104. The Court should not, as Defendants ask the Court to do, consider unsworn statements in their Motion. *See Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

from Lanham Act claims. *Rogers*, 875 F.2d at 998; *Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Group, Inc.*, 886 F.2d 490, 493 (2d Cir. 1989) ("[t]rademark protection is not lost simply because the allegedly infringing use is in connection with a work of artistic expression."). "Consumers of artistic works thus have a dual interest: They have an interest in not being misled and they also have an interest in enjoying the results of the author's freedom of expression." *Rogers*, 875 F.2d at 998. *Rogers* specifically prohibits use of another's trademark in an artistic work if (1) the trademark has "no artistic relevance" to the subject work or (2) if there is artistic relevance, then use of the marks in the subject work "explicitly misleads." *Id.* at 999-1000.[3]

Thus, *Rogers* is not a bar to Liberty's claims. The Lanham Act is applicable to "artistic works" where, as here, "the public interest in avoiding consumer confusion outweighs the public interest in free expression." *Id.* at 999. Where use of a mark "has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance," but the use "explicitly misleads at the source or the content of the work," then a claim under the Lanham Act may proceed." *Id.* Here, this case should proceed because the Complaint and incorporated work establish that Defendants' use of Liberty's marks is not artistically relevant and is explicitly misleading.

### A. Defendants' Use Of Liberty's Trademarks and Trade Dress Is Not Artistically Relevant

The first prong of the *Rogers* test considers whether the junior use is artistically relevant to the underlying work. *Rogers*, 875 F.2d at 999. "The artistic relevance prong ensures that the

---

[3] Consideration of a *Rogers* defense on a motion to dismiss is generally disfavored. *See, e.g., Sapieyevski v. Live Nation Worldwide, Inc.*, 2019 WL 1284302, at *4 (D.D.C. Mar. 20, 2019) ("[C]onsideration of the *Rogers* defense on a motion to dismiss appears to be the exception, not the rule."); *Car-Freshner Corp. v. Getty Images, Inc.*, 822 F. Supp. 2d 167, 176 n. 14 (N.D.N.Y. 2011) (declining to apply *Rogers* balancing test at the motion to dismiss stage). *Rogers* was itself a summary judgment case decided after two years of discovery into the defendant's artistic motivation, among other topics. *Id.* at 997, 1001. Discovery is likewise needed here, particularly because the Motion includes unsworn statements about the supposed artistic relevance of Defendants' use, which are inconsistent with the work itself. *See, e.g., Hermès Int'l et al. v. Rothschild*, No. 22-cv-384-JSR, --- F. Supp. 3d ---, 2022 WL 1564597, *5 (S.D.N.Y. May 18, 2022) (declining to resolve factual disputes as to artistic relevance and explicit misleadingness on a motion to dismiss).

defendant intended an artistic—*i.e.*, noncommercial—association with the plaintiff's mark, as opposed to one in which the defendant intends to associate with the mark to exploit its popularity and goodwill." *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 178 (S.D.N.Y. 2012) (citing *Rogers*, 875 F.2d at 1001). Thus, if the Court determines that Defendants arbitrarily identified the tax preparation business at the center of the Episode using Liberty's trademarks and trade dress "just to exploit the publicity value" of Liberty's brand, then Defendants' First Amendment defense must fail. *Id.* at 1001.

Here, common sense dictates that the LIBERTY TAX SERVICE mark and Statue of Liberty-themed trade dress has no genuine artistic relevance to a show about a con man living in New Mexico.[4] Rather, Defendants' pervasive use of multiple aspects of Liberty's marks and trade dress make clear that Liberty intended to associate with the marks and trade dress just to exploit their popularity and goodwill. Defendants' "Sweet Liberty Tax Services" appears out of nowhere for a single episode of the six season series and it has no connection to the show's storyline. Defendants easily could have called their tax preparation business by any other name, but they arbitrarily chose to exploit and besmirch the popularity and goodwill of Liberty's brand. While Defendants chock it up to a coincidence, the characters in *Better Call Saul* do not—as Defendants claim—just "happen to [be] operat[ing] a fictional tax business" that copies virtually all of Liberty's trademarks and trade dress. Motion, p. 1.

---

[4] In applying the *Rogers* test, courts routinely consider whether the work's geographic location makes the use artistically relevant. *See, e.g., Roxbury Entm't v. Penthouse Media Grp.*, 669 F. Supp. 2d 1170, 1176 (C.D. Cal. 2009) (finding the title ROUTE 66 artistically relevant to the film because of the film's setting in a roadside motel and the association of "Route66" with cross-country travel); *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192 (9th Cir. 2017) (finding that the word "Empire" had artistic relevance to the show's setting in the Empire State (New York)). By contrast, Liberty's Statute of Liberty-themed (New York) trademarks and trade dress have no artistic relevance to the Episode's geographic location in New Mexico and Mexico.

Defendants offer several explanations as to why Liberty's marks and trade dress were supposedly relevant to the Episode.  Motion at 8-10.  Defendants' arguments attempt to explain away Defendants' use of Liberty's marks and trade dress in a variety of ways that are inherently inconsistent with one another.  While Defendants initially claim that "Sweet Liberty" references Craig's release from prison, and point to the song "Sweet Land of Liberty" (Motion, p. 8), Defendants' explanation is not credible because the Episode make only passing reference to Craig's release and "Sweet Land of Liberty" is not played in the Episode.  If Craig's release from prison were truly the inspiration for the "Sweet Liberty Tax Service" brand, it could have received a nod in numerous much more obvious ways than using Liberty's intellectual property.

Moreover, if "Liberty" references Craig's "liberty's from prison, that explanation undermines Defendants' other arguments that "Liberty" refers to the Statue of Liberty, which Defendants claim is relevant to Saul's office in *Breaking Bad* and because the Kettlemans are "grifters who wrap themselves with patriotic iconography to cloak their checkered past and ongoing misdeeds."  Motion, pp. 9-10.  Defendants cannot have it both ways.  Even assuming that Defendants needed to make their tax business "patriotic" themed, that does not mean Defendants had to rip off Liberty's marks and trade dress to do so.  There are many other ways to express patriotism and freedom, including bald eagles, capitol buildings, colonial images, maps of the United States, and military insignias and images.  Words like "freedom" or "America/can" or even "patriot" could have been used.  Instead, Defendants deliberately chose to make their tax preparer business an obvious copy of Liberty Tax.  The fact that so many other alternatives were available underscores that Defendants intended to exploit the publicity value of Liberty's brand.

The Sixth Circuit's decision in *Parks v. LaFace Records* is instructive.  329 F.3d 437 (6th Cir. 2003).  In that case, musical group Outkast released the song "Rosa Parks," which was not

about Rosa Parks, but rather was about how Outkast is better than its competitors who must therefore take a "back seat" to them and "move to the back of the bus." *Id.* Outkast argued that because the song contained the lyrics "move to the back of the bus," use of Park's name was symbolic or metaphorical. *Id.* The district court agreed, and granted Outkast's motion for summary judgment. *Id.* The Sixth Circuit reversed, finding it could not be said as a matter of law that the title was artistically relevant to the song itself. *Id.* at 459. If the requirement of "relevance" is to have any meaning, the court believed "it would not be unreasonable to conclude that the title Rosa Parks is not relevant to the content of the song in question." *Id.* at 453. So too here. If the artistic relevance requirement is to have any meaning, it must be found that Liberty's LIBERTY TAX SERVICE trademark and Statue of Liberty and red, white, and blue-themed trade dress are not relevant to an Episode about a con man and a couple in the New Mexico desert. Rather, Defendants arbitrarily chose to use Liberty's trademarks and trade dress just to exploit the goodwill of Liberty's famous brand. AC, ¶¶ 68, 76, 80, 105.

Defendants' reliance on *Louis Vuitton* is misplaced because there the Court found that the junior work was "about" the senior use. 868 F.Supp. at 178. That is, the Court found that use of a counterfeit Louis Vuitton bag in *The Hangover II* was artistically relevant because the use was intended to create an artistic association with Louis Vuitton's brand, which it did. *Id.* By contrast, Defendants expressly disclaim any artistic association with Liberty Tax whatsoever. Defendants' citation to *Stewart Surfboards,* 2011 WL 12877019, at *5 is easily distinguishable. In *Stewart*, a depiction of plaintiff's surfboard on the back cover of a fictional book was artistically relevant because the book was about surfing and the surfboard had "celebrity status" in the surfing community. Here, Liberty's LIBERTY TAX SERVICE mark and Statue of Liberty-themed trade dress are not at all relevant to Saul and Kim's ploy to character assassinate Howard Hamlin at the

center of the Episode.  To the contrary, the mark's only role in the show is exploiting the publicity value of associating the Episode with Liberty's iconic brand.

At a minimum, the Court should find that the Complaint contains sufficient factual allegations that Defendants intended to exploit the publicity value of Liberty's brand and that Defendants' unsworn statements of supposed artistic relevance create factual disputes that cannot be resolved on a motion to dismiss.  The Court in *Hermès* reached a similar conclusion in determining there were factual disputes regarding artistic relevance and explicit misleadingness that could not be resolved at the motion to dismiss stage.  2022 WL 1564597, at *5.

### B.  Even If Defendants' Use of Liberty's Trademarks and Trade Dress Has Some Artistic Relevance It Is Explicitly Misleading

Defendants' First Amendment defense also fails on the basis that Defendants' pervasive use of Liberty's marks and trade dress explicitly misleads consumers into believing that Liberty sponsored or "otherwise authorized" the Episode.  *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1379 (2d Cir. 1993).  To determine whether use of a trademark in an artistic work is explicitly misleading, courts consider the *Polaroid* likelihood-of-confusion factors.  *Gayle v. Allee*, 2021 WL 120063, *7 (S.D.N.Y. Jan. 13, 2021) (citing, *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)).[5]  Use of another's mark is explicitly misleading "where it induces members of the public to believe the work was prepared or authorized by the plaintiff." *Louis Vuitton*, 868 F.Supp.2d at 179.

Defendants cite various cases where courts did not expressly apply the *Polaroid* factors. Motion, pp. 10-11.  It is, however, well settled that "[t]he explicitly misleading determination

---

[5] The *Polaroid* factors include: (1) strength of the plaintiff's mark; (2) degree of similarity between the marks; (3) proximity of the products; (4) the likelihood that the plaintiff will bridge the gap between the two markets; (5) the existence of actual confusion; (6) the defendant's intent in adopting the mark; (7) the quality of defendant's product; and (8) the sophistication of the purchasers.  *Polaroid Corp.*, 287 F.2d at 495

"must be made, in the first instance, by application of the venerable *Polaroid* [likelihood of confusion] factors." *Louis Vuitton*, 868 F. Supp. 2d at 179 (citing *Cliffs Notes, Inc.*, 886 F.2d at 495 n. 3).[6]  Although the likelihood of confusion still "must be particularly compelling" under *Rogers* to outweigh First Amendment interests. *Twin Peaks Prods.*, 996 F.2d at 1379-80.

Because the *Polaroid* test "is a fact-intensive analysis," *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006), the Court should allow the parties to conduct discovery to develop a full factual record.  *See Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 267 (E.D.N.Y. 2014) ("There is no requirement that a plaintiff address the *Polaroid* factors in its pleading[.]").  But even as to the *Polaroid* factors which can be considered at this stage, the Complaint's well-pleaded allegations and other materials incorporated therein more than adequately demonstrate a compelling likelihood of confusion.[7]

Here, application of the *Polaroid* factors demonstrates that Defendants explicitly misled consumers to believe that Liberty authorized or endorsed the Episode.  As to the first three factors (strength, similarity, proximity), Defendants copied Liberty's registered LIBERTY TAX SERVICE trademark, slapped on the prefix "Sweet," and used it and Liberty's other iconic trade dress to exploit and besmirch the goodwill of Liberty's brand in depicting a business in the same tax preparation space.  Defendants' suggestion that their addition of the prefix "Sweet" somehow distanced their mark from Liberty's mark must be rejected.  "Adding a generic name to another's

---

[6] *See, e.g., Twin Peaks*, 996 F.2d at 1379-80 (remanding case to apply *Polaroid* factors to determine whether use was explicitly misleading under *Rogers*); *see also Gayle*, 2021 WL 120063, at *5, *7 (applying *Polaroid* factors to determine whether trademark use was explicitly misleading under *Rogers*); *AM Gen. LLC v. Activision Blizzard, Inc.*, 450 F. Supp. 3d 467, 480-84 (S.D.N.Y. 2020) (applying *Polaroid* factors to use of trademark in video game); *Medina v. Dash Films, Inc.*, 2016 WL 3906714, at *4 (S.D.N.Y. July 14, 2016) (observing that the Second Circuit has directed district courts to determine whether a title is explicitly misleading by application of the venerable *Polaroid* factors).
[7] *See World Trade Centers Ass'n, Inc. v. Port Auth. of New York and New Jerse*y, 2016 WL 8292208, at *2 (S.D.N.Y. Dec. 15, 2016) ("It is well settled that, when applying the *Polaroid* factors to determine likelihood of confusion at a motion to dismiss stage, courts have not required all factors to be addressed in order to find adequate pleading of a likelihood of confusion.").

mark, especially if it is a famous mark, will not usually avoid a likelihood of confusion." 4 *McCarthy on Trademarks & Unfair Competition*, § 23.50 (5th ed.). If anything, Defendants' addition of the word "Sweet" and plural "s" to "Services" demonstrates that their unauthorized use was an intentional, bad faith attempt to capitalize on Liberty Tax's good will and brand.[8]

As to the sixth factor (defendants' intent), the work itself demonstrates that Defendants intended to mislead consumers into believing that Liberty authorized or endorsed the Episode because Defendants selected multiple aspects of Liberty's trademarks trade dress to exploit the publicity value of their real life counterparts. Defendants could have selected any combination of trademarks and trade dress to denote their brand, but they chose to rip off the LIBERTY TAX SERVICE mark and use Statue of Liberty and red, white, and blue flag-themed trade dress and logos almost identical to those used by Liberty Tax. This was no coincidence. Defendants made multiple "explicit references" to Liberty Tax precisely so they could exploit Liberty's goodwill and brand and mislead consumers into believing Liberty sponsored or endorsed the Episode.

As to the fifth factor (actual confusion), the Complaint pleads that Defendants' use has caused confusion and includes at least one example of actual confusion between "Sweet Liberty Tax Services" and Liberty Tax on the internet. AC, ¶¶ 52, 75, 87. Specific evidence or examples are not required at the pleading phase, but could be provided in discovery. Consumers are especially likely to be confused into believing that Liberty sponsored or authorized the Episode because Defendants swapped out their historical authorized use of Cinnabon's marks and trade dress at the start of the first five seasons with their unauthorized use of Liberty's marks and trade

---

[8] *See Focus Products Group International, LLC v. Katri Sales Co., Inc.*, 2022 WL 17851810, at *44 (S.D.N.Y. Dec. 22, 2022) ("Where the junior user's mark is not fully identical to the senior mark, the Second Circuit has upheld findings of bad faith where the junior user knew of the prior mark and the junior mark showed 'similarities so strong that it seems plain that deliberate copying has occurred.'") (quoting *Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 587 (2d Cir. 1993)).

dress at the start of Season 6.   It is thus highly plausible that consumers would be confused into believing that Liberty branched into product placement just like Cinnabon and other brands have done and Defendants adopted Liberty's mark for the express purpose of creating that false impression.   These considerations provide compelling grounds under *Rogers* to conclude that Defendants' pervasive use of its marks and trade dress explicitly misled consumers into believing that Liberty sponsored or "otherwise authorized" the Episode.

Defendants overstate what it means for a use to be "explicitly misleading."   The relevant question is whether the defendant's use of the mark "is misleading in the sense that it induces members of the public to believe [the work] was prepared or otherwise authorized" by the plaintiff. *Louis Vuitton*, 868 F. Supp. 2d at 179 (quoting *Twin Peaks*, 996 F.2d at 1379).   The Second Circuit does not require, as Defendants suggest, an affirmative misrepresentation that a work was sponsored by the trademark holder.   *Twin Peaks Prods., Inc.*, 1379-80 (remanding for consideration of *Polaroid* factors notwithstanding no affirmative misrepresentation of sponsorship); *see also Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 270 (9th Cir. 2018) ("in some instances, the use of a mark alone may explicitly mislead consumers about a product's source if consumers would ordinarily identify the source by the mark itself.").   Here, Defendants' extensive infringing use of the LIBERTY TAX SERVICE mark, in conjunction with Defendants' other uses of Liberty's marks and trade dress, explicitly misled the general public and caused actual confusion as to whether Liberty sponsored or endorsed the Episode and Defendant's advertising.  AC, ¶¶ 1, 75 87.   It is explicitly misleading for Defendants to call their tax business "Sweet Liberty Tax Services" and use Liberty's other marks and trade dress because such use explicitly and implicitly associates the show with Liberty's marks and thus falsely creates the impression that Liberty sponsored or endorsed the Episode and advertising.   That is, by calling the tax business "Sweet

Liberty Tax Services," and using Liberty's Statue of Liberty inflatable, registered logo, and red, white, and blue trade dress, Liberty made "explicit indication[s]" to viewers that Liberty sponsored and endorsed the works. *Rogers*, 875 F.3d at 1001.

The disclaimer trumpeted by Defendants does not dispel the explicit misleadingness of Defendants' conduct. It flashes for only a split second after all the closing credits at the very end of the Episode. Ex. A at 59:12. At almost a hundred words, no viewer could possibly read the disclaimer in the time provided. And even if a viewer paused the Episode to read the disclaimer, it is too little, too late, because it appears long after viewers have already been misled into believing that Liberty sponsored or endorsed the Episode. "[C]ourts have held that disclaimers are not only ineffective, but actually cut against the allegedly infringing party" where, as here, Defendants' use of the marks is significantly more prominent than the disclaimer. *See, e.g., Coty Inc. v. Excell Brands*, 277 F. Supp. 3d 425, 448 (S.D.N.Y. 2017) ("Not Associated with" disclaimer did not prevent confusion where use of plaintiff's well-known marks were "significantly more prominent and accentuated"); *see also Twin Peaks*, 996 F.2d at 1379 (remanding for consideration of *Polaroid* factors notwithstanding express disclaimer of association on cover of work).

Defendants' argument that consumers are unlikely to believe that Liberty sponsored or authorized the show given Defendants' ultimately negative depiction of Liberty Tax as a criminal enterprise is similarly unavailing. Motion, pp. 2-3. This argument makes Liberty's point as to why the consumer confusion here is particularly harmful and outweighs any First Amendment interests. Because Defendants used Liberty's marks and trade dress to explicitly mislead consumers into believing that Liberty sponsored or endorsed the show *before* revealing at the very end of the Episode that their rip-off Liberty Tax was stealing from its customers, the damage was already done and it did not make Defendants' conduct any less misleading and confusing.

17

Defendants cite several mostly non-Second Circuit cases for the proposition that mere use of a trademark in an artistic work is insufficient to state a trademark claim.[9]  All of these care are easily distinguishable.  Unlike this case, *Louis Vuitton*, *Stewart Surfboards*, and *E.S.S. Ent. 2000* all involved mere incidental uses of trademarks that were insufficient to explicitly mislead consumers into believing the plaintiff authorized or endorsed the work.  *See Louis Vuitton*, 868 F. Supp. 2d at 182 (use of fake Louis Vuitton bag for less than thirty seconds did not explicitly mislead);[10] *Stewart*, 2011 WL 12877019, at *7 (Stewart Surfboards mark on back cover of book, underneath dust jacket, did not explicitly mislead); *E.S.S. Ent. 2000*, 547 F.3d at 1100 (minor appearance of trademarked strip club in video game was too incidental to overall story to be explicitly misleading).  By contrast, Defendants here made pervasive use of Liberty's trademarks and trade dress resulting in a substantial likelihood that consumers would believe that Liberty authorized or endorsed the Episode just like Cinnabon did previously.  *Mattel* is also easily distinguishable.  While the defendants in *Mattel* made more substantial use of the Barbie trademark, the use was parodic such that it could not be explicitly misleading.  296 F.3d at 902.  Here, Defendants do not claim they parodied Liberty's trademarks and trade dress because they disclaim making any use of Liberty's trademarks and trade dress at all.  In sum, Defendants' use of Liberty's trademarks and trade dress was explicitly misleading and Defendants' *Rogers* defense must fail.

---

[9] *See* Motion, pp. 12-13 (citing *Louis Vuitton*, 868 F. Supp. 2d at 174-75; *Stewart Surfboards*, 2011 WL 12877019, at *7; *E.S.S. Ent. 2000, Inc. v. Rock Star Video, Inc.*, 547 F.3d 1095 (9th Cir. 2008); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002)).

[10] *Louis Vuitton* is also distinguishable because there the plaintiff argued that the "explicitly misleading prong" could apply to the source or content of a third-party's goods, instead of the defendant's goods.  868 F. Supp. 2d at 181 ("Louis Vuitton does not allege that Warner Bros. used the Diophy bag in order to mislead consumers into believing that Louis Vuitton produced or endorsed the Film.  Therefore, the complaint fails to even allege the type of confusion that could overcome the *Rogers* protection.").  Here, Liberty alleges the type of confusion that overcomes *Rogers* protection, *i.e.*, that Defendants used Liberty's trademark and trade dress to mislead consumers into believing that Liberty sponsored or endorsed the Episode and advertising.  AC, ¶¶ 1, 47, 48, 52, 68, 76, 88, 99, 105.

**C.    Discovery Is Needed Into Whether Defendants' Use Of Liberty's Marks Was Purely Artistic**

Defendants try to minimize their widespread use of Liberty's trademark and trade dress in advertising by calling it "ancillary promotional activity" and relegating their summary to a footnote.  Motion, p. 14, n. 6.  However, advertising is classic commercial speech, which falls outside First Amendment protection.  *See Yankee Pub. Inc. v. News America Pub. Inc.*, 809 F. Supp. 267, 276 (S.D.N.Y. 1992) ("Free speech rights do not extend to labeling or advertising products" under *Rogers*); *see also Donahue v. Artistn Entm't, Inc.*, 2002 WL 523407, at *7 n. 5 (S.D.N.Y. Apr. 8, 2002) (observing that *Rogers* did not concern "trade or advertising").  While Defendants contend that their advertising is protected because it relates to the Episode, evidence suggests that the advertising was also used to advertise the AMC channel and sell AMC's streaming service, AMC+.  AC, ¶¶ 49, 54 and p. 19 at n. 2, Figure 15; *see also Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 457 (S.D.N.Y. 2008) (evaluating whether a video and mural included both commercial and artistic aspects).  Defendants' citation to *Fortres Grand Corp. v. Warner Bros. Entm't Inc.* is distinguishable because there the promotional materials were not being used to sell other products or services like AMC did here.  947 F. Supp. 2d 922, 924-25 (N.D. Ind. 2013), *aff'd* 763 F.3d 696 (7th Cir. 2014).  Discovery that is exclusively in control of Defendants is needed to fully understand the extent to which Defendants' advertising was a marketing tool designed to sell subscriptions to AMC's streaming service and advertise the AMC channel.  This is especially so given that Defendants took down at least one of the posts from AMC's social media page.  AC, ¶ 49.  The Court's consideration under *Rogers* should take into account whether a mix of artistic and commercial uses tips the balance more in favor of Liberty as the trademark holder.

### D.     Liberty States a Claim Under the New York Trademark Dilution Statute

Liberty's claim under the New York trademark dilution statute should proceed.  To state a claim for trademark dilution under New York law, Liberty must show "(1) that it possesses a strong mark—one which has a distinctive quality or has acquired a secondary meaning . . .  and (2) a likelihood of dilution by either blurring or tarnishment."  *Fireman's Ass'n of State of New York v. French Am. Sch. of New York*, 839 N.Y.S.2d 238, 241-42 (2007) (internal quotation marks and citations omitted); *see also* N.Y. Gen. Bus. Law § 360-*l*.

Blurring is "the whittling away of an established trademark's selling power through its unauthorized use by others."  *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 105 (2d Cir. 2009) (citations and quotations omitted).  Tarnishment occurs when a trademark "is portrayed in an unwholesome or unsavory context."  *Id.* at 110.  New York law only requires a trademark holder to prove a likelihood of dilution.  N.Y. Gen. Bus. Law § 360-*l*.

Liberty has plausibly alleged that Defendants' use of its marks and trade dress in connection with its fraud-driven "Sweet Liberty Tax Services" is likely to cause both types of dilution.  AC, ¶¶ 100, 102-105.  Defendants' only challenge to Liberty's New York dilution claim is that it is barred by the First Amendment.  Motion, pp. 15-16.  Liberty's dilution claim is not barred by the First Amendment for the same reasons as Liberty's infringement claims and Liberty incorporates those same arguments herein.

## II.     LIBERTY OTHERWISE ADEQUATELY STATES ACTIONABLE CLAIMS FOR TRADEMARK INFRINGEMENT

Defendants raise several other defenses to Liberty's trademark infringement claims, none of which have merit.  Motion, pp. 17-19.  First, Defendants argue that Liberty does not seek to prevent the type of consumer confusion that trademark claims are intended to prevent.  *Id.* at 17.  Defendants are mistaken.  "The relevant question [here] is whether the defendant's use of the mark

'is misleading in the sense that it induces members of the public to believe [the work] was prepared or otherwise authorized' by the plaintiff." *Louis Vuitton*, 868 F. Supp. 2d at 179 (quoting *Twin Peaks Prods.*, 996 F.2d at 1379.)  Here, Liberty's claims seek to prevent precisely the type of confusion that trademark laws were designed to protect in alleging that Defendants' unauthorized use of Liberty's marks and trade dress misled consumers into believing that the Episode and advertising were sponsored or authorized by Liberty.  AC, ¶¶ 1, 4, 47, 48, 52, 68, 76, 88, 99, 105.

Second, Defendants rely on facts outside the Complaint in offering the convoluted argument that Liberty fails to state a claim for trademark infringement because "the only purchasing decision made by television viewers is whether to subscribe to a platform or purchased a DVD that will allow them to watch *Better Call Saul*" and "the FAC contains no plausible allegations that any reference to Plaintiff's marks or alleged confusion relating thereto had an impact on that decision."  Motion, p .17.  While Liberty does not concede that the Lanham Act imposes any such requirement, the Second Circuit has expressly rejected efforts to limit Lanham Act claims to such "point of sale" confusion.  *See Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 539 n. 4 (2d Cir. 2005).  In any event, Liberty *did* plead plausible allegations suggesting that reference to Liberty's marks caused confusion relating to consumers' purchase of the Episode.  Specifically, Liberty alleges (i) that Defendants' widespread use of Liberty's trademarks and trade dress, including in advertisements, caused confusion as to whether Liberty sponsored and endorsed the Episode (AC ¶¶ 1, 4, 47, 48, 52, 68, 76, 88, 99, 105); and (ii) that the Episode resulted in the biggest day of new subscriber sign-ups for AMC's streaming service, AMC+ where the Episode can be watched.  AC, ¶¶ 54, 65.  Defendants are likely in possession of additional discoverable information demonstrating that use of Liberty's intellectual property caused similar purchasing confusion if such evidence is even required.

Lastly, Defendants rely on more cases involving mere incidental uses of trademarks in arguing that Liberty has not plausibly alleged that television viewers would be misled in a way that impacts their decision to purchase the Episode.[11]   These cases are easily distinguishable because the challenged uses were only incidental to the artistic work such that consumers were not explicitly misled into believing that the trademark holders sponsored or authorized the work.  *See Gottlieb Development*, 590 F. Supp. 2d at 635 (trademarked pinball machine which appeared in just one scene); *Wham-O, Inc.*, 286 F. Supp. 2d at 1256-58 (trademarked "Slip 'N Slide" which appeared in just one scene); *Caterpillar Inc.*, 287 F. Supp. 2d at 917 (limited appearance of minions driving trademarked Caterpillar bulldozers).  By contrast, the Episode made pervasive use of Liberty's trademarks and trade dress to explicitly misled consumers into believing that Liberty sponsored or endorsed the Episode.  AC, ¶¶ 1, 36-47.  Defendants reinforced that confusion by also using Liberty's trademarks and trade dress in their widespread advertising campaign on Facebook/Instagram, YouTube, and Twitter.  *Id.* at ¶¶ 48-52.  Defendants' reliance on cases involving mere incidental trademark uses is misplaced.

## III.      LIBERTY PLAUSIBLY STATES A CLAIM FOR DEFAMATION

Liberty's Complaint plausibly states a claim for defamation.  AC, ¶¶ 107-121.  To state a claim for defamation, a plaintiff must plead: 1) a false statement, and 2) publication to a third party, 3) absent privilege or authorization, which 4) causes harm, unless the statement is defamatory *per se*, in which case harm is presumed.  *Stepanov v. Dow Jones & Co., Inc.*, 120 A.D.3d 28, 987 N.Y.S.2d 37 (1st Dept. 2014).  Liberty's Complaint sets forth well-pleaded facts in support of all four elements of its defamation claim.  AC, ¶¶ 108-121.

---

[11] *See* Motion, pp. 17-19 (citing, *Gottlieb Development LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 629 (S.D.N.Y. 2008); *Wham-O, Inc. v. Paramount Pictures Corp.*, 286 F. Supp. 2d 1254, 1256-58 (N.D. Cal. 2003); *Caterpillar Inc. v. Walt Disney Co.*, 287 F. Supp. 2d 913, 917 (C.D. Ill. 2003)).

First, Liberty more than adequately pleads Defendants' false statements with sufficient particularity, including that Liberty engages in "tax preparer fraud," "their clients always end up with smaller refunds than they deserve," and "these creeps file legit returns with [the IRS], give the client fake ones that show about half the proper amount and then pocket the difference." *Id.* at ¶¶ 40, 109.  Second, the Complaint plausibly alleges that Defendants' false statements were published to third parties, including 1.481 million viewers during the initial broadcast.  *Id.* at ¶ 53.  Third, Defendants' false and defamatory statements were made absent any privilege or authorization from Liberty.  *Id.* at ¶¶ 62, 117.  Fourth, Defendants' false statements caused harm and were defamatory *per se* because they impugn the basic integrity and competence of Liberty's business in alleging criminal activities.  *Id.* at ¶¶ 113, 118-119.

Defendants argue that Liberty fails to allege actionable statements of fact because Defendants' false statements were supposedly part of a "comedic plot device" and the depiction of the Kettlemans is "farcical."  Motion, pp. 20-21.  While Liberty disagrees that Defendants' false statements were humorous, Defendants cannot avoid liability by "dressing [their] wolfish words in humorous sheep's clothing."  *Hamilton v. Prewett*, 860 N.E.2d 1234, 1245 (Ind. Ct. App. 2007); *see also Esposito-Hilder v. SFX Broadcasting*, 171 Misc.2d 286, 291 (Sup. Ct. 1996) *aff'd*, 236 A.D.2d 186, 665 N.Y.S.2d 697 (1997) ("The First Amendment was not enacted to enable wolves to parade around in sheep's clothing, feasting upon the character, reputation and sensibilities of innocent private persons."); *Triggs v. Sun Print & Pub. Assn.*, 179 N.Y. 144, 155 (1904).  Defendants' reliance on *Frank v Nat'l Broadcasting Co.*, 119 A.D.2d 252, 256 (2d Dep't 1986) is misplaced because that case involved a parody, which negates the impression that defendant is asserting an objection statement of fact.  "[P]arody is another beast that goes beyond mere humor."  *Hamilton*, 860 N.E.2d at 1245 (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 57 (1988).

The Episode was not a parody of Liberty Tax and Defendants do not contend otherwise.  The other cases cited by Defendants are similarly distinguishable because the context of the challenged statements negated the impression that the defendants were asserting an objective fact about the plaintiff.  *See Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F.Supp.2d 1068, 1081 (C.D. Cal. 1998) (film's context and use of rhetoric negated the impression that defendants were asserting as objective fact that the Crime Channel causes children to kill people); *Davis v. Walt Disney Co.*, 2004 WL 1895234, *  (D. Minn. Aug. 23, 2004) (context of challenged statements in Disney fantasy movie that "Earth Protectors" and its president control the minds of children and engage in environmental terrorism negated any impression that defendants were asserting facts).  By contrast, the context of defamatory statements here gave the impression that Defendants were asserting facts about Liberty in light of: (i) the virtually identical name; (ii) extensive use of Liberty's trademarks and trade dress; (iii) the non-comedic tone of the scene and dialogue; and (iv) Cinnabon's prior sponsorship and approval of similar episodes.  At best, Defendants raise issues of fact as to whether the statements were understood to be "of and concerning" Liberty, which do not defeat Liberty's claim on a motion to dismiss.  *See Geisler v. Petrocelli*, 616 F.2d 636, 639-41 (2d Cir. 1980) ("it has long been the rule that extrinsic evidence is admissible to buttress the claim that the defamation is 'of and concerning' the plaintiff and the fact that resort to such evidence may be necessary does not defeat the claim.").

The fact that Defendants added the word "Sweet" to Liberty's name does not immunize Defendants' statements because they were reasonably understood to be about Liberty.  A statement need not specifically identify the plaintiff to be actionable.[12]  Defendants' disclaimer that flashed

---

[12] *See Prince v. Fox Tel. Stations, Inc.*, 93 A.D.3d 614 (1st Dept. 2012) (finding that news broadcast was "of and concerning plaintiff" even though broadcast referred to different entity with similar name, as statement was reasonably understood to be about plaintiff); *Cuthbert v. Natl. Org. for Women*, 207 A.D.2d 624, 625-26 (3d Dept. 1994) ("[t]he fact that the material did not identify plaintiff by name does not preclude his maintenance of a defamation cause of

across the screen for a split second after the closing credits was likewise insufficient to undermine the impression that Defendants' false statements were "of and concerning" Liberty.

The description of "Sweet Liberty Tax Services" as a "little mom and pop outfit" does not negate Liberty's defamation claim. Such claim is consistent with Liberty's business given that Liberty is a franchisor, AC, ¶ 13, and its stores look similar to those in the Episode. *See* AC, Figure 1 and Figure 2. This case is easily distinguishable from *Cohn v. Nat. Broadcasting Co.*, 67 A.D.2d 140 (N.Y. App. Div. 1979), which held that a film disparaging Joseph McCarthy "would not give rise to a claim for defamation by plaintiffs as his former aides and advisors" because the court could not find how the reputation of such parties was damaged by statements regarding the senator. Liberty's use of a franchise business model does not render its defamation claim "derivative" because Liberty uses the Liberty Tax name and Defendants' false statements impugn Liberty's business and reputation. Defendants' reliance on *Sparrow Fund Management LP v. MiMex Group, Inc.*, 2019 WL 1434719, *11 (S.D.N.Y. Mar. 31, 2019) is misplaced. That case expressly observed that "[c]ourts have allowed [defamation] claims where the statement did not identify the plaintiff, but named an individual who was understood to represent that plaintiff." *Id.*

## CONCLUSION

Liberty has plausibly alleged likelihood of confusion, and the First Amendment is no bar to its claims under the Lanham Act or New York law. Defendants' other arguments are premature because discovery is needed and Liberty's well-pleaded Amended Complaint is sufficient. Accordingly, for all the reasons set forth above, Liberty respectfully requests that the Court deny Defendants' Motion to Dismiss.

---

action."); *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 923 (2d Cir. 1987) (stating identifying plaintiff by her maiden name qualified as "of and concerning" plaintiff because the audience "need[ed] only believe that it was about her").

Dated:          January 17, 2023                    Respectfully submitted,

By: */s/ Peter G. Siachos*
    Peter G. Siachos (NY Bar No.: 4436168)
    GORDON REES SCULLY
    MANSUKHANI LLP
    One Battery Park Plaza
    28th Floor
    New York, NY 10004
    Tel.: (212) 269-5500
    Fax: (212) 269-5505
    Email: psiachos@grsm.com

    Clair E. Wischusen (*Pro Hac Vice*)
    GORDON REES SCULLY
    MANSUKHANI LLP
    18 Columbia Turnpike
    Suite 220
    Florham Park, NJ 07932
    Tel.: (973) 549-2524
    Fax: (973) 377-1911
    Email: cwischusen@grsm.com

    James L. Messenger (*Pro Hac Vice*)
    GORDON REES SCULLY
    MANSUKHANI LLP
    21 Custom House Street
    5th Floor
    Boston, MA 02110
    Tel.: (857) 263-2000
    Fax: (857) 264-2836
    Email: jmessenger@grsm.com

    *Attorneys for Plaintiff,*
    *JTH Tax LLC d/b/a Liberty Tax Service*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2023, a true and correct copy of the foregoing Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss was served on counsel for Defendants at the email addresses below.  In accordance with the Court's Individual Practices, I will electronically file this Memorandum of Law when the motion has been fully briefed, and shall send a courtesy copy to the Court at that time.

> Gianni P. Servodidio
> Susan J. Kohlmann
> Allison N. Douglis
> JENNER & BLOCK LLP
> 1155 Avenue of the Americas
> 29th Floor
> New York, NY 11036
> gservodidio@jenner.com
> skohlmann@jenner.com
> adouglis@jenner.com


> */s/ Peter G. Siachos*
> Peter G. Siachos