**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**JTH TAX LLC d/b/a LIBERTY TAX SERVICE,**

Plaintiff,

v.

**AMC NETWORKS INC. & SONY PICTURES TELEVISION INC.,**

Defendants.

**ECF CASE**

No. 1:22-cv-06526-PGG

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

Gianni P. Servodidio (GS-0713)
Susan J. Kohlmann (SK-1855)
Allison N. Douglis (#5711015)
JENNER & BLOCK LLP
1155 Avenue of the Americas
29th Floor
New York, NY 10036
Tel.: (212) 891-1600
Fax: (212) 891-1699
gservodidio@jenner.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

ARGUMENT ........ 1

I. Plaintiff's Trademark Claims Fail Under *Rogers*. ........ 1

A. No Discovery Is Needed to Assess Artistic Relevance. ........ 1

B. The Use of Sweet Liberty Tax Services and Its Set Design Is Not Explicitly Misleading. ........ 4

II. Plaintiff Does Not Allege Actionable Defamatory Statements. ........ 8

CONCLUSION ........ 10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**


*Brown v. Showtime Networks, Inc.*,
394 F. Supp. 3d 418 (S.D.N.Y. 2019)....7

*Car-Freshner Corp. v. Getty Images, Inc.*,
822 F. Supp. 2d 167 (N.D.N.Y. 2011)....2

*Caterpillar Inc. v. Walt Disney Co.*,
287 F. Supp. 2d 913 (C.D. Ill. 2003)....6

*Dahl v. Swift Distrib., Inc.*,
No. 10-cv-551, 2010 WL 1458957 (C.D. Cal. Apr. 1, 2010)....5

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*,
547 F.3d 1095 (9th Cir. 2008)....3

*Esposito-Hilder v. SFX Broad., Inc.*,
171 Misc. 2d 286 (Sup. Ct. Albany Cnty. 1996), *aff'd*, 236 A.D.2d 186 (3d Dep't 1997)....9

*Fischer v. Forrest*,
286 F. Supp. 3d 590 (S.D.N.Y. 2018)....5

*Fortres Grand Corp. v. Warner Bros. Ent. Inc.*,
947 F. Supp. 2d 922 (N.D. Ind. 2013), *aff'd*, 763 F.3d 696 (7th Cir. 2014)....4

*Geisler v. Petrocelli*,
616 F.2d 636 (2d Cir. 1980)....9

*Gordon v. Drape Creative, Inc.*,
909 F.3d 257 (9th Cir. 2018)....7

*Hamilton v. Prewett*,
860 N.E.2d 1234 (Ind. Ct. App. 2007)....9

*Hermès International v. Rothschild*,
No. 22-cv-384, --- F. Supp. 3d ----, 2022 WL 1564597 (S.D.N.Y. May 18, 2022)....2

*Lang v. Ret. Living Publ'g Co.*,
949 F.2d 576 (2d Cir. 1991)....5

*Lombardo v. Dr. Seuss Enters., L.P.*,
279 F. Supp. 3d 497 (S.D.N.Y. 2017)....7

*Louis Vuitton Malletier S.A. v. Warner Bros. Ent., Inc.*,
868 F. Supp. 2d 172 (S.D.N.Y. 2012)....................3, 5, 6, 8

*Medina v. Dash Films, Inc.*,
No. 15-cv-2551, 2016 WL 3906714 (S.D.N.Y. July 14, 2016)....................6, 7

*MGFB Props., Inc. v. Viacom Inc.*,
54 F.4th 670 (11th Cir. 2022) ....................3

*Oppenheimer & Co. v. Trans Energy, Inc.*,
946 F. Supp. 2d 343 (S.D.N.Y. 2013)....................9

*Pirone v. MacMillan, Inc.*,
894 F.2d 579 (2d Cir. 1990)....................6

*Roberts v. Bliss*,
229 F. Supp. 3d 240 (S.D.N.Y. 2017)....................6

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989)....................2, 4

*Sapieyevski v. Live Nation Worldwide, Inc.*
No. 18-cv-830, 2019 WL 1284302 (D.D.C. Mar. 20, 2019). ....................2

*Twentieth Century Fox Television v. Empire Distrib., Inc.*,
875 F.3d 1192 (9th Cir. 2017) ....................3

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*,
996 F.2d 1366 (2d Cir. 1993)....................6, 7

*United States v. United Foods, Inc.*,
533 U.S. 405 (2001)....................4

*Wham-O, Inc. v. Paramount Pictures Corp.*,
286 F. Supp. 2d 1254 (N.D. Cal. 2003) ....................6

*Whiddon v. Buzzfeed, Inc.*,
No. 22-cv-4696, --- F. Supp. 3d ----, 2022 WL 16555584 (S.D.N.Y. Oct. 31, 2022), *reconsideration denied*, 2022 WL 17632593 (S.D.N.Y. Dec. 13, 2022) ....................2

**OTHER AUTHORITIES**

6 *McCarthy on Trademarks & Unfair Competititon* § 32:159 (5th ed. Dec. 2022 update)....................5

It is undisputed that *Better Call Saul* is a quintessentially expressive work and that the *Rogers* case and its progeny govern the disposition of Plaintiff's trademark infringement and dilution claims. The challenged use of the "Sweet Liberty Tax Services" name and set design clears the low threshold for artistic relevance and Plaintiff does not allege Defendants made any explicit false representations of sponsorship or endorsement. Nor do Plaintiff's allegations support *any* likelihood of confusion between a tax preparation business and a television show, much less the heightened "*particularly compelling*" standard required to overcome the critical First Amendment interests at stake. Instead, the challenged alleged depictions of Plaintiff's marks appear in the context of a comedic portrayal of two characters' *fictional* business with a *different name* and *different imagery* than Plaintiff's alleged trademarks. Plaintiff's wholly conclusory allegations that Defendants somehow intended to trade off Plaintiff's purported goodwill to gain an audience for their long-running hit show are at best implausible. No amount of discovery can salvage the legal deficiency of these claims. Plaintiff's trademark infringement and dilution claims fail as a matter of constitutional principles, controlling law, and common sense.

Plaintiff's defamation claim is equally baseless and should be dismissed. Nothing in Plaintiff's opposition supports allowing its defamation claim to move past the pleading stage when it is grounded in the implausible allegation that viewers would understand a scene in a long-running fictional show about the alleged misdeeds of two returning characters to be misstatements of *fact*, let alone statements *of and concerning* Plaintiff.

## ARGUMENT

### I. Plaintiff's Trademark Claims Fail Under *Rogers*.

#### A. No Discovery Is Needed to Assess Artistic Relevance.

The portrayal of "Sweet Liberty Tax Services" is a humorous double entendre both referencing Craig Kettleman's release from prison—a central theme of the plot line—and further

developing the Kettleman characters by cloaking their misconduct in a veneer of patriotism and by having McGill recognize their use of "Lady Liberty" as a "nice touch." MTD 3–5, 8–9. The Court may properly evaluate for itself the portrayal of "Sweet Liberty Tax Services" in order to conclude that it easily clears the low bar for artistic relevance. *See* MTD 11; *see also, e.g.*, *Whiddon v. Buzzfeed, Inc.*, No. 22-cv-4696, --- F. Supp. 3d ----, 2022 WL 16555584, at *4 (S.D.N.Y. Oct. 31, 2022) ("the works themselves supersede and control contrary descriptions of them" in assessing copyright fair use on motion to dismiss), *reconsideration denied*, 2022 WL 17632593 (S.D.N.Y. Dec. 13, 2022). In similar cases, courts routinely dismiss complaints under *Rogers* without requiring the submission of sworn witness testimony from the content creators as Plaintiff would have the Court believe.[1]

Plaintiff presents a scattershot of factual and legal arguments challenging the artistic merit of the Episode, which only underscores *Rogers*'s recognition that courts need not and should not delve into an analysis of the relative value of artistic content.

*First*, the test for artistic relevance does not turn on whether alternative names or set designs could have been used, as Plaintiff suggests. *See* Opp. 10–11. *Rogers* recognized that such a "'no alternative' standard provides insufficient leeway for literary expression." *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989). This is because, as the Eleventh Circuit recognized recently, "it

[1] Plaintiff wrongly suggests that consideration of *Rogers* on a motion to dismiss is generally disfavored, citing inapposite cases. Opp. 9 n.3. *Sapieyevski v. Live Nation Worldwide, Inc.* involved allegations that the plaintiff's intellectual property was used both in connection with an audiovisual work and as part of a widespread branding initiative, where there was significant dispute about the "nature and scope of the allegedly infringing use of the mark." No. 18-cv-830, 2019 WL 1284302, at *3–4 (D.D.C. Mar. 20, 2019). Similarly, in *Hermès International v. Rothschild*, the complaint offered robust allegations about the defendant's intent and instances of actual confusion. No. 22-cv-384, --- F. Supp. 3d ----, 2022 WL 1564597, at *5–6 & n.4 (S.D.N.Y. May 18, 2022). And in *Car-Freshner Corp. v. Getty Images, Inc.*, the court determined the plaintiff had sufficiently alleged that its marks were being used *as a trademark* to sell stock images. 822 F. Supp. 2d 167, 176 (N.D.N.Y. 2011).

would be improper for courts to decide what forms of expression are 'necessary.'" *MGFB Props., Inc. v. Viacom Inc.*, 54 F.4th 670, 681 (11th Cir. 2022).

*Second*, Plaintiff wrongly suggests, without legal support, that something is not artistically relevant when it evokes *multiple* meanings. *See* Opp. 11. To the contrary, a review of the Episode confirms that the "Sweet Liberty" name and set design cleverly captures multiple meanings and contributes to the development of multiple characters, making its relevance all the more apparent. *See, e.g.*, *Louis Vuitton Malletier S.A. v. Warner Bros. Ent., Inc.*, 868 F. Supp. 2d 172, 178 (S.D.N.Y. 2012) (identifying multiple bases for artistic relevance).

*Third*, courts have roundly rejected any suggestion in *Parks v. LaFace Records* that the defendant must be *commenting on* the plaintiff or its mark in order for any use to be artistically relevant. *See, e.g.*, *MGFB Props.*, 54 F.4th at 681 (concluding that "artistic relevance to Defendants' show independent of referring to Plaintiffs' establishment" suffices); *Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192, 1199 (9th Cir. 2017) (concluding that a title may have artistic relevance where it supports the themes of the work, among other possibilities). For example, simply evoking a plaintiff's mark to communicate a sense of surrealism and humor—as in a video game's cartoon portrayal of a Los Angeles neighborhood—can suffice for artistic relevance. *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1097, 1100 (9th Cir. 2008).[2]

Perhaps recognizing the weakness of its argument, Plaintiff argues that it needs discovery into the extent to which the Episode's "advertising" was used to promote viewership of the AMC

---

[2] The Court should dismiss out of hand Plaintiff's suggestion that the Statue of Liberty and Americana is only relevant to New York. Opp. 10 n.4. The Statue of Liberty is a ubiquitous symbol—even present on every U.S. Treasury check—and is suitable for a variety of settings as content creators see fit. Indeed, the FAC never alleges that Plaintiff's tax services are "New York"-themed, instead alleging that it has locations across the country. FAC ¶ 14.

channel and to market AMC's streaming service. Opp. 19. But, as explained in the Motion, courts routinely recognize that promotional activities *for a creative work* are subject to the same *Rogers* analysis as the work itself. MTD 14–15. This makes sense, because otherwise, the defendant in *Rogers* could *name* their movie *Ginger and Fred* but then would not be able to *promote* that movie. Nor should the Court credit Plaintiff's argument that depictions of "Sweet Liberty Tax Services" in so-called "advertising" is unprotected commercial speech. *See* Opp. 19. Commercial speech does "no more than propose a commercial transaction." *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001). But here, the portrayal of "Sweet Liberty Tax Services" is not proposing any commercial transaction because no such business exists. *See Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, 947 F. Supp. 2d 922, 933–34 (N.D. Ind. 2013) (recognizing that promotional materials outside the four corners of the film using the allegedly infringing mark "do far more than simply propose a commercial transaction . . ."), *aff'd*, 763 F.3d 696 (7th Cir. 2014).

### B. The Use of Sweet Liberty Tax Services and Its Set Design Is Not Explicitly Misleading.

Settled case law holds artistically relevant uses of a plaintiff's mark in expressive works do not give rise to liability under trademark infringement or dilution laws absent a higher showing of likely consumer deception than in a run-of-the-mill infringement case, where typically competing products are at issue. Explicit false statements of endorsement can meet this standard: as *Rogers* put it, "Jane Fonda's Workout Book" would be misleading if Jane Fonda were not actually associated with the book. *Rogers*, 875 F.2d at 999. Absent such explicit false statements or legally sufficient allegations of a "particularly compelling" showing of likely confusion, dismissal at the pleading stage is warranted. *See* MTD 10–11; Opp. 14.

Defendants have demonstrated as a matter of law that the FAC fails to meet the second prong of *Rogers*. As Plaintiff concedes, there are no alleged explicit misstatements of sponsorship.

Opp. 16–17. Nor are there any plausible allegations of *likely* consumer confusion, much less allegations sufficient to meet the kind of particularly compelling showing of likely confusion required. Defendants do not offer tax services; the Kettlemans' business is fictional, and Defendants are not using its name or the set design as marks to identify the source, origin, or sponsorship of their show. *See Louis Vuitton*, 868 F. Supp. 2d at 181 (rejecting as insufficient allegations that the plaintiff would be perceived as having "approved" the use of its product in a film, since that is not tantamount to confusion over whether the plaintiff "produced or endorsed the film"). Plaintiff does not offer entertainment services, and it has not alleged plans to do so. And even though non-misleading depictions of Plaintiff's exact marks would be permitted under *Rogers*, the challenged uses here concededly encompass different names and common patriotic imagery—making the likely connection to Plaintiff's real-world business tenuous at best.[3] Plaintiff's repeated assertion that Defendants stole Plaintiff's trademarks to free ride on its purported goodwill is unsupported beyond purely conclusory allegations, and is, quite simply, divorced from reality given the context and Plaintiff's own allegations about the pre-existing popularity of the show. FAC ¶ 34.

Under circumstances like this, numerous courts have dismissed claims under *Rogers* and have done so without individually assessing the *Polaroid* factors. MTD 10–11; *see also, e.g.*,

[3] Plaintiff's supposed allegations of actual confusion reflect nothing more than a stray Google image search result depicting the "Sweet Liberty" set design among many results for Liberty Tax Services. Opp. 15. But courts have recognized that automated Google search results are not actual confusion by the universe of potential purchasers that matters for a claim of trademark infringement, of the type that would impact any purchasing decisions. *See, e.g.*, *Fischer v. Forrest*, 286 F. Supp. 3d 590, 613 (S.D.N.Y. 2018); *Dahl v. Swift Distrib., Inc.*, No. 10-cv-551, 2010 WL 1458957, at *9 (C.D. Cal. Apr. 1, 2010); *see also Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 582–83 (2d Cir. 1991) (holding that misdirected phone calls are not relevant if they do not come from the relevant universe of potential purchasers); 6 *McCarthy on Trademarks & Unfair Competition* § 32:159 (5th ed. Dec. 2022 update) (explaining that the relevant potential purchasers in a traditional infringement case are "potential buyers of the *junior* user's goods or services").

*Louis Vuitton*, 868 F. Supp. 2d at 183–84. Even outside the *Rogers* context, the Second Circuit has made clear that claims "may be dismissed as a matter of law where the court is satisfied that the *products* or marks are so dissimilar that no question of fact is presented." *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 584 (2d Cir. 1990) (emphasis added and quotation marks omitted); *see also Roberts v. Bliss*, 229 F. Supp. 3d 240, 251 (S.D.N.Y. 2017) (collecting cases).[4]

Nor does Second Circuit case law impose the counterintuitive requirement that a court must always march through the *Polaroid* analysis. For example, in *Twin Peaks Productions, Inc. v. Publications International, Ltd.*, the Second Circuit did not hold that a full *Polaroid* analysis is always required, but rather *vacated* a district court's grant of summary judgment to the trademark plaintiff that had not considered whether the plaintiff had made a particularly compelling showing of likely confusion under *Rogers*. 996 F.2d 1366, 1371, 1379 (2d Cir. 1993). And *Medina v. Dash Films, Inc.* similarly confirms that the Court need not analyze the *Polaroid* factors here. No. 15-cv-2551, 2016 WL 3906714, at *5–6 (S.D.N.Y. July 14, 2016) (concluding without separately analyzing *Polaroid* factors that "[c]onsideration of plaintiff's complaint and the expressive work that prompted it permits only one conclusion: that the work is a film, and that its title is artistically relevant to its content and not explicitly misleading as to any association with [the plaintiff]").

Plaintiff attempts two additional rejoinders, each of which fails straightforwardly. First, Plaintiff suggests that viewers might be confused into believing that Liberty Tax sponsored or

---

[4] Plaintiff attempts to dismiss highly relevant cases like *Gottlieb*, *Wham-O*, and *Caterpillar* as involving "mere incidental uses," Opp. 22, but these decisions support the sheer implausibility that consumers would be confused given the difference between the products offered by the plaintiff and the defendant, even without applying *Rogers*. *See, e.g.*, *Wham-O, Inc. v. Paramount Pictures Corp.*, 286 F. Supp. 2d 1254, 1262, 1264 (N.D. Cal. 2003) (addressing use in a "signature scene" that directly referenced product); *Caterpillar Inc. v. Walt Disney Co.*, 287 F. Supp. 2d 913, 917, 920 (C.D. Ill. 2003) (concluding that it was improbable viewers would be confused by conspicuous use of plaintiff's product by villain's henchmen).

authorized the Episode because the fast-food chain Cinnabon purportedly approved the use of Cinnabon marks at various points over *Better Call Saul*. Opp. 15–16. Even setting aside that the FAC contains no such allegations, this tortured reasoning cannot support the kind of "particularly compelling" showing of likely confusion required. This is especially so because here, unlike with Cinnabon, the "Sweet Liberty" name and set design are not identical to Plaintiff's marks and use ubiquitous imagery. Plaintiff has no explanation for why people would believe Liberty Tax Service sponsored a supposedly negative portrayal of a business with a *different* name and appearance.

Second, Plaintiff incorrectly suggests that cases rejecting allegations of "explicitly misleading" conduct on motions to dismiss all involve "incidental" uses of a mark. Opp. 18. This is not true. Claims involving the very title of the creative work, not just its content, have been dismissed. *See Medina*, 2016 WL 3906714, at *5–6. In fact, courts have dismissed claims involving far more "pervasive" alleged uses in the content of the work itself than that at issue here. *See Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 428, 444 (S.D.N.Y. 2019) (dismissing claim based on use of thirty minutes of footage including plaintiff's name and likeness); *Lombardo v. Dr. Seuss Enters., L.P.*, 279 F. Supp. 3d 497, 513–14 (S.D.N.Y. 2017) (granting judgment on the pleadings regarding use of allegedly trademarked characters throughout creative work). Regardless, Plaintiff cannot explain how mere use of a mark interwoven into a broader creative work, without more, yields a "particularly compelling" showing of confusion.[5]

---

[5] The only cases Plaintiff cites on this point, Opp. 16, do not suggest otherwise, but rather involve contexts where a mark was used where one would typically expect to see a designation of origin, rather than subsumed within the body of a broader creative work. *See Twin Peaks*, 996 F.2d at 1370 (involving title of "who's who" guide about television show); *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 271 (9th Cir. 2018) (involving evidence that customers looked to marks inside greeting cards to identify source).

Finally, the Court should reject Plaintiff's suggestion that the "explicitly misleading" analysis necessarily requires discovery. Opp. 13–14. In this case, no amount of discovery would render Plaintiff able to demonstrate a particularly compelling likelihood of confusion. *Cf. Louis Vuitton*, 868 F. Supp. 2d at 184 (rejecting similar argument where "no amount of discovery will tilt the scales in favor of the mark holder at the expense of the public's right to free expression"). For example, even if discovery revealed that Defendants intentionally modeled "Sweet Liberty Tax Services" on Plaintiff, *Rogers* specifically protects such uses absent something more that would render the use explicitly misleading. Ultimately, requiring discovery in the hopes of meeting the heightened standard for confusion, no matter how futile, risks drawn-out litigation that will chill creation of the expressive works *Rogers* aimed to protect.

## II. Plaintiff Does Not Allege Actionable Defamatory Statements.

Defendants established that Plaintiff fails to state a claim for defamation on two levels: the FAC does not allege any statements in the Episode that would be reasonably understood to be statements of fact, and does not allege that any such statements were "of and concerning" Plaintiff. With respect to the "statement of fact" requirement, the Motion explained that where an expressive work is set in an obviously fictional setting and does not purport to make objective statements of fact about the plaintiff or the real world, there is no basis to find defamation. MTD 21–22. Plaintiff has no response, other than to assert that in those cases, "the context of the challenged statements negated the impression that the defendants were asserting an objective fact about the plaintiff." Opp. 24. But if ever there were a context negating such an impression, it is here—in the final season of a long-running fictional television show that Plaintiff never alleges has ever purported to represent real-world events. That puts this on all fours with these other cases.[6]

[6] The fact that *Better Call Saul* is not tethered to real-world events also distinguishes the sole case Plaintiff cites allowing a defamation claim to proceed based on a fictional work, where the book

Plaintiff tries halfheartedly to identify aspects of the Episode that purportedly support a conclusion that it is offering objective facts, resorting to the alleged similarities to Plaintiff's marks and the supposed "non-comedic" tone of the Episode, but does not explain how either undercuts *Better Call Saul*'s obvious fictional nature. Opp. 24. Plaintiff also suggests the use of humor alone would be insufficient to insulate defamatory speech from liability unless the speech is a parody. Opp. 23. But none of the cases Plaintiff cites support that a statement *must* be parody to be non-actionable; rather, they stand for the uncontroversial propositions that factual speech with humorous elements is not automatically exempt, *see, e.g.*, *Esposito-Hilder v. SFX Broad., Inc.*, 171 Misc. 2d 286, 291–92 (Sup. Ct. Albany Cnty. 1996), *aff'd*, 236 A.D.2d 186 (3d Dep't 1997), and conversely that parody is one form of non-factual speech that is not actionable, *Hamilton v. Prewett*, 860 N.E.2d 1234, 1245 (Ind. Ct. App. 2007). Finally, Plaintiff returns to its Cinnabon theory, suggesting viewers might infer that the Episode is conveying statements of fact because of Cinnabon's alleged prior sponsorship and approval. Opp. 24. But Plaintiff nowhere suggests that viewers understood *Better Call Saul* to be conveying statements of fact about events that happened at real-world Cinnabons. The reason is obvious: portraying even a carbon copy of a real-world business in a fictional work would not yield the inference that the fictional work is actually conveying statements of fact about what happens at that business in the real world.

Separately, the Motion also sets forth how a *Better Call Saul* viewer would not interpret the Episode as making any statements of fact of and concerning *Liberty Tax*. MTD 23–24. The

---

at issue had parallels to a recent, non-fictional news event. *See Geisler v. Petrocelli*, 616 F.2d 636, 638 (2d Cir. 1980). *Geisler* further relied on an outdated standard for motions to dismiss under which it must have "appear[ed] to a certainty that plaintiff [was] entitled to no relief under any set of facts which could be proved in support of the claim." *Id.* at 639–40; *Oppenheimer & Co. v. Trans Energy, Inc.*, 946 F. Supp. 2d 343, 348 n.4 (S.D.N.Y. 2013) (observing that *Twombly* explicitly rejected the standard applied in *Geisler*).

FAC fails as a matter of law to allege that anyone would understand fictional character Kim Wexler's statements about the fictional Kettlemans' exploits to be of and concerning Liberty Tax, even if the viewer somehow believed "Sweet Liberty Tax Services" to be a depiction of a Liberty Tax franchise. In contrast, in cases where courts have allowed defamation claims to proceed over arguments that the statements were not "of and concerning" the plaintiff, the statements were factual in nature and obviously intended to allude to or reference the plaintiff. *See* Opp. 24–25 n.12 (citing cases involving statements in non-fictional contexts). Courts regularly dismiss defamation claims against fictional works in similar circumstances. MTD 23.

## CONCLUSION

For the foregoing reasons and as stated in the Motion, the FAC should be dismissed with prejudice.

Dated: January 24, 2023

Respectfully submitted:

/s/ Gianni P. Servodidio

Gianni P. Servodidio (GS-0713)
Susan J. Kohlmann (SK-1855)
Allison N. Douglis (#5711015)
JENNER & BLOCK LLP
1155 Avenue of the Americas
29th Floor
New York, NY 10036
Tel.: (212) 891-1600
Fax: (212) 891-1699
gservodidio@jenner.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2023, a true and correct copy of the foregoing Reply in Support of Defendants' Motion to Dismiss was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.

/s/ *Gianni P. Servodidio*______
Gianni P. Servodidio