UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JTH TAX LLC d/b/a Liberty Tax,

                    Plaintiff,

          - against -

AMC NETWORKS INC. and SONY
PICTURES TELEVISION INC.,

                    Defendants.

**MEMORANDUM
OPINION & ORDER**

22 Civ. 6526 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          Plaintiff JTH Tax LLC brings this action for trademark and trade dress infringement under the Lanham Act, 15 U.S.C. §§ 1051 et seq., trademark dilution under New York General Business Law § 360-l, and common law defamation.  (Am. Cmplt. (Dkt. No. 29) ¶¶ 5,71-121 )  Plaintiff alleges that Defendants AMC Networks Inc. and Sony Pictures Television Inc. infringed on certain of Plaintiff's trademarks in Season 6, Episode 2 of Defendants' television show, Better Call Saul.  (Id. ¶¶ 35-45)

          Defendants have moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6).  (Dkt. No. 37)  For the reasons stated below, Defendants' motion to dismiss will be granted.

## BACKGROUND[1]

### I.     FACTS

          Plaintiff JTH Tax LLC is a tax preparation service incorporated in Delaware and headquartered in Virginia.  It has done business under the name Liberty Tax Service since

---

[1]  The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

1997.  (Am. Cmplt. (Dkt. No. 29) ¶¶ 6,14)  Liberty Tax uses trademarks and trade dress that "are immediately recognizable for the red, white, and blue motif and extensive use of Statue of Liberty" sculptures and inflatables.  (Id. ¶ 17)  Several of these marks are registered with the United States Patent and Trademark Office.  (Id. ¶¶ 18-24)  Plaintiff "has invested millions of dollars and decades of time and effort to create customer recognition of the Liberty Tax Trademarks and Trade Dress."  (Id. ¶ 26)

Defendant AMC Networks Inc. is a Delaware corporation, headquartered in New York, that operates the AMC cable channel.  (Id. ¶¶ 7, 29)  Defendant Sony Pictures Television Inc. ("Sony") is a Delaware corporation headquartered in California that produces and distributes television shows.  (Id. ¶¶ 8, 30-31)

Better Call Saul follows Jimmy McGill, "a former con artist" who adopts the name Saul Goodman and becomes an "egocentric criminal lawyer."  (Id. ¶ 33)  The show is "a spin-off, prequal, and sequel of Defendants' critically acclaimed television series, Breaking Bad," and is one of Defendants' most widely known and successful shows.  (Id. ¶ 32)  Better Call Saul premiered on AMC in 2015 and is distributed by Sony.  It was in its sixth and final season when the Complaint was filed on August 1, 2022.  (Id. ¶ 34)

"On April 18, 2022, Defendants aired Episode 2, Season 6 of Better Call Saul, [which is entitled] 'Carrot and Stick' ("Episode 2" or the "Show")."  (Id. ¶ 35)  Episode 2 depicts a fictional tax preparation business called "Sweet Liberty Tax Services," which is operated by "convicted felon, Craig Kettleman, and his wife, Betsy Kettleman."  (Id. ¶¶ 36-37)  Craig Kettleman was a client of Saul Goodman in Season 1 of Better Call Saul who was imprisoned after being convicted of embezzlement.  (Id. ¶¶ 37-38)  The Kettlemans and Sweet Liberty defraud their clients "by skimming money from their tax refunds."  (Id. ¶ 39)  Kim Wexler – one

of the Show's central characters and Saul's wife – refers to the fictional tax business as a

"rundown little mom and pop outfit."  (Id. ¶ 40)  Wexler blackmails the Kettlemans by

threatening to reveal their crimes to the IRS.  (Id.)

      In the Amended Complaint, Plaintiff alleges that the Show's Sweet Liberty Tax

Services "is an obvious imitation of an actual Liberty Tax location, but twisted to paint Liberty

Tax in a negative and disparaging light[,]" with "just the word 'Sweet' added."  (Id. ¶¶ 41-

42)  According to Plaintiff, similarities between the fictional Sweet Liberty Tax Services and the

real Liberty Tax Service include the use of an inflatable Statue of Liberty, the use of

checks bearing a Statue of Liberty logo, a Statue of Liberty wall mural inside the tax preparation

office, and the use of a red, white and blue motif on the location's exterior (id. ¶¶ 3, 43-46), as

 

shown below:

 

Pointing to the social media post shown below, Plaintiff also complains that Defendants have used the fictional Sweet Liberty Tax Services in their advertising for <u>Better Call Saul</u>:



(<u>Id.</u> ¶ 49)

Defendants have also posted a trailer on YouTube for <u>Better Call Saul</u>'s sixth season which includes a clip from Episode 2 featuring the Sweet Liberty Tax Services location. (<u>Id.</u> ¶ 51)  The image of Sweet Liberty Tax Services appears in the video for less than one second.  <u>See</u> Better Call Saul, Official Season 6 Trailer, (Mar. 10, 2022) https://www.youtube.com/watch?v=Qz3u06eXf 0E&t=70s.

Plaintiff further complains that "Defendants [] directed or otherwise authorized" a

<u>Better Call Saul</u> actor to post images of "Sweet Liberty Tax Services" on the actor's social media

pages:





(<u>Id.</u> ¶ 50)

In support of its claim that Defendants' alleged use of Plaintiff's marks has "expressly misled viewers into believing that Liberty Tax sponsored or endorsed" <u>Better Call Saul</u>, Plaintiff contends that an image of "'Sweet Liberty Tax Services'" at one time appeared "in Google image search results for 'Liberty Tax Service.'" (<u>Id.</u> ¶ 52) A screenshot of the Google search is included in the Amended Complaint:



(<u>Id.</u> ¶ 52)

Plaintiff sent a cease-and-desist letter to AMC on April 27, 2022, and "thereafter engaged in follow up communications with AMC and Sony, in which it put Defendants on notice that [Episode 2] infringed and tarnished Liberty Trademarks and Trade Dress and that Liberty Tax objected to such depiction." (<u>Id.</u> ¶ 64)

## II.   <u>PROCEDURAL HISTORY</u>

The Complaint was filed on August 1, 2022 (Cmplt. (Dkt. No. 1)), and the Amended Complaint was filed on October 27, 2022. (Am. Cmplt. (Dkt. No. 29)) The Amended Complaint alleges trademark and trade dress infringement under the Lanham Act, 15

U.S.C. §§ 1051 et seq., trademark dilution under N.Y.G.B.L. § 360-l, and common law defamation.  (Id. ¶ 5,71-121)

On January 24, 2023, Defendants moved to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.  (Def. Mot. (Dkt. No. 37))

## DISCUSSION

### I.   LEGAL STANDARDS

#### A.   Rule 12(b)(6) Motion to Dismiss

"To survive a motion to dismiss [pursuant to Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "[T]he court is to accept as true all facts alleged in the complaint," Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

Under this standard, a plaintiff is required only to set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (alteration in Twombly) (quoting Fed. R. Civ. P. 8(a)).  To survive a motion to dismiss, plaintiff's "[f]actual allegations must be enough

to raise a right to relief above the speculative level," id. at 555, and present claims that are "plausible on [their] face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed." Id. at 570.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) and Hayden v. Cty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." Gallagher v. Empire HealthChoice Assurance, Inc., 339 F. Supp. 3d 248, 254 (S.D.N.Y. 2018) (alteration in original) (quotation marks omitted).

**B.**    **Lanham Act Claims**

The Lanham Act defines a trademark as "any word, name, symbol, or device, or any combination thereof" that is used "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the

goods, even if that source is unknown." 15 U.S.C. § 1127.   "From its definition of 'trademark'

onward, the Lanham Act views marks as source identifiers – as things that function to 'indicate

the source' of goods, and so to 'distinguish' them from ones 'manufactured or sold by others.'"

Jack Daniel's Properties, Inc. v. VIP Prod. LLC, 599 U.S. 140, 157 (2023) (quoting 15 U.S.C §

1127).   "Whatever else it may do, a trademark is not a trademark unless it identifies a product's

source (this is a Nike) and distinguishes that source from others (not any other sneaker brand)

. . . . In other words, a mark tells the public who is responsible for a product."   Id. at 146.

"'[T]he standards for false designation of origin claims under Section 43(a) of the

Lanham Act (15 U.S.C. § 1125) are the same as for trademark infringement claims under Section

32 (15 U.S.C. § 1114).'"   Jackpocket, Inc. v. Lottomatrix NY LLC, 2022 WL 17733156, at *21

(S.D.N.Y. Dec. 7, 2022) (quoting Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.,

220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002)).   Both sections impose civil liability where the

unauthorized use of a protected mark "is likely to cause confusion, or to cause mistake, or to

deceive." 15 U.S.C. §§ 1114(1)(A), 1125(a)(1)(A).   "And the single type of confusion most

commonly in trademark law's sights is confusion 'about the source of a product or service.' . . .

Confusion as to source is the bête noire of trademark law – the thing that stands directly opposed

to the law's twin goals of facilitating consumers' choice and protecting producers' good will."

Jack Daniel's, 599 U.S. at 147 (quoting Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 428

(2003)).

"'[T]he crucial issue in an action for trademark infringement . . . is whether there

is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be

misled, or indeed simply confused, as to the source of the goods in question.'"   Savin Corp. v.

Savin Grp., 391 F.3d 439, 456 (2d Cir. 2004) (quoting Mushroom Makers, Inc. v. R.G. Barry

Corp., 580 F.2d 44, 47 (2d Cir.1978)).  "The owner of [a trademark] acquires the right to prevent his goods from being confused with those of others and to prevent his own trade from being diverted to competitors through their use of misleading marks."  Pirone v. MacMillan, Inc., 894 F.2d 579, 581 (2d Cir. 1990).  "'There are no rights in a [trademark] beyond these.'"  Id. (quoting Industrial Rayon Corp. v. Dutchess Underwear Corp., 92 F.2d 33, 35 (2d Cir. 1937)).

### 1. First Amendment Interface with Trademark Rights in the Context of Artistic Expression

In Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989), the Second Circuit "establish[ed] a new test for trademark infringement claims where the use of a trademark has both expressive and commercial components."  Stewart Surfboards, Inc v. Disney Book Grp., LLC, 2011 WL 12877019, at *3 (C.D. Cal. May 11, 2011).  The Rogers court instructed that "in general the [Lanham] Act should be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression."  Rogers, 875 F.2d 994, 999 (2d Cir. 1989).  The court devised a two-prong balancing test where there are competing interests under the First Amendment and the Lanham Act.  Where the title of an expressive work is at issue, the "balance will normally not support application of the [Lanham] Act unless the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work."  Id.  Although an allegedly infringing film title was at issue in Rogers, the case is now "generally applicable to Lanham Act claims against works of artistic expression."  Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc., 886 F.2d 490, 495 (2d Cir. 1989).

Under the first prong of the Rogers test, a court must consider whether the allegedly infringing use has any artistic relevance to the underlying work or was "arbitrarily chosen just to exploit the publicity value of [the original mark]."  Rogers, 875 F.2d at 1001.

"The threshold for 'artistic relevance' is purposely low and will be satisfied unless the use 'has no artistic relevance to the underlying work whatsoever.'" Louis Vuitton Malletier S. A. v. Warner Bros. Entertainment Inc., 868 F. Supp. 2d 172, 178 (S.D.N.Y. 2012) (quoting Rogers, 875 F.2d at 999) (emphasis in Louis Vuitton); see also E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc., 547 F.3d 1095, 1100 (9th Cir. 2008) ("In other words, the level of relevance merely must be above zero.").

The second "prong of the [Rogers] test points directly at the purpose of trademark law, namely to 'avoid confusion in the marketplace by allowing a trademark owner to prevent others from duping consumers into buying a product they mistakenly believe is sponsored by the trademark owner.'" E.S.S. Ent. 2000, 547 F.3d at 1100 (quoting Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 806 (9th Cir. 2003)). "[T]he relevant question is whether the defendant's use of the mark 'is misleading in the sense that it induces members of the public to believe [the work] was prepared or otherwise authorized' by the plaintiff." Louis Vuitton, 868 F. Supp. 2d at 179 (quoting Twin Peaks Prods., Inc. v. Publications Int'l, Ltd., 996 F.2d 1366, 1379 (2d Cir. 1993)). "[T]he finding of likelihood of confusion must be particularly compelling to outweigh the First Amendment interest recognized in Rogers." Twin Peaks, 996 F.2d at 1379. "Put another way, the most important difference between the Rogers consumer confusion inquiry and the classic consumer confusion test is that consumer confusion under Rogers must be clear and unambiguous to override the weighty First Amendment interests at stake." Hermes Int'l v. Rothschild, 2023 WL 1458126, at *8 (S.D.N.Y. Feb. 2, 2023).

In Jack Daniel's Properties, Inc. v. VIP Prod. LLC, the Supreme Court held that Rogers "does not [apply] when an alleged infringer uses a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own goods" or "in other words,

[uses] a trademark as a trademark." Jack Daniel's, 599 U.S. at 146.  While the Supreme Court declined to decide "whether Rogers has merit in other contexts," this Court remains bound by Rogers where an expressive work does not use a mark "as a designation of source for the infringer's own goods."  Id.; see id. at 154 ("Over the decades, lower courts adopting Rogers have confined it to similar cases, in which a trademark is used not to designate a work's source, but solely to perform some other expressive function.").

## II.   ANALYSIS

Defendants argue that, under Rogers, Plaintiff's trademark claims are barred by the First Amendment, "[b]ecause Plaintiff cannot show that the use of the 'Sweet Liberty Tax Services' name and set design is artistically irrelevant to Better Call Saul[,] or that its use is explicitly misleading."  (Def. Brf. (Dkt. No. 38) at 13-14)

Plaintiff responds that the First Amendment does not grant Defendants "the right to use Liberty's trademarks to mislead the public and damage Liberty's goodwill and brand," and that "Rogers is not a bar to Liberty's claims," because Defendants' "use of Liberty's marks is not artistically relevant and is explicitly misleading."  (Pltf. Opp. (Dkt. No. 40) at 14-15)

### A.   Applicability of the *Rogers* Test

The Rogers test applies to trademark claims where the challenged use of a mark appears in an "artistic" or "expressive" work, see Louis Vuitton, 868 F. Supp. 2d at 177, unless the "alleged infringer uses [plaintiff's] trademark . . . as a designation of source for the infringer's own goods."  Jack Daniel's, 599 U.S. at 148.  Because it is undisputed that The Show is an artistic or expressive work,[2] the Court considers whether Defendants' alleged use of

---

[2]  Plaintiff argues that Defendants have used Plaintiff's marks in advertisements and promotional material, which "is classic commercial speech [that] falls outside First Amendment protection." (Pltf. Opp. (Dkt. No. 40) at 25)  In support of this argument, Plaintiff cites to (1) a social media

post that was designed to look like an advertisement for "Sweet Liberty Tax Services," but which encourages viewers to "sign up" at www.amc.com; and (2) an image in the promotional trailer for Better Call Saul's sixth season, which shows Sweet Liberty Tax Services' fictional office for less than one second.  (Id. (citing Am. Cmplt. (Dkt. No. 40) ¶¶ 49-50))

The Rogers balancing test applies, however, to expressive works "of a hybrid nature, combining artistic expression and commercial promotion."  See Rogers, 875 F.2d at 1001; see id. at 998 ("[t]he title of a movie may be both an integral element of the film-maker's expression as well as a significant means of marketing the film to the public"); Twentieth Century Fox Television a division of Twentieth Century Fox Film Corp. v. Empire Distribution, Inc., 875 F.3d 1192, 1196-97 (9th Cir. 2017) ("[a]lthough it is true that these promotional efforts technically fall outside the title or body of an expressive work, . . . works protected under [the Rogers] test may be advertised and marketed by name"); Louis Vuitton, 868 F. Supp. 2d at 175 (applying Rogers and granting motion to dismiss where plaintiff argued that their marks had been used "in commercials and advertisements for the film"); Fortres Grand Corp. v. Warner Bros. Ent. Inc., 947 F. Supp. 2d 922, 930 (N.D. Ind. 2013), aff'd, 763 F.3d 696 (7th Cir. 2014) (applying Rogers and granting motion to dismiss; "[t]he same analysis applies to the use of [the mark] on the promotional websites [for defendant's movie]").

Plaintiff cites to Yankee Pub. Inc. v. News America Pub. Inc., 809 F. Supp. 267 (S.D.N.Y. 1992) and Donahue v. Artistn Entm't, Inc., 2002 WL 523407 (S.D.N.Y. Apr. 8, 2002) in support of its argument that the Rogers test does not apply to material created to promote a creative work.  (Pltf. Opp. (Dkt. No. 40) at 25)  Neither case so holds.

In Yankee Pub. Inc., the publisher of The Old Farmer's Almanac objected to New York magazine's unauthorized use of the Farmer's Almanac marks on its cover.  Yankee Pub. Inc., 809 F. Supp. at 271.  While noting in passing that "[f]ree speech rights do not extend to labelling or advertising products in a manner that conflicts with the trademark rights of others," the court held that "defendant's right of free speech in the exercise of comic commentary outweighs any minor injury that may have been caused to plaintiffs' trademark rights."  Id. at 276, 282.  In sum, Yankee Publishing does not substantively address advertisements connected to the promotion of an expressive work, and provides no support for Plaintiff's position.

Donahue concerns the use of certain individuals' likenesses to advertise a film; plaintiffs argued that the use was unauthorized while the defendants argued that it was authorized.  Donahue, 2002 WL 523407 at *7 n. 5.  Defendants' First Amendment arguments were raised only "in passing," and the court's decision turns on contract interpretation – whether in the applicable contracts plaintiffs granted defendants the right to use their likenesses.  Donahue is therefore not analogous.

In sum, the fact that Defendants made minor use of Plaintiff's mark in promotional material does not bar a Rogers defense, nor does it require the Court to apply a different analysis.

Plaintiff's trademarks was "'as a designation of source for the [Defendants'] own goods.'" Id. (quoting 15 § 1125(c)(3)(A)).

> A defendant uses a term "as a mark" when it employs it "as a symbol to attract public attention," Kelly-Brown, 717 F.3d at 306 (internal quotation marks omitted), or "to identify and distinguish . . . goods [or services] . . . and to indicate [their] source." 15 U.S.C. § 1127. Whether a defendant has done so may entail an investigation into, inter alia, whether the challenged material appeared on the product "itself, on its packaging, or in any other advertising or promotional materials related to [the] product," and the degree to which "defendants were trying to create, through repetition . . . a[n] association between [themselves] and the [mark]." Kelly-Brown, 717 F.3d at 310-11 (internal quotation marks omitted).

Tiffany & Co. v. Costco Wholesale Corp., 971 F.3d 74, 92 (2d Cir. 2020).

In Jack Daniel's, the alleged infringer made "a squeaky, chewable dog toy designed to look like a bottle of Jack Daniel's whiskey." Jack Daniel's, 599 U.S. at 144  Certain words shown on a bottle of Jack Daniel's whiskey were replaced to create various dog-themed jokes. Id. ("[T]he descriptive phrase 'Old No. 7 Brand Tennessee Sour Mash Whiskey' turns into 'The Old No. 2 On Your Tennessee Carpet.'"). Defendant sold the dog toy under the name "Bad Spaniels." Id. The Supreme Court held that the Rogers test was inapplicable to defendant's alleged use of Jack Daniel's trademarks, despite the "parodic" nature of the defendant's product. Id. at 161-62 ("There is no threshold test working to kick out all cases involving 'expressive works.'"). The Court noted, however, that "although [defendant's] effort to ridicule Jack Daniel's does not justify use of the Rogers test, it may make a difference in the standard trademark analysis." Id. ("a trademark's expressive message – particularly a parodic one, as [defendant] asserts – may properly figure in assessing the likelihood of confusion").

The Jack Daniel's court cites with approval Louis Vuitton, which applies the Rogers test in a context where the mark was not being used to designate a work's source:

> Over the decades, the lower courts adopting Rogers have confined it to similar cases, in which a trademark is used not to designate a work's source, but solely to

perform some other expressive function.  So, for example, . . . when Louis
Vuitton sued because a character in the film The Hangover:  Part II described his
luggage as a "Louis Vuitton" (though pronouncing it Lewis), a district court
dismissed the complaint under Rogers.  See Louis Vuitton Malletier S. A. v.
Warner Bros. Entertainment Inc., 868 F.Supp.2d 172 (S.D.N.Y. 2012).  All
parties agreed that the film was not using the Louis Vuitton mark as its "own
identifying trademark."  Id., at 180 (internal quotation marks omitted).  When that
is so, the court reasoned, "confusion will usually be unlikely," and the "interest in
free expression" counsels in favor of avoiding the standard Lanham Act test.
Ibid.

. . . .

[C]onfusion is most likely to arise when someone uses another's trademark as a
trademark – meaning, again, as a source identifier – rather than for some other
expressive function.  To adapt one of the cases noted above:  Suppose a
filmmaker uses a Louis Vuitton suitcase to convey something about a character
(he is the kind of person who wants to be seen with the product but doesn't know
how to pronounce its name).  Now think about a different scenario:  A luggage
manufacturer uses an ever-so-slightly modified LV logo to make inroads in the
suitcase market.  The greater likelihood of confusion inheres in the latter use,
because it is the one conveying information (or misinformation) about who is
responsible for a product.

Jack Daniel's, 599 U.S. at 154, 157.

Defendants argue that the "challenged use of 'Sweet Liberty Tax Services' does
not purport to designate the source of the Better Call Saul television show," making the
application of the Rogers test appropriate under Jack Daniel's.  (Def. June 13, 2023 Ltr. (Dkt.
No. 42) at 2)  Plaintiff does not dispute that Defendants' alleged use of Plaintiff's marks does not
amount to use "as a mark" or for source designation, but argues that "the Supreme Court
signaled doubt about Rogers," such that lower courts are required to exercise "due care in
applying the Rogers test, including by expressly applying the [Polaroid] factors" at the motion to
dismiss stage.  (Pltf. June 20, 2023 Ltr. (Dkt. No. 43))

This Court concludes that – to the extent Defendants used Plaintiff's marks – they
were used in furtherance of the Show's plot.  (See Am. Cmplt. (Dkt. No. 29) at 35-43 (describing
Episode 2's use of Plaintiff's marks))  The Amended Complaint does not allege that Defendants

15

used Plaintiff's marks to identify the source of <u>Better Call Saul</u> or any of Defendants' products, and Defendants are not alleged to have "use[d]" the "[Sweet Liberty Tax Services] trademark and trade dress" for any product they sell. <u>Jack Daniel's</u>, 599 U.S. at 151, 154. Accordingly, as in <u>Louis Vuitton</u>, Defendants have not used Plaintiff's marks "as [their] 'own identifying trademark.'" <u>Jack Daniel's</u>, 599 U.S. at 154 (quoting <u>Louis Vuitton</u>, 868 F. Supp. 2d at 178). Application of the <u>Rogers</u> test is therefore appropriate.

### B. **Artistic Relevance**

Defendants argue that the Show's alleged use of Plaintiff's marks "meets the threshold for artistic relevance on multiple levels." (Def. Br. (Dkt. No. 38) at 14-15) According to Defendants, viewers "could readily perceive 'Sweet Liberty' as a nod to [convicted felon Craig Kettleman's] release from prison." (<u>Id.</u>) The Kettlemans' use of the name "Sweet Liberty" for their fraudulent tax preparation business, "coupled with an office covered with gaudy symbols of Americana . . . and a comedically distorted Statue of Liberty inflatable, is richly ironic: . . . [The Kettlemans] are grifters who wrap themselves with patriotic iconography to cloak their checkered past and ongoing misdeeds." (<u>Id.</u>)

Plaintiff responds that Sweet Liberty Tax Services "appears out of nowhere for a single episode of the sixth season series and it has no connection to the show's storyline." (Pltf. Opp. (Dkt. No. 40) at 16) But the Amended Complaint's allegations undermine this argument. The Amended Complaint notes that the "Kettlemans were main characters in <u>Better Call Saul</u>'s first season, but exited the series after Craig Kettleman was convicted of embezzlement and went to prison." (Am. Cmplt. (Dkt. No. 29) ¶ 38) After Craig Kettleman's return to the series following a term of imprisonment, he again commits fraud under the business name "Sweet Liberty" – liberty that is at risk when another character threatens to report the Kettlemans to the IRS. (<u>See id.</u> ¶ 40 ("Betsy, you'll probably get 24 months, maybe 18 with good behavior. But

16

Craig?  You are a two-time loser.  They will definitely make an example out of you.  Each false return they discover will be a separate felony. What are we talking?  A hundred?  Two hundred?")

In sum, the reference to "Sweet Liberty" is clearly ironic and closely related to Craig Kettleman's role in the series, see Louis Vuitton, 868 F. Supp. 2d at 178 (finding artistic relevance where defendant used plaintiff's product for an ironic and humorous purpose within a film), and the Kettlemans' use of Plaintiff's trade dress is a gaudy and shabby appropriation of patriotic imagery that highlights their hypocrisy and the tawdry nature of their crimes, all of which has "genuine relevance to [Episode 2's] story."  See Rogers, 875 F.2d at 1001.  The artistic relevance of Episode 2's use of Plaintiff's marks is thus plainly "above zero."  E.S.S. Ent. 2000, 547 F.3d at 1100.  And the Court cannot conclude that Defendants "arbitrarily chose[] [to use Plaintiff's marks] just to exploit [their] publicity value," Rogers, 875 F.2d a 1001, or infer that Defendants' use of the marks was "commercially motivated."  Louis Vuitton, 868 F. Supp. 2d at 178 ("The Court is satisfied that Warner Bros.' use of the [plaintiff's luxury] bag (whether intentional or inadvertent) was intended to create an artistic association with Louis Vuitton, and there is no indication that its use was commercially motivated.").[3]

---

[3]  Plaintiff argues that Louis Vuitton is distinguishable, because in that case defendants had explicitly used plaintiff's brand, whereas here Episode 2 does not contain any overt reference to Liberty Tax Service.  (Pltf. Opp. (Dkt. No. 40) at 18 ("Defendants expressly disclaim any artistic association with Liberty Tax.")) That distinction is beside the point.  The relevant question is whether the alleged use of the plaintiff's marks has "artistic relevance" to the defendant's work. In Louis Vuitton, the court concluded that the use of plaintiff's iconic bag had artistic relevance to defendant's movie, because the character's mispronunciation of "one of his [own] expensive possessions, add[ed] to [his] image . . . as [] socially inept and comically misinformed."  Louis Vuitton, 868 F. Supp. 2d at 178.  As discussed above, "Sweet Liberty Tax Services" and the fictional business's use of patriotic imagery has a similar ironic and humorous purpose in Episode 2.  That purpose does not require an overt or explicit reference to Plaintiff's actual business or brand name.  Accordingly, Louis Vuitton is on point.

17

Parks v. LaFace Records, 329 F.3d 437 (6th Cir. 2003), cited by Plaintiff (Pltf. Opp. (Dkt. No. 40) at 17-18) is not on point.  In that case, the Sixth Circuit found a material issue of fact as to whether the use of Rosa Parks' name as the title of a song was "artistically relevant" to the song.  Parks, 329 F.3d at 452-53.  The Sixth Circuit concluded, as defendants had conceded, that the lyrics and the song itself had "absolutely nothing to do with Rosa Parks."  Id. The court also emphasized that "[c]hoosing Rosa Parks' name as the title to the song unquestionably enhanced the song's potential sale to the consuming public."  Id. at 453; see also id. ("The use of this woman's name unquestionably was a good marketing tool.").  Here, Defendants' alleged use of Plaintiff's marks is part of the Show's plot, not a mere offhand reference in the title that has nothing to do with the Show's content.[4]  (Am. Cmplt. (Dkt. No. 40) ¶¶ 35-44)

Plaintiff argues, however, that "[a]t a minimum, the Court should find that the Complaint contains sufficient factual allegations that Defendants intended to exploit the publicity value of Liberty's brand and that Defendants' unsworn statements of supposed artistic relevance create factual disputes that cannot be resolved on a motion to dismiss."  (Pltf. Opp. (Dkt. No. 50) at 19)  But the Amended Complaint does not plausibly allege that "Sweet Liberty Tax Services"

---

[4]  Plaintiff contends that "[t]here are many other ways to express patriotism and freedom, including bald eagles, capitol buildings, colonial images, maps of the United States, and military insignias and images."  (Pltf. Opp. (Dkt. No. 40) at 16)  But that is not the standard for artistic relevance.  Indeed, Rogers explicitly rejects "the 'no alternative avenues' test,'" because it "does not sufficiently accommodate the public's interest in free expression."  Rogers, 875 F.2d at 999; see also MGFB Properties, Inc. v. Viacom Inc., 54 F.4th 670, 681 (11th Cir. 2022) ("[I]it would be improper for courts to decide what forms of expression are "necessary.").

Plaintiff also argues that Defendants' proffered justifications for using Plaintiff's marks are not "credible," because if "Sweet Liberty" is a reference to Craig Kettleman's release from prison, that "undermines Defendants' other arguments that "'Liberty' refers to the Statue of Liberty." (Def. Opp. (Dkt. No. 40) at 17)  But obviously it is common in artistic works for words to have multiple meanings in the context of that work.  Indeed, that is often why a particular word or phrase is chosen.

was chosen for commercial rather than artistic reasons.  Cf. Hermes Int'l v. Rothschild, 603 F.

Supp. 3d 98, 105 (S.D.N.Y. 2022) (defendant developed and sold "meta Birkin" handbags as

"non-fungible tokens" – a form of cryptocurrency containing images of Hermes' famous Birkin

handbags – "as a tribute to Hermes' most famous handbag") (alterations and quotation marks

omitted).  The Amended Complaint instead contains only conclusory allegations that the

Defendants intentionally misled consumers as to the source of Better Call Saul.  (See Am. Cmplt.

(Dkt. No. 29) ¶¶ 68, 76, 80, 105 ("Defendants' unlawful conduct was and is knowing, deliberate,

willful, and in bad faith and done with the intent to trade on the goodwill and reputation of

Liberty Tax and its federally registered Trademarks and to explicitly mislead consumers into

believing that Liberty Tax sponsored or endorsed Episode 2."))  See Brown v. Showtime

Networks, Inc., 394 F. Supp. 3d 418, 444 (S.D.N.Y. 2019) ("To survive a motion to dismiss for a

Lanham Act claim, [a plaintiff] must plead more than 'conclusory allegations' . . . that

Defendants explicitly misled consumers as to the source or content of the film.") (quoting

Cummings v. Soul Train Holdings LLC, 67 F. Supp. 3d 599, 606 (S.D.N.Y. 2014)).  Given these

circumstances, the question of artistic relevance does not require discovery.  See Louis Vuitton,

868 F. Supp. 2d at 178 ("[T]he discovery [plaintiff] seeks is irrelevant . . . [because there] is no

indication that [defendant's use of plaintiff's marks] use was commercially motivated.").

    **C.**    **Whether Defendants' Use of Plaintiff's Marks Was "Explicitly Misleading"**

Having concluded that Defendants' alleged use of Plaintiff's marks has at least

some artistic relevance, the Court turns to whether the use is nonetheless "explicitly misleading"

such that the Lanham Act applies to the Show.   Rogers, 875 F.2d at 999 ("Even where a title

surpassed the appropriately low threshold of minimal artistic relevance but was explicitly

misleading as to source or content, a violation [of the Lanham Act] could be found.").

As discussed above, "[t]he relevant question is whether the defendant[s'] use of the mark 'is misleading in the sense that it induces members of the public to believe [the work] was prepared or otherwise authorized' by the plaintiff." Champion v. Moda Operandi, Inc., 561 F. Supp. 3d 419, 435-36 (S.D.N.Y. 2021) (quoting Louis Vuitton, 868 F. Supp. 2d at 179). "This determination must be made, in the first instance, by application of the venerable Polaroid factors." Twin Peaks, 996 F.2d at 1379 (remanding to "allow the District Court the opportunity to fully examine the [Polaroid] factors relevant to likelihood of confusion").

The eight non-exhaustive Polaroid factors are:

> "(1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may bridge the gap by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market."

Souza v. Exotic Island Enterprises, Inc., 68 F.4th 99, 110 (2d Cir. 2023) (quoting Kelly-Brown v. Winfrey, 717 F.3d 295, 307 (2d Cir. 2013)).[5]

"[T]he finding of likelihood of confusion must be particularly compelling to outweigh the First Amendment interest recognized in Rogers[, however]." Twin Peaks, 996 F.2d

---

[5]  Plaintiff argues that analysis of the Polaroid factors is "fact intensive," and that accordingly "the Court should allow the parties to conduct discovery to develop a full factual record." (Pltf. Opp. (Dkt. No. 40) at 20)  While "'[n]ormally[] the likelihood of confusion is a factual question, centering on the probable reactions of prospective purchasers of the parties' goods' . . . a complaint must [still] contain sufficient facts to plausibly allege a probability of confusion between plaintiff's product or services and those of the alleged infringer." A&E Television Networks, LLC v. Big Fish Ent., LLC, 2023 WL 4053871, at *15 (S.D.N.Y. June 16, 2023) (quoting Pirone v. MacMillan, Inc., 894 F.2d 579, 584 (2d Cir. 1990) (analyzing the Polaroid factors on a motion to dismiss); see also Pirone, 894 F.2d at 584 ("[Trademark] [c]laims [] may be dismissed as a matter of law where 'the court is satisfied that the products or marks are so dissimilar that no question of fact is presented.'") (quoting American Int'l Group, Inc. v. London America Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981)).

at 1379; Hermes, 2023 WL 1458126, at *8 ("[C]onsumer confusion under Rogers must be clear and unambiguous to override the weighty First Amendment interests at stake.").

When the infringing use is a fictional product or service shown or referenced in a work of fiction, the relevant product for the purpose of comparison to the senior use is the work of fiction itself rather than the fictional product or service depicted within that work.  In other words, courts compare real products rather than fictional ones.  See AM Gen. LLC v. Activision Blizzard, Inc. 450 F. Supp. 3d 467, 481 (S.D.N.Y. 2020) (comparing a real vehicle to real video games rather than the games' depictions of the vehicle); Fortres Grand Corp., 947 F. Supp. 2d at 928 ("[The] distinction – between Warner Bros. real product (a movie) and its fictional product (software) – makes a world of difference because so much of the consumer confusion analysis depends on a comparison of the products at issue.  In analyzing the potential for consumer confusion in this case, one must compare Fortres Grand's 'Clean Slate' software to Warner Bros.' real product – The Dark Knight Rises."); E.S.S. Ent. 2000, 547 F.3d at 1100 (comparing the plaintiff's strip club to the defendant's video game rather than the game's depiction of the strip club).

Plaintiff argues "that application of the Polaroid factors demonstrates that Defendants explicitly misled consumers to believe that Liberty authorized or endorsed the Episode." (Pltf. Opp. (Dkt. No. 40) at 16)  According to Plaintiff, "[a]s to the first three factors (strength, similarity, proximity), Defendants copied Liberty's registered LIBERTY TAX SERVICE trademark, slapped on the prefix 'Sweet,' and used it and Liberty's other iconic trade dress to exploit and besmirch the goodwill of Liberty's brand in depicting a business in the same tax preparation space."  (Pltf. Opp. (Dkt. No. 40) at 20)

For the sake of clarity, the Court analyzes below each <u>Polaroid</u> factor individually.

### 1.   **Strength of Plaintiff's Mark**

"Courts considering this factor 'focu[s] on the 'distinctiveness of the mark, or more precisely, its tendency to identify the goods' as coming from a particular source.'" <u>AM Gen.</u>, 450 F. Supp. 3d at 480 (quoting <u>Museum of Modern Art v. MOMACHA IP LLC</u>, 339 F. Supp. 3d 361, 373 (S.D.N.Y. 2018)). "Here, Defendants do not challenge the strength of Plaintiff's mark. . . . Accordingly, the first <u>Polaroid</u> factor weighs in Plaintiff's favor." <u>Id.</u> at 480.

### 2.   **Similarity Between the Two Marks**

"This factor looks to whether the similarity of the marks is likely to provoke confusion among prospective purchasers . . . taking into account all factors that potential purchasers will likely perceive and remember." <u>Lang v. Retirement Living Publ'g Co.</u>, 949 F.2d 576, 581 (2d Cir. 1991). This inquiry considers not only the marks' physical resemblance, but also the contexts in which they appear. <u>See The Sports Auth., Inc. v. Prime Hosp. Corp.</u>, 89 F.3d 955, 962 (2d Cir. 1996) ("In deciding whether the marks are similar as used, we do not look just at the typewritten and aural similarity of the marks, but how they are presented in the marketplace."); <u>DeClemente v. Columbia Pictures Indus.</u>, 860 F. Supp. 30, 48 (E.D.N.Y. 1994) ("Because the marks are used for different purposes and are presented to the public differently, even though they say the same thing, they are dissimilar and no issue of fact is created."); <u>AM Gen.</u>, 450 F. Supp. 3d at 481 (same).

In <u>AM Gen. LLC v. Activision Blizzard, Inc.</u>, a manufacturer of military vehicles alleged that the depiction of its products in defendant's video games constituted trademark infringement. In considering plaintiff's claim, the court noted that "recognition is not

confusion," and held that "the second <u>Polaroid</u> factor weighs in [d]efendants' favor."  <u>AM Gen</u>, 450 F. Supp. 3d at 481.  This conclusion rested on the parties' divergent uses of the relevant mark:  "Plaintiff's purpose in using its mark is to sell vehicles to militaries, while Defendants' purpose is to create realistically simulating modern warfare video games for purchase by consumers."  <u>Id.</u>

   As presented in the Amended Complaint, "Sweet Liberty Tax Services" and the patriotic imagery associated with that fictional business closely resembles Plaintiff's marks.  But Plaintiff's purpose in using the marks is to provide tax services, while Defendants' purpose is to create an entertaining TV show, <u>Better Call Saul</u>.  (See Am. Cmplt. (Dkt. No. 29) ¶¶ 13-14, 29-31)  The marks thus appear "in the marketplace" in very dissimilar ways.  <u>The Sports Auth., Inc.</u>, 89 F.3d at 962.  Plaintiff's marks appear in connection with its many tax preparation locations, whereas "Sweet Liberty Tax Services" appeared in a single episode of a TV show and in a few social media posts and advertisements.  Accordingly, the parties' marks are dissimilar, and the second <u>Polaroid</u> factor weighs in Defendants' favor.

   **3.**  **<u>Competitive Proximity of the Parties' Products or Services</u>**

   "This factor 'focuses on whether the two products compete with each other,' with special attention devoted to assessing whether goods 'serve the same purpose, fall within the same general class, or are used together.'"  <u>AM Gen.</u>, 50 F. Supp. 3d at 481 (quoting <u>Lang</u>, 949 F.2d at 582).  Courts "look to 'the nature of the products themselves and the structure of the relevant market.'"  <u>Cadbury Bevs., Inc. v. Cott Corp.</u>, 73 F.3d 474, 480 (2d Cir. 1996) (quoting <u>Vitarroz v. Borden, Inc.</u>, 644 F.2d 960, 967 (2d Cir. 1981).  "Among the considerations germane to the structure of the market are the class of customers to whom the goods are sold, the manner in which the products are advertised, and the channels through which the goods are sold."  <u>Id.</u>  Here, the products – a tax service and a television show – are totally dissimilar.  There is no

overlap between "the manner in which the products are advertised, and the channels through which the goods are sold." Id. Thus, the third factor weighs heavily in Defendants' favor.

### 4. Likelihood that Plaintiff Will "Bridge the Gap" Between the Two Markets

"'Bridging the gap' refers to the likelihood that the senior user will enter the junior user's market in the future, or that consumers will perceive the senior user as likely to do so." Star Indus. v. Bacardi & Co., 412 F.3d 373, 387 (2d Cir. 2005). The gap between tax services and television production is substantial. Plaintiff has not stated any intention to enter the entertainment industry nor is there any reason to believe that a reasonable consumer would believe otherwise. Accordingly, this factor weighs in Defendants' favor. See AM Gen., 450 F. Supp. 3d at 482 ("Plaintiff has presented no evidence that it is likely to enter the video game industry let alone evidence that consumers would expect it to do so. As such, the fourth Polaroid factor tips in Defendants' favor.").

### 5. Actual Consumer Confusion

The fifth "factor asks courts to consider the evidence that consumers are actually confused as to the origin of a particular product or service or as to whether the junior user of a mark is sponsored by or affiliated with the senior user." Disney Enters. v. Sarelli, 322 F. Supp. 3d 413, 435 (S.D.N.Y. 2018). Plaintiff argues that "the [Amended] Complaint pleads that Defendants' use has caused confusion and includes at least one example of actual confusion between 'Sweet Liberty Tax Services' and Liberty Tax on the internet." (Pltf. Opp. (Dkt. No. 40) at 21) The example cited by Plaintiff is a screenshot of a Google search result for "Liberty Tax Service" that yielded at least seven accurate images associated with Plaintiff's business

alongside one image of Sweet Liberty Tax Services from Episode 2.[6]  (Am. Cmplt. (Dkt. No. 29) ¶ 52)  Evidence of a faulty internet search result does not constitute evidence of consumer confusion, however.  See Dahl v. Swift, 2010 WL 1458957, at *9 (C.D. Cal. Apr. 1, 2010) ("[The court] declines to accept [p]laintiff's contention that any alleged confusion of the Google search engine indicates that consumers are actually confused, and thus concludes that [p]laintiff has offered no evidence of actual confusion.").

The absence of evidence of actual consumer confusion is not necessarily fatal to a Lanham Act claim, however, particularly at the motion to dismiss stage.  Indeed, "it is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove, and the Act requires only a likelihood of confusion as to source."  Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 875 (2d Cir. 1986); see also Guthrie Healthcare Sys. v. ContextMedia, Inc., 826 F.3d 27, 44 (2d Cir. 2016) ("[A]bsence of evidence of actual confusion does not necessarily support the proposition that there has been no confusion.  Evidence of actual confusion can be both expensive and difficult to obtain."); Disney Enters. v. Sarelli, 322 F. Supp. 3d 413, 435 (S.D.N.Y. 2018) ("[A]ctual confusion need not be demonstrated to prevail on a claim for trademark infringement").

Conversely, in a case governed by Rogers, evidence of actual consumer confusion may not be sufficient to establish an infringement claim.  "Rogers teaches that mark owners must accept 'some' confusion when outweighed by free speech interests."  Louis Vuitton, 868 F. Supp. 2d at 184 n.19. (quoting Rogers, 875 F.2d at 1001).

---

[6]  The alleged infringing image is correctly captioned in the Google search results as "Sweet Liberty Tax Services."  (Am. Cmplt. (Dkt. No. 29) ¶ 52)

The Court concludes that here the actual consumer confusion factor does not weigh in either side's favor.  See, e.g., Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 78 (2d Cir. 1988) ("The magistrate properly declined to make any negative inference from Hasbro's lack of [actual consumer confusion] evidence in light of the short time [defendant's] product has been on the market.  Thus, as the magistrate found, this factor 'neither helps nor hurts' Hasbro's case.").

### 6.   Defendants' Good Faith In Adopting Plaintiff's Mark

"Bad faith concerns whether the defendant adopted [plaintiff's] mark with the intention of capitalizing on plaintiff's reputation and goodwill and any likely confusion between the two companies' products."  Diesel S.p.A. v. Diesel Power Gear, LLC, 2022 WL 956223, at *12 (S.D.N.Y. Mar. 30, 2022).  "The gravamen of bad faith is 'the intent to sow confusion between the two companies' products.'"  AM Gen., 450 F. Supp. 3d at 482 (quoting Star Indus., 412 F.3d at 388).  An inference of intent to deceive may be drawn where, for example, the parties are in the same business and the defendant was aware of plaintiff's "innovation . . . in the [relevant product] market, [and] intentionally sought to mimic [plaintiff's] Trade Dress to deceive customers [into] purchas[ing] [defendant's product]."  Focus Prod. Grp. Int'l, LLC v. Kartri Sales Co., 2022 WL 17851810, at *44 (S.D.N.Y. Dec. 22, 2022).  Strong "'similarities'" in marks may support the conclusion that "'deliberate copying has occurred,'" but "'[t]here is a considerable difference between an intent to copy and an intent to deceive.'"  Id. (quoting first Paddington Corp. v. Attiki Importers & Distribs., Inc., 996 F.2d 577, 587 (2d Cir. 1993) and second Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 117 (2d Cir. 2009)).

Here, Plaintiff alleges that "Defendants' unlawful conduct was and is knowing, deliberate, willful, and in bad faith and done with the intent to trade on the goodwill and reputation of Liberty Tax and its federally registered Trademarks."  (Am. Cmplt. (Dkt. No. 29)

¶ 76; see also Pltf. Opp. (Dkt. No. 40) at 21 ("[T]he work itself demonstrates that Defendants intended to mislead consumers into believing that Liberty authorized or endorsed the Episode because Defendants selected multiple aspects of Liberty's trademarks [and] trade dress to exploit the publicity value of their real life counterparts.")) Beyond these conclusory allegations of Defendants' "intent to sow confusion," Star Indus., 412 F.3d at 388, Plaintiff argues that "Defendants' addition of the word 'Sweet' and plural 's' to 'Services' demonstrates that their unauthorized use was an intentional, bad faith attempt to capitalize on Liberty Tax's good will and brand." (Pltf. Opp. (Dkt. No. 40) at 21 & n.8)

Assuming arguendo that "Sweet Liberty Tax Services" and the fictional business's trade dress are sufficiently similar to Plaintiff's marks to support an inference of "deliberate copying," there are no additional facts to support an inference of "'intent to deceive.'" Focus Prod. Grp., 2022 WL 17851810, at *44 (quoting Starbucks Corp., 588 F.3d at 117). Indeed, the Amended Complaint does not plead any facts suggesting that Defendants sought to attract viewers by associating Better Call Saul – a popular television show in its sixth season – with a tax preparation business. Put differently, there are no factual allegations suggesting that Defendants intended to capitalize on Plaintiff's marks and trade dress.

Drawing all reasonable factual inferences in Plaintiff's favor – as the Court must at this stage in the litigation, Louis Vuitton, 868 F. Supp. 2d at 181 – the Amended Complaint does not allege any facts showing an "intent to deceive" and bad faith. Accordingly, this factor weighs in Defendants' favor.

### 7.    Quality of Defendant's Product

"This factor is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 398 (2d Cir. 1995). This prong "does not

bear directly on the issue of likelihood of confusion but goes rather 'to the harm that confusion can cause the plaintiff's mark and reputation.'" Jackpocket, Inc., 2022 WL 17733156, at *50 (quoting Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003)). "If the quality of a junior user's product or service is low compared to the senior user, there is an 'increase[d] chance of actual injury when there is confusion,' . . . but a marked difference in the quality of the product or service may actually reduce the likelihood of confusion." Flushing Bank v. Green Dot Corp., 138 F. Supp. 3d 561, 591 (S.D.N.Y. 2015) (quoting Savin Corp. v. Savin Grp., 391 F.3d 439, 461 (2d Cir. 2004)).

Given the dissimilarity between Plaintiff's tax service and Defendants' TV show, there is no basis to argue that (1) Better Call Saul, Episode 2, will harm Plaintiff's tax service, because the Show is an inferior product; or (2) the products are sufficiently similar in quality so as to lead to consumer confusion. Accordingly, this factor weighs in Defendants' favor. See AM Gen., 450 F. Supp. 3d at 484 ("[N]either side has presented evidence that one party's product is superior to the other party's product. As such, this factor favors Defendants.").

Plaintiff complains, however, that in using Plaintiff's marks, Defendants "link[] Liberty Tax's Trademarks and Trade Dress to inferior quality services and/or portray[] Liberty Tax's marks and services in an unwholesome or unsavory context." (Am. Cmplt. (Dkt. No. 29) ¶ 100) As discussed above, Defendants' fictional tax service is operated by a convicted felon and his wife who make their living skimming money from their clients' tax returns. (Id. ¶ 39) But Plaintiff has not pled facts suggesting that viewers of the Show will not understand that "Sweet Liberty Tax Services" is a fictional business operated by fictional characters in a work of fiction. See Jack Daniel's, 599 U.S. at 153 ("[The] kind of message matters in assessing confusion

because consumers are not so likely to think that the maker of a mocked product is itself doing the mocking.").

The seventh <u>Polaroid</u> factor weighs in Defendants' favor.

**8.      Sophistication of Purchasers**

"As the theory goes, the more sophisticated the purchaser, the less likely he or she will be confused by the presence of similar marks in the marketplace." <u>Savin Corp.</u>, 391 F.3d at 461.  "In determining consumer sophistication, courts consider the product's nature and price." <u>Gibson v. SCE Grp., Inc.</u>, 391 F. Supp. 3d 228, 248 (S.D.N.Y. 2019), <u>aff'd</u>, 2023 WL 4229913 (2d Cir. June 28, 2023).  "At the motion to dismiss stage, [however,] the Court looks to the allegations in the [Amended] Complaint, and reserves [] questions of fact for summary judgment.  Because [here] the [Amended] Complaint does not allege facts regarding consumer sophistication, the Court finds this factor to be neutral." <u>See A&E Television Networks</u>, 2023 WL 4053871, at *21.

*      *      *      *

The <u>Polaroid</u> analysis is a tool that courts use in determining whether a defendant's use of a plaintiff's mark "explicitly misleads as to the source or the content of the work," such that "the public interest in avoiding consumer confusion outweighs the public interest in free expression." <u>Rogers</u> 875 F.2d at 999.  Application of the <u>Polaroid</u> factors here demonstrates that Plaintiff's "allegations of confusion are not plausible, let alone 'particularly compelling'" as is required to sustain a Lanham Act claim when "First Amendment values are involved." <u>Louis Vuitton</u>, 868 F. Supp. 2d at 182 (quoting <u>Twin Peaks</u>, 996 F.2d at 1379).

Accordingly, Defendants' motion to dismiss Plaintiff's Lanham Act claims will be granted.

## III.   **SUPPLEMENTAL JURISDICTION**

"'[I]n the usual case in which[, as here,] all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.'" Sefovic v. Mem'l Sloan Kettering Cancer Ctr., 2017 WL 3668845, at *8 (S.D.N.Y. Aug. 23, 2017) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).  There is no reason to vary from this rule here.  Accordingly, this Court will not exercise supplemental jurisdiction over Plaintiff's state law claims.

## **CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss Plaintiff's Lanham Act claims is granted.  Plaintiff's state law claims are dismissed without prejudice.  The Clerk of Court is directed to terminate the motion (Dkt. No. 37) and to close this case.

Dated: New York, New York
          September 25, 2023

SO ORDERED.

Paul G. Gardephe
United States District Judge